MORRIS POLICH & PURDY LLP
David J. Vendler, Esq. (SBN 146528)
Email: dvendler@mpplaw.com
1055 West Seventh Street, Suite 2400
Los Angeles, CA 90017
Tel.: (213) 417-5100
Fax: (213) 488-1178

MICHAEL R. BROWN, APC
Michael R. Brown, Esq. (SBN 65324)
Email: mbrown@mrbapclaw.com
18101 Von Karman Avenue, Suite 1940
Irvine, California 92612
Tel.: (949) 435-3888
Fax: (949) 435 3801

LAW OFFICE OF JEFFREY D. POINDEXTER
Jeffrey D. Poindexter, Esq. (SBN 167854)
Email: Jeffrey@jdpointerdexterlaw.com
2580 Catamaran Way
Chula Vista, CA 91914
Tel.: (619) 271-2382
Fax: (619) 568-3801

Attorneys for Plaintiff RICHARD M. HORN, MARIA GUREVICH and all others similarly situated

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

RICHARD M. HORN, an individual and as Trustee of the Richard M. Horn Trust Dated June 16, 2003, and Maria Gurevich, fka Mary Bordetsky, an individual, on behalf of themselves, and on behalf of the class of all others similarly situated,

Plaintiff,

vs.

BANK OF AMERICA, N.A., a national banking association,

Defendant.

**CASE NO.:** 3:12-cv-01718-GPC-BLM

**DEMAND FOR JURY TRIAL**

**FIRST AMENDED INJUNCTIVE RELIEF AND CLASS ACTION COMPLAINT FOR:**

1. **BREACH OF CONTRACT**
2. **NEGLIGENCE PER SE - 26 U.S.C. §6050H**
3. **NEGLIGENT MISREPRESENTATION**
4. **INTENTIONAL MISREPRESENTATION**
5. **UNFAIR BUSINESS PRACTICES**
6. **DECLARATORY RELIEF**

NOW COME Plaintiffs RICHARD M. HORN, as an individual and as Trustee to the Richard M. Horn Trust Dated June 16, 2003 and MARIA GUREVICH, fka Mary Bordetsky, ("Plaintiffs" or "Named Plaintiffs"), on behalf of themselves and all others similarly situated (collectively "Class Members"), and complain against defendant BANK OF AMERICA, N.A. a national, banking association ("BOA") as follows:

## SUMMARY OF THE ACTION

1. The purpose of this action is to: (1) prevent BOA from continuing its wrongful practice of under-reporting to the Internal Revenue Service ("IRS") millions, if not billions, of dollars of properly-deductible "mortgage interest" payments made by millions of BOA customers across the nation; and (2) compensate Plaintiffs and Class Members for BOA's prior under-reporting of their "mortgage interest" payments as reported on IRS Form 1098.

2. Plaintiffs HORN and GUREVICH are two of millions of consumers negatively impacted by BOA's wrongful accounting practices. Specifically, Plaintiff HORN has a 30-year negative amortization adjustable rate mortgage loan ("ARM") with BOA on a single family dwelling. The ARM provides Plaintiff with four (4) payment "options" in any given month. Such loans are frequently referred to as "Option ARM loans." One "option" is to make full payment of the principal and interest due under the note. A second "option" is to pay "Interest Only." A third "option" is to pay a "Minimum Payment," which may, and often is, less than the interest then due on the note. A fourth "option" is to make accelerated payments on a 15-year amortization schedule. Plaintiff GUREVICH had a similar loan with BOA on her personal residence in Massachusetts which she shared with her husband. Plaintiff GUREVICH paid off her loan with BOA in or about 2011.

3. Since the widely-marketed objective of the "Option ARM loan" was to allow consumers to minimize their monthly payment so that they could "afford" to purchase a home based upon their available cash flow, consumers with ARMs overwhelmingly chose the "Minimum Payment" option ("MP-Option").

4. When a consumer elects the MP-Option, the payment can be less than the full interest amount then due on the note. BOA's documents refer to the mortgage interest that the consumer has elected not to pay as "unpaid interest" and "deferred interest." Whether denoted as "unpaid interest" or "deferred interest," the consumer has "deferred" the payment of that *interest* until a later time.

5. The issue presented in this action arises when the "deferred interest" is paid by the consumer, and how BOA then characterizes those payments. *Unlike other National Banks*, BOA is not treating the consumers' payments of the "deferred interest" or "unpaid interest" as mortgage interest at all. Rather BOA mischaracterizes these payments as a "reduction of principal." As a result, BOA knowingly and deliberately fails to report the consumers' payment of "deferred interest" as a payment of "mortgage interest" on the consumer's IRS Form 1098 BOA files with the IRS.

6. Because of BOA's wrongful accounting practices, BOA customers received inaccurate IRS Form 1098s under-reporting the actual amount of "mortgage interest" paid by the consumer and which would be deductible from their taxable income.

7. This class action lawsuit therefore arises from one very simple issue that identically affects all BOA customers with Option ARM loans:

> **Whether deferred mortgage interest payments (i.e., "unpaid interest" or "deferred interest") received by BOA from Class Members is reportable by BOA to the IRS as "mortgage interest" on IRS Form 1098?**

8. Named Plaintiffs on behalf of themselves and Class Members seek injunctive and equitable relief and damages from BOA for intentionally and/or negligently under-reporting to the IRS Class Members' "mortgage interest" payments to BOA. They also seek declaratory relief asking the Court to declare that BOA's accounting and reporting practices are wrongful and that BOA be required to issue corrected IRS Form 1098s to Named Plaintiffs and Class Members for all tax years where BOA under-reported mortgage interest payments from Class Members to the IRS.

9. Plaintiffs' further request as ancillary equitable relief that BOA pay for any CPA/accounting fees that Class Members will incur in amending their tax returns to reflect the additional deductible mortgage interest that should have been available to them. Additional injunctive relief is requested to prohibit BOA from issuing IRS Form 1098s in the future that do not account for Class Members' payments to BOA of "deferred interest" on their Option ARM loans.

10. By not accounting for Class Members' payments of "unpaid interest" or "deferred interest" on IRS Form 1098, Plaintiff and the Class Members are being, and have been, deprived of the ability to deduct from their taxable income all "mortgage interest" paid to BOA, thereby (1) increasing the overall taxable income of Class Members by potentially tens of millions of dollars, and (2) decreasing BOA's reportable earned income to the IRS.

## THE PARTIES

11. Plaintiff HORN is an attorney, and at all times mentioned herein was, an individual residing in the County and City of San Diego, State of California. Plaintiff has a mortgage loan owned and/or serviced by BOA. Plaintiff received IRS Form 1098s from BOA which under-reported the amount of "mortgage interest" Plaintiff paid to BOA in 2009, 2010 and 2011.

12. Plaintiff GUREVICH is an attorney specializing in taxation, and at all times mentioned herein was, an individual residing in the State of Massachusetts. Plaintiff GUREVICH had a mortgage loan owned and/or serviced by BOA. Plaintiff received IRS Form 1098s from BOA which under-reported the amount of "mortgage interest" Plaintiff paid to BOA at least 2011 after she sold her home.

12. Class Members reside in or are located throughout the United States and in foreign jurisdictions. Each Class Member either owns a main home, second home, residential rental home, or combinations thereof in the United States with a BOA-owned Option ARM loan where BOA failed to include in the Class Member's Form 1098 the amounts of previously deferred interest the consumer paid during that year, payments of interest the consumer had previously deferred in the consumer's Form 1098.

13. Defendant BANK OF AMERICA, N.A. is, and at all times mentioned herein was, a national banking association with corporate headquarters located at 100 N. Tryon St., Charlotte, North Carolina.

14. Non-Defendant BAC HOME LOANS SERVICING, L.P. (formerly doing business as Countrywide Home Loans Servicing, LP), is, and at all times mentioned herein was, a limited partnership registered in the State of Texas with corporate headquarters located at 7105 Corporate

Drive, Plano, Texas. At all relevant times, BAC Home Loans Servicing, LP participated in the acts complained of herein up to and including July 11, 2011 with respect to Plaintiff HORN's loan, at which time it merged with and into defendant Bank of America, N.A.

15. Non-Defendant BAC Gp, LLC (formerly Countywide Gp, LLC) is, and at all times mentioned herein was, a limited liability company registered in the State of Nevada with its company headquarters located at 4500 Park Granada, Calabasas, California, and at all relevant times was and is the General Partner of non-defendant BAC HOME LOANS SERVICING, L.P. Upon information and belief, Plaintiff alleges that at all relevant times, defendant Bank of America, N.A. is and was the Managing Member of non-defendant BAC Gp, LLC and fully controlled its activities.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to federal question jurisdiction and the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(a) and 1332(d), because the matter in controversy exceeds $5.0 million exclusive of interest and costs and the Named Plaintiffs are citizens of California and Massachusetts and BOA is not. Further, Class Members reside, on information and belief, in every state in America. There is therefore minimal diversity between the members of the class and the defendant. Further, more than two-thirds of the members of the putative Class Members are citizens of states different from that of the defendant and this case does not present a local controversy. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 2202.

17. This Court has personal jurisdiction over BOA because, among other things, BOA does business in the State of California and in this Judicial District, and because BOA has established minimum contacts with California such that the exercise of jurisdiction over it will not offend traditional notions of fair play and substantial justice. Indeed, BOA has voluntarily conducted business and solicited customers in the State of California for its loans, including in this Judicial District and continues to commit the wrongful acts alleged herein against California residents within this Judicial District.

18. Venue is proper in this Judicial District under 18 U.S.C. §1391 and 1965. BOA can be found in, has one or more agents in, and/or transacts or has transacted business in this judicial district.

## CLASS ALLEGATIONS

19. Paragraphs 1 through 18 above are incorporated herein by reference.

20. The Named Plaintiffs bring this action on their own behalf and on behalf of a class of persons similarly situated to them pursuant to Rule 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

21. Named Plaintiffs seek to represent a class of:

> **All mortgagors of BOA or its predecessors-in-interest who made payments of "deferred interest" to BOA on Option ARM loans secured by real property in the United States (or in its territories and protectorates) which BOA did not report on the mortgagors' IRS 1098 form.**

Named Plaintiffs reserve the right to amend the definition of the Class, or to amend to state appropriate sub-classes following discovery.

22. Named Plaintiffs do not know the exact size of the Class or the identities of the Class Members since such information is in the exclusive control of defendant. They believe that the Class encompasses hundreds of thousands, if not millions, of individuals who are geographically dispersed throughout the United States and in foreign nations. The number of members in the Class are so numerous that joinder of all Class Members is impracticable.

23. There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individuals. Among these common questions are:

a. Whether "deferred interest" or "unpaid interest" that was paid by Class Members to BOA is "mortgage interest" under Section 163(a) of the Internal Revenue Code for Internal Revenue Service reporting purposes;

b. Whether BOA under-reported Class Members' deferred mortgage interest payments to the Internal Revenue Service;

c. Whether BOA maintains written and/or unwritten policies, procedures and/or practices concerning the accounting and reporting of mortgage "deferred interest" or "unpaid interest" payments received by BOA from Class Members, and whether those policies have changed over time;

d. Whether BOA acted intentionally in committing its wrongs against the Class;

e. Whether there is any ambiguity in the Option ARM loan contracts of the Class Members as to the accounting of "deferred mortgage interest" payments;

f. Whether BOA's disclosures to consumers were adequate as to how it would treat payments of "deferred mortgage interest;"

g. What injunctive relief would be appropriate to prevent further wrongful conduct by BOA; and

h. What remedial measures would be appropriate to remedy the wrongs that have been done by BOA to the Class?

24. The claims of the Named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other Class Members in that both the Named Plaintiffs and the other Class Members were subjected to the same wrongful policies, practices and procedures of BOA.

25. The Named Plaintiffs will fairly and adequately represent the interests of the other Class Members. The Named Plaintiffs have retained skilled and experienced counsel to represent the Class in this class action litigation.

26. There is a national interest in uniformity of taxation and uniformity of tax reporting. Prosecution of separate actions by individual Class Members challenging defendant's policies, practices and procedures would create the risk of inconsistent or varying adjudications that would create chaos in the administration of national taxes and would be inconsistent with the federal policy of uniformity of taxation.

27. Because of the federal interest in uniformity in taxation, prosecution of separate actions would also create the risk of adjudications with respect to individual Class Members which

would, as a practical matter, be dispositive of the interests of Class Members who are not parties to those adjudications and would/could substantially impair or impede their ability to protect their interests.

28. In adopting and implementing the policies, practices and procedures hereinafter alleged, BOA has acted, failed, or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or declaratory relief with respect to the Class as a whole.

29. The class action is superior to other available methods for fairly and efficiently adjudicating the issues concerning whether Defendant's policies, practices and procedures in accounting for and reporting the payment of "deferred mortgage interest" received by BOA have class-wide impact and effect are in violation of IRS requirements.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

30. Named Plaintiffs hereby incorporate by reference and plead the following facts and allegations into all Counts hereinafter alleged:

### A. BOA OPTION ARM LOAN AND SERVICING ACTIVITIES

31. Named Plaintiffs are informed and believe, and thereon allege, that BOA is among the largest mortgage lenders and mortgage servicing companies in the United States.

32. Named Plaintiffs are informed and believe, and thereon allege, that at all relevant times, BOA owns, owned, serviced and/or services many hundreds of thousands, if not millions of mortgage loans throughout the United States, and at least tens of thousands within just this Judicial District.

33. Among the mortgage loans previously or presently owned and/or serviced by BOA are a substantial number of mortgage loans (number unknown but estimated to be in the hundreds of thousands if not millions) commonly referred to as "Option ARMs." Named Plaintiffs both had such loans with BOA.

34. Option ARMs are adjustable rate mortgage loans where, pursuant to the deed of trust and/or promissory note, the borrower has the option to make minimum monthly mortgage payments

to BOA that may not fully pay the interest then due on the promissory note. The interest due which is not covered by the borrowers' "Minimum Payment" is identified by BOA as "deferred interest" or "unpaid interest" and is added to the mortgage loan balance by BOA.

35. BOA defines the "Principal" in the Option ARM loans as the "Original Loan Amount." This does not include any accrued "deferred interest." An increase in the loan amount due BOA is identified by BOA as "Negative Amortization." But an increase in the mortgage loan balance due to "Negative Amortization" does not equate to an increase in the "Original Loan Amount" or the "principal balance" as defined by BOA.

36. Named Plaintiffs are informed and believe, and thereon allege, that Class Members have, or had, their Option ARM loans owned and/or serviced by BOA in all fifty (50) states of the United States and, on information and belief, in Puerto Rico, the United States Virgin Islands, and other United States territories and protectorates.

**B. <u>BOA OPTION ARM LOANS AND DEFERRED UNPAID INTEREST</u>**

37. Named Plaintiffs are informed and believe, and thereon allege, that BOA owns and/or services hundreds of thousands (and perhaps millions) of Option ARMs having an aggregate value in the multiple billions of dollars. Many, if not all, of the Option ARMs owned by BOA originated from lending institutions which BOA has acquired over the years including, but not limited to, Countrywide Financial which BOA purchased for $4.1 billion in 2008. Named Plaintiffs' loans were both originated through Countrywide Financial. It is alleged on information and belief that BOA applies the same policies with respect to the non-reporting of "deferred interest" payments by consumers as to all of the negative amortization loans in its portfolio, whether the loan was originated by itself, or whether originated through other lenders.

38. Named Plaintiffs further are informed and believe, and thereon allege, that the vast majority of mortgages owned and/or serviced by Countrywide and its subsidiaries and affiliates were Option ARMs.

39. Named Plaintiffs are informed and believes, and thereon allege, that in 2006, Countrywide financed approximately twenty percent (20%) of all mortgages in the United States, at

a value of about 3.5% of United States Gross Domestic Product, a proportion greater than any other single mortgage lender.

## C. BOA HAS A DUTY TO ACCURATELY REPORT THE AMOUNT OF MORTGAGE INTEREST PAID TO BOA BY CLASS MEMBERS

40. The United States Department of the Treasury - Internal Revenue Service ("IRS") requires that BOA annually file "Form 1098" ("Mortgage Interest Statement") with the IRS reporting the amount of "mortgage interest" paid to BOA by Class Members. Mortgage interest can be and is used as deductions by the named Plaintiffs and Class Members on an income tax return to reduce taxable income and the overall amount of taxes owed by the named Plaintiffs and Class Members to the IRS. [See 26 U.S.C. § 6050H, IRS Publication 936 and IRS Publication 527]

41. Pursuant to 26 U.S.C. § 6050H and IRS Publication 936, "mortgage" is defined as: "*...any obligation secured by real property.*"

42. In IRS Publication 936, the IRS defines "*Home Mortgage Interest" as: "... any interest you pay on a loan secured by your home (main home or a second home.)*" Internal Revenue Code Section 163(a) states that "[t]here shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." The United States Supreme Court has held that "interest" as used in Section 163(a) is not a complicated concept requiring special knowledge or expertise to understand, but that "the usual import of the term is the amount which one has contracted to pay for the use of borrowed money." *Old Colony R. Co. v. Commissioner of Internal Revenue*, 284 U.S. 552, 560-561 (1932).

43. In IRS Publication 936, the IRS allows for deduction of mortgage interest as follows: "***Fully deductible interest.*** *In most cases, you can deduct all of your home mortgage interest.*"

44. The IRS also allows for the deduction of mortgage interest paid on Residential Rental Properties. [See IRS Publication 527 and IRS Publication 535- Chapter 4]. Plaintiff GUREVICH's property with the BOA Option ARM loan was her primary residence. Plaintiff HORN's property with the BOA Option Arm loan is a residential rental property.

45. BOA is engaged in a trade or business which, in the course of such trade or business, receives from individuals six-hundred dollars ($600) or more in mortgage interest on any one mortgage it owns and/or services during the calendar year.

46. Each year, BOA has a duty to accurately report to the IRS more than $600 of "mortgage interest" BOA receives from borrowers/payers, including, but not limited to, the Named Plaintiffs and Class Members, during the previous year. [See 26 U.S.C. § 6050H, IRS Form 1098 – *Instructions For Payer/Borrower, IRS 2012 Instructions for Form 1098* published September 15, 2011 as Cat. No. 27977Q, and Form 1098 Instructions for previous tax years]

47. Each year during which more than $600 dollars in interest is paid, BOA has a duty to provide to the Named Plaintiffs and Class Members a copy of the IRS Form 1098 BOA files with the IRS stating the accurate amount of "mortgage interest" paid to BOA by its borrowers during the reportable tax year. [See 26 U.S.C. § 6050H, IRS Form 1098 – *Instructions For Payer/Borrower, IRS 2012 Instructions for Form 1098* published September 15, 2011 as Cat. No. 27977Q, and Form 1098 Instructions for previous tax years.] The I.R.S. then cross-compares the amount reported by BOA on the 1098 with the amount of interest claimed by the tax payer on his/her tax return. Named Plaintiffs are informed and believe, and thereon allege, that at all relevant times hereto, BOA reports "mortgage interest" on IRS Form 1098s without distinguishing between mortgage interest paid on loan obligations secured by main homes, second homes or residential rental property owned by Plaintiff and/or Class Members.

**D. <u>PLAINTIFFS' "DEFERRED INTEREST" PAYMENTS TO BOA</u>**

48. In 2005, Plaintiff HORN obtained an Option ARM loan in the amount of $392,000 from one of BOA's predecessors-in-interest. Plaintiff HORN executed an Adjustable Rate Note ("Note") which stated that $392,000 "*…is called 'Principal.'*" Pursuant to the Note, Plaintiff HORN thereafter made monthly "Minimum Payments" to BOA which did not always cover the mortgage interest then due. Sometimes, however, depending on the then prevailing interest rate, the minimum payment would more than cover the interest then due for a given month. Attached hereto as Exhibit "A" and made a part of this Complaint is a true and correct copy of Plaintiff HORN's Note.

49. Since 2005, Plaintiff HORN has received Monthly Home Loan Statements from BOA and its predecessors. Plaintiff GUREVICH also received such statements from BOA when her loan was still outstanding. Named Plaintiffs HORN and GUREVICH are informed and believe, and thereon allege, that all Class Members received substantially similar Monthly Home Loan Statements from BOA. Attached hereto as Exhibit "B" and made a part of this Complaint, is a true and correct copy of Plaintiff HORN's redacted November 2011 Monthly Home Loan Statement received from BOA. It is alleged that all Class Members received similar forms from BOA.

50. Therein, BOA represented to Class Members that if the "*Minimum Payment is less than the Interest Only Payment" paying the "Minimum Payment will not be enough to cover the interest due.*" [Exhibit "B" - page 1].

51. BOA further represented that "*The interest due, which is not covered by [Plaintiff's and Class Members'] Minimum Payment, is known as **<u>Deferred Interest</u>** and will be added to the amount [Plaintiff and Class Members] owe on [Plaintiff and Class Members'] loan.*" [Exhibit "B" – page 1].

52. BOA further represented that "*Negative amounts...shown in the **<u>deferred interest</u>** column are added to the principal balance. This results from making a Minimum Payment that is less than the interest due.*" [Exhibit "B" – page 1].

53. Page 2 of Exhibit "B" discloses a column for "Principal/Deferred Interest" with an asterisk (*) noting that "*Amounts preceded by a (-) sign have been added to the principal balance.*"

54. Page 3 of Exhibit "B" offers Plaintiff HORN and Class Members four (4) options to make payments to BOA (hence "Option ARM"). BOA represented to Plaintiff and Class Members that in choosing the Minimum Payment in Option 3:

> ***"If this amount is less than the Interest Only, this will not be enough to pay all of the interest due, will not reduce your principal, and <u>the unpaid interest will be added to your principal</u>."*** [Emphasis added - see page 3 of Exhibit "B"]

55. In BOFA-originated negative amortization notes, the language is effectively the same. See pages 34-38 of Document No. 1 from the Northern District of California case of *O'Donnell et al. v. Bank of America Corporation, et al.* (Northern District case no. 5:07-cv-04500-RMW) which is attached as Exhibit "C." Beginning with paragraph (F) in that note, it states that "deferred" interest

"will be added to the principal balance of my loan." *Id.* at p. 35. Plaintiff HORN's note also says the same thing, albeit less elegantly – "Note holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal." See Exhibit "A-1," at p. 3.

56. It is alleged that in all Class Members' BOA negative amortization notes there is language that "deferred interest" will be "added" to the principal balance of the loan.

57. Exhibit "C" also contains the provision that: "Each monthly payment will be applied as of its scheduled due date and will be applied first to current interest, *then to prior unpaid interest*, and the remainder to principal." See Exhibit "C" at p. 34 (emphasis added). By this language, BOFA is recognizing that there is a distinction between the payment of "prior unpaid interest" and principal.

58. On BOA's Monthly Home Loan Statements sent to Plaintiff Horn, BOA represented the "Principal" was to be the "Original Loan Amount" and accounted for Plaintiff's monthly payment by applying such payment to either; (1) "Interest;" or (2) "Principal/Deferred Interest," thus also recognizing a distinction between principal, on the one hand, and deferred interest on the other.

59. Pursuant to the Note, Plaintiff HORN elected to make "Minimum Payments" to BOA. Plaintiff GUREVICH also made payments of less than the amount of interest due during the course of her loan. These Minimum Payments, which were expressly allowed by the terms of the Named Plaintiffs' notes, did not always cover the interest that would have been due under a fully amortized or interest-only payment schedule. At other times, Plaintiff HORN paid more than the interest and principal due in a given month. Plaintiff GUREVICH paid all of her deferred interest when the loan was retired and may have paid deferred interest at other times as well during the course of her loan.

60. Plaintiffs are informed and believe, and thereon allege, that in months when interest rates were higher and Plaintiffs and Class Members made Minimum Payments to BOA, deferred interest accrued and the Option ARM loan balances increased.

61. Plaintiffs are informed and believe, and thereon allege, that in months when interest rates were lower and named Plaintiffs and Class Members made Minimum Payments which were more than the interest due for that month, BOA applied that portion of the Minimum Payment that

was more than the interest due for that month to decrease the Option ARM loan balance. Contrary to the practice of other national banks, BOA wrongfully considers this payment of "deferred interest" as merely "a reduction in principal." And, this is where the problem lies.

62. Plaintiffs further allege that in 2009, applicable interest rates on Option ARMS began to decrease. Plaintiff HORN's mortgage loan balance also decreased when BOA applied a portion of Plaintiff's Minimum Payments (which included payments of accrued "deferred interest") as a 'reduction in principal" as opposed to payment of "deferred interest." Plaintiff GUREVICH alleges on information and belief that this same phenomenon happened to her when interest rates fell in 2009. Plaintiffs are informed and believe, and thereon allege, that all Class Members were similarly affected and thereby reduced their outstanding mortgage loan balance amounts due BOA in the year 2009 and perhaps before.

63. In or about January 2010, BOA mailed 2009 IRS Form 1098 to Plaintiff HORN, and under-reported Plaintiff's "mortgage interest" by more than $3,000. Plaintiff GUREVICH alleges that BOA also under-reported her interest payments for 2009. Relying upon this Form 1098, Plaintiff HORN did not report the additional mortgage interest payment of more than $3,000 to the IRS and did not take a deduction on his tax return for that amount. Plaintiff GUREVICH also did not take a deduction for the under-reported interest in 2009.

64. In or about 2010, Plaintiff GUREVICH sold her home and paid off all of the deferred interest on her loan. BOA sent Ms. Gurevich a Form 1098 that understated the amount of interest she paid because, again, BOA took the position that the payment of the interest Plaintiff GUREVICH had deferred was merely a repayment of principal.

65. As a result of BOA's accounting practices, Named Plaintiffs are informed and believe, and thereon allege, that Class Members are and were similarly affected by BOA's under-reporting of mortgage interest to the IRS. Class Members are and were deprived of the ability to adequately prepare their tax forms and deduct from their taxes the full amount of mortgage interest they paid to BOA in at least 2009 to the present.

66. At the beginning of 2009, Plaintiff HORN's mortgage balance was approximately $428,000. By the end of 2009, as a result of Plaintiff's payment of "deferred interest," (which BOA

erroneously characterized as a "reduction in principal") Plaintiff's mortgage balance dropped to approximately $425,000, but Plaintiff HORN was not able to take the deductions he was entitled to take. Plaintiffs are informed and believe, and thereon allege, that Class Members were similarly affected.

67. In 2010, Plaintiff HORN again paid BOA monthly "Minimum Payments" which were greater than the interest then due for those months. BOA again paid the additional amount over the interest due for those months toward the mortgage loan balance as a "reduction in principal" as opposed to Plaintiff's payment of "deferred interest."

68. In or about January 2011, BOA mailed Plaintiff HORN his 2010 IRS Form 1098. BOA again under-reported Plaintiff HORN's "mortgage interest" by approximately $10,116. Relying upon this Form 1098, Plaintiff did not report the additional "mortgage interest" payment of $10,116 to the IRS and did not take a deduction on his tax return for that amount.

69. As a result of BOA's accounting practices, Plaintiffs are again informed and believe, and thereon allege, that Class Members are and were similarly affected by BOA's under-reporting of mortgage interest to the IRS. As a result, Class Members are and were deprived of the ability to adequately prepare their tax forms and deduct from their taxes the full amount of "mortgage interest" they paid to BOA in 2010.

70. At the beginning of 2010, Plaintiff HORN's mortgage balance was approximately $425,000. By the end of 2010, thanks to BOA's wrongful accounting practices in applying Plaintiff's payment of "deferred interest" to principal, Plaintiff's loan balance dropped to approximately $414,000, but Plaintiff HORN was not able to take the deductions he was entitled to take. Plaintiffs are informed and believe, and thereon allege, that Class Members were similarly affected by their deferred interest payments reducing their outstanding mortgage balance loan amounts due BOA and not being able to deduct the mortgage interest they should have been able to deduct.

71. In 2011, Plaintiff HORN paid BOA monthly "Minimum Payments" which BOA again wrongfully accounted for payments of "deferred interest" by later characterizing them to be "reductions in principal."

72. On or about May 26, 2011 and May 28, 2012, BOA mailed to Plaintiff an "*Adjustable-Rate Mortgage (ARM) Payment Adjustment Notice*" ("Notices"). Attached hereto as Exhibit "D" and made a part of this Complaint, are true and correct copies of the Notices.

73. Among other things, the Notices again represented that "unpaid interest" is added to the consumer's "mortgage balance," but not to the loan principal:

> ***"Making your Minimum Payment each month may not be enough to cover the interest you owe on your mortgage and, if that is the case, will cause your <u>mortgage balance</u> to increase because the <u>unpaid interest each month is added to your mortgage balance</u>."*** [emphasis added]

74. Plaintiff HORN is informed and believes, and thereon alleges, that Class Members received similar Notices from BOA.

75. In or about June 2011, BOA mailed to Plaintiff HORN a "*Notice of Assignment, Sale or Transfer of Servicing Rights.*" Such Notice advised Plaintiff that the servicing of his mortgage loan and the right to collect payments thereunder would transfer from BOA Home Loans Servicing, LP to Bank of America, N.A. effective July 1, 2011. Named Plaintiffs are informed and believe, and thereon allege, that Class Members with outstanding negative amortization loans received similar notices of transfer of servicing from BOA.

76. In or about January 2012, BOA mailed Plaintiff HORN his 2011 IRS Form 1098. BOA again under-reported Plaintiff's "mortgage interest" to the IRS by $10,628. Relying upon this IRS Form 1098, Plaintiff HORN did not report the additional "mortgage interest" payment of $10,628 to the IRS and did not take a deduction on his tax return for that amount. (It was not until 2012 that Plaintiff HORN became aware of how BOA was understating the amount of interest he was paying. Prior to that time, like tens of thousands of other American consumers, he had simply taken the information provided by BOA on Form 1098 at face value and assumed it was correct). The same is true for plaintiff GUREVICH.

77. Having each independently realized the under-reporting of mortgage interest by BOA, both Named Plaintiffs complained to BOA. Specifically, in March 2012, Plaintiff HORN contacted BOA about the discrepancy in "mortgage interest" payments on the IRS Form 1098 issued to him by BOA. BOA informed Plaintiff HORN that the $10,628 "deferred interest" payments were

a "reduction in principal" and therefore not reportable on IRS Form 1098 as "mortgage interest." Plaintiff disagreed with this characterization and requested a corrected IRS Form 1098. BOA refused.

78. In or about April 2012, Plaintiff GUREVICH 's husband, a tax accountant, wrote to BOA and similarly raised the issue that BOA's interest reporting practices were incorrect and demanded that BOA issue the GUREVICH's a corrected Form 1098 for the year 2010, the year that Plaintiff GUREVICH and her husband sold their BOA-financed home. As with Plaintiff HORN, BOA likewise refused to provide the GUREVICH's a corrected Form 1098. Indeed, a BOA representative told Plaintiff GUREVICH's husband over the telephone that BOA had changed its interest reporting policy in 2009, and that prior to that time, it had in fact reported payments of deferred interest on Form 1098. However, Mr. Gurevich was told that it no longer did so. Thereafter, plaintiff GUREVICH and her husband filed with the IRS, a Form 1040x (amendment of tax return form) with the interest amounts the Gurevich's believed were correct.

79. On November 5, 2012, the IRS rejected the Gurevich's proposed amended return stating, *inter alia*, that "we cannot adjust the amount claimed on schedule A for mortgage interest, without a corrected Form 1098 from Bank of America." A true and correct copy of this letter is attached hereto as Exhibit "E." And, since BOA has already refused to provide such a corrected Form 1098, Plaintiff GUREVICH has no other recourse, other than through this action, to obtain such a corrected return so as to be able to properly file her taxes. Named Plaintiffs further allege that since the IRS will not allow tax payers to file returns with different amounts of reported interest than appear on BOA's Form 1098, as evidenced by the November 5 letter from the IRS to Plaintiff GUREVICH, this action is the only way to vindicate the rights of all Class Members.

80. As a result of BOA's mischaracterization of deferred interest payments as principal reduction payments, as opposed to payments of interest, Plaintiffs are informed and believe, and thereon allege that all Class Members are and have been similarly affected, have been deprived of the ability to adequately and accurately prepare their tax forms, and have been precluded from deducting from their taxes the full amount of mortgage interest they are entitled to deduct.

81. Plaintiffs allege that BOA has a legal and contractual duty to accurately report all payments of mortgage interest received during any tax year from Plaintiffs and Class Members on IRS Form 1098 and that BOA failed in that duty as to all Class Members.

82. By not including payments of mortgage "deferred interest" or "unpaid interest" on IRS Form 1098, BOA filed with the IRS hundreds of thousands, if not millions, of inaccurate IRS Form 1098s under-reporting the amount of "mortgage interest" payments Plaintiffs and Class Members paid to BOA.

83. During all relevant times, the IRS published "Tax Tips" to taxpayers. In 2011, the IRS published the following Tax Tip:

> ***"IRS Tax Tip 2011-48, March 9, 2011***
>
> *When filing your federal income tax return, taxpayers can choose to either take the standard deduction or to itemize their deductions. The IRS has put together the following six facts to help you choose the method that gives you the lowest tax.*
>
> *Whether to itemize deductions on your tax return depends on how much you spent on certain expenses last year.* ***Money paid for… mortgage interest, …can reduce your taxes. If the total amount spent on those categories is more than your standard deduction, you can usually benefit by itemizing.*** " [emphasis added]

84. Upon information and belief, at all relevant times hereto, Named Plaintiffs and the vast majority, if not all, of Class Members relied upon the BOA-provided IRS Form 1098 when preparing their tax returns and determining if they would take the standard deduction or itemize their tax deductions, and then calculated their taxable income for the IRS and state revenue agencies. But even as to those few tax payers who may have tried to report a different amount than was reported on their 1098 form provided by BOA, plaintiffs allege that the IRS would not have accepted those different amounts and would have rejected those amounts just as the IRS did with Plaintiff GUREVICH. Alternatively, the IRS would likely audit anyone who filed with a different amount of mortgage interest than reflected on BOA's 1098.

85. Upon information and belief, at all relevant times hereto, Named Plaintiffs and Class Members either: (1) reported the amount of under-reported "mortgage interest" shown on the BOA-provided IRS Form 1098s as the amount of the "mortgage interest" deduction that could be taken by Plaintiff and Class Members; or (2) took a "standard deduction" on their tax returns because the

amount shown on the BOA-provided IRS Form 1098s did not exceed the "standard deduction" allowed by the IRS. The latter group of persons, however, may have chosen to itemize had the correct amount of interest been reflected on their Form 1098.

86. Thus, upon information and belief, at all relevant times hereto, BOA systematically failed and/or refused to properly account on its own financial statements and tax returns for millions, if not billions, of dollars of "deferred interest" or "unpaid interest" income BOA received from Plaintiff and Class Members.

87. By systematically accounting for the "unpaid interest" or "deferred interest" in that manner that it does and did, Named Plaintiffs are informed and believe, and thereon allege, that BOA has deprived named Plaintiffs and Class Members of potentially hundreds of millions worth of "mortgage interest" tax deductions that would otherwise have been and should be available to Named Plaintiffs and Class Members.

88. Named Plaintiffs are informed and believe, and thereon allege that BOA has engaged in this wrongful accounting practice solely to benefit itself by reducing its public debt exposure while reporting deferred interest as income, thus making its balance sheet appear stronger than it actually is.

89. Named Plaintiffs are informed and believe, and thereon allege, that other mortgage lenders and servicers, including, but not limited to, Wells Fargo Bank, N.A., have similar Option ARM loans in their portfolio and accurately report to the IRS (and the individual borrowers) the payment and receipt of all mortgage interest paid to them during the tax year, including their borrowers' payments of "deferred interest."

## PRELIMINARY AND PERMANENT INJUNCTION

90. Named Plaintiffs re-allege and hereby incorporate each and every allegation contained in Paragraphs 1 through 90 of this Complaint as though fully set forth herein.

91. Named Plaintiffs are informed and believe, and thereon allege, that BOA's acts and omissions as alleged above, if allowed to continue will cause significant problems in the future for

Plaintiff and Class Members who seek to take a tax deduction for "mortgage interest" on their annual tax returns.

92. Named Plaintiffs are informed and believe, and thereon allege that without injunctive relief requiring BOA to change its reporting practices and to issue corrected 1098 forms to all Class Members, including Plaintiffs, then Plaintiffs and Class Members will have no adequate remedy at law for BOA's under-reporting of their payment of "mortgage interest" to the IRS in any given tax year.

93. Named Plaintiffs are informed and believe, and thereon allege that defendant's wrongful actions and omissions as alleged above, if permitted to continue and occur, will cause great and irreparable harm to Plaintiffs and Class Members. It is impossible for Plaintiffs to assess the precise amount of damages that Plaintiffs and Class Members will sustain if defendants' conduct is not enjoined.

94. As a proximate result of defendant's continuing wrongful conduct, named Plaintiffs and Class Members will suffer from the inability to properly account for a mortgage interest deduction they are entitled to take when filing their annual tax returns. And, as evidenced by the letter sent by the IRS to the Gurevich's, even if Class Members do properly calculate the amount of "deferred" interest they paid on their own and report that amount on their tax return, the IRS will reject their filing, or, worse, audit them because the amounts reported will not match the amounts BOA has reported on Form 1098.

95. Wherefore, Plaintiffs, on behalf of themselves and all Class Members seek 1) to enjoin BOA from issuing any IRS Form 1098s that do not account for BOA's receipt of "deferred interest" or "unpaid interest" received from Plaintiff and Class Members, 2) that BOA be compelled to issue corrected 1098 forms to all Class Members, and 3) that BOA be compelled to pay for the accounting fees necessary for all Class Members to amend their tax returns should they wish to do so to correct BOA's error.

///

**<u>COUNT I</u>**

**BREACH OF CONTRACT**

96. Plaintiffs re-allege and hereby incorporate each and every allegation contained in Paragraphs 1 through 96 of this Complaint as though fully set forth herein.

97. With the origination of each loan, BOA, or its predecessors-in-interest, provided Plaintiffs and Class Members with deeds of trust and promissory notes, and related loan documents, which serve as the contract between the Class Members and BOA ("loan documents").

98. The loan documents do not contain any provision specifically governing the manner in which BOA would report mortgage interest to Class members and the IRS on IRS Form 1098. True and correct copies of Plaintiff HORN's Note and Adjustable Rate Rider are attached hereto as Exhibits "A" and "A-1," respectively. (Plaintiff GUREVICH is not in possession of her note with BOA as the loan was retired, however, she alleges that as it too was originated with Countrywide that it has the same or substantially similar provisions as Plaintiff HORN's note).

99. However, the Note in Section 3(f) and the Adjustable Rate Rider in Section 3(E) – "Additions to My Unpaid Principal"— provide that BOA "…will add [the deferred interest] to [the] unpaid Principal."

100. Plaintiffs allege from this language it is clear that "deferred" or "unpaid" interest is merely an <u>addition</u> to Principal and is not a part of "Principal" which is specifically defined in Plaintiff HORN's Note as "$392,000;" an exact figure that BOA subsequently seeks to re-define from time to time to suit its purposes at the expense of Plaintiffs and Class Members. This interpretation is consistent with the language in BOA's own note attached hereto as Exhibit "C."

101. When the provisions of the Note and Rider are read in conjunction with BOA's other loan-related documents, including Exhibits "A" and "B" and "C," Plaintiffs allege that BOA's loan documents are, at a minimum, ambiguous, and at worst, intentionally misleading with respect to the treatment of "deferred interest."

102. Plaintiffs allege that BOA's contracts with the Class Members contain an implied covenant of good faith and fair dealing requiring BOA to deal fairly and in good faith with Plaintiffs and that BOA has breached this covenant by doing the things herein alleged.

103. Moreover, upon information and belief, Plaintiffs allege that each Class Members' Deed of Trust and Promissory Note contain terms requiring BOA to comply with and be "…governed by federal law and the law of the jurisdiction in which the property is located." BOA has breached this contractual term by failing to accurately report interest payments as required by 26 U.S.C. § 6050H and the definition of interest under 26 U.S.C. § 163(a).

104. Upon information and belief, it is alleged that at the time Plaintiffs and the Class Members made their deferred interest mortgage payments, they had performed all obligations required of them by the loan documents, except those that were waived or excused. But even if they had not, BOA's duty to accurately report the payment of mortgage interest was independent of any duty owed by Class Members and thus any breach by them does not cancel or modify BOA's duty.

105. Further, BOA had a duty to act in good faith to fully and unambiguously disclose to Plaintiffs how it would account for and report Plaintiffs' "deferred interest" payments and/or to notify Class Members of any change BOA was making to its practices of reporting mortgage interest.

106. After receiving Plaintiffs' and the Class Members' mortgage interest payments, BOA breached the implied covenant of good faith and fair dealing and the "Governing Law" provisions of the loan documents and notes by failing to report to the IRS mortgage payments of "deferred interest" or "unpaid interest" it received from Plaintiff and Class Members consistent with IRS regulations and guidelines. This inaccurate reporting caused Class Members to receive inaccurate IRS Form 1098s thereby depriving them of significant tax deductions.

107. As a result of BOA's breach of the contracts and the covenant of good faith and fair dealing attendant thereto Plaintiffs and the Class Members have been damaged because of the significant loss of the tax deductions in an amount to be proven at time of trial including, but not limited to, damages needed to compensate Plaintiff and Class Members for the expenses to be incurred by them in filing amended tax returns for each year BOA under-reported the mortgage interest amounts on IRS 1098 forms.

///

**COUNT II**

**NEGLIGENCE PER SE**

[VIOLATION OF 26 U.S.C. § 6050H AND IRS RULES]

108. Plaintiffs re-allege and hereby incorporate each and every allegation contained in Paragraphs 1 through 107 of this Complaint as though fully set forth herein.

109. At all relevant times, BOA was required to file true and accurate Information Returns (i.e., IRS Form 1098s) with the IRS on an annual basis pursuant to 26 U.S.C. § 6050H and IRS official publications and rules thereunder. [See also IRS 2012 General Instructions for Certain Information Returns (including Form 1098) and 2012 Instructions For Form 1098 and all prior years Instructions].

110. At all relevant times, the IRS published official instructions to those persons/entities engaged in a business or trade where such trade or business receives from individuals, including Plaintiffs and Class Members, six-hundred dollars ($600) or more in mortgage interest on any one mortgage it owns and/or services during the calendar year. [See *IRS 2012 General Instructions for Certain Information Returns* (including Form 1098) and 2012 *Instructions For Form 1098* and all prior years Instructions].

111. As alleged above, BOA had a duty to accurately report to the IRS the amount of mortgage interest Plaintiffs and Class Members paid BOA. BOA breached its legal/statutory duty by filing IRS Form 1098s that under-reported the actual "mortgage interest" income it received from Plaintiffs and Class Members.

112. As a proximate result of BOA's breach of its statutory duty as herein alleged, Plaintiffs and Class Members have been harmed by having inaccurate Form 1098s filed with the IRS by BOA. As a result, Plaintiffs have been deprived of the ability to accurately report to the IRS the full amount of the mortgage interest deduction and/or itemize their deductions in lieu of taking the standard deduction.

113. Wherefore, Plaintiffs and Class Members have been damaged in an amount to be proven at time of trial including, but not limited to, damages needed to compensate Plaintiffs and

Class Members for the expenses to be incurred by Plaintiffs and Class Members in filing amended tax returns for each year BOA under-reported the mortgage interest amounts.

**COUNT III**

**NEGLIGENT MISREPRESENTATION**

114. Plaintiff re-alleges and hereby incorporates each and every allegation contained in Paragraphs 1 through 113 of this Complaint as though fully set forth herein.

115. On IRS Form 1098 for the 2009 tax year, BOA represented to Plaintiff HORN and the IRS that Plaintiff had paid BOA "mortgage interest" of $17,952 when, in fact, Plaintiff had paid approximately $22,936. It is alleged that BOA made similar misrepresentations relating to the amount of mortgage interest paid by plaintiff GUREVICH for 2009.

116. On IRS Form 1098 for the 2010 tax year, BOA represented to Plaintiff and the IRS that Plaintiff had paid BOA "mortgage interest" of $17,952 when, in fact, Plaintiff had paid approximately $25,395. It is alleged that BOA made similar misrepresentations relating to the amount of mortgage interest paid by plaintiff GUREVICH for 2010.

117. On IRS Form 1098 for the tax year 2011, BOA represented to Plaintiff HORN and the IRS that Plaintiff had paid BOA "mortgage interest" of $17,952 when, in fact, Plaintiff HORN had paid at least $22,603.

118. Named Plaintiffs are informed and believe, and thereon allege that defendants followed a systematic pattern of misrepresenting "mortgage interest" on all IRS Form 1098s it provided to Class Members during at least 2009 and 2010. The exact misrepresentation made by BOA (i.e., the exact amount of the mortgage interest actually paid to BOA by Class Members) is known exclusively to BOA and the unidentified Class Members.

119. By under-reporting Plaintiffs and Class Members' mortgage interest on IRS Form 1098, BOA misrepresented to Plaintiffs, Class Members and the IRS the actual amount of mortgage interested paid by Plaintiffs and Class Members to BOA in any given year.

120. Named Plaintiffs are informed and believe, and thereon allege that this type of misrepresentation of mortgage interest paid by Plaintiffs and Class Members was commonly made

by BOA on every IRS Form 1098 that BOA filed with the IRS and provided to Plaintiffs and Class Members.

121. This common misrepresentation of mortgage interest paid by Plaintiffs and Class Members was material in that the amount reported on the IRS Form 1098 determined whether Plaintiffs and Class Members would take an itemized deduction or take the "standard deduction."

122. Additionally, this common misrepresentation of mortgage interest paid by Plaintiffs and Class Members was material in that, if Plaintiffs and Class Members chose to take an itemized deduction based on the amount reported on the IRS Form 1098 by BOA, Plaintiffs and Class Members understated their allowable deduction for mortgage interest thereby paying additional taxes that would otherwise not be payable.

123. The representations on Plaintiffs and Class Members' IRS Form 1098s were, in fact, false. Should it be the case that the BOA did not know how to properly account for and report "mortgage interest" on IRS Form 1098, which is dubious, defendants should have known how to do so by employing presumably competent tax advisors, being familiar with industry-wide practices, and reviewing the verbiage of BOA Monthly Home Loan Statements (i.e., "unpaid interest"), the Internal Revenue Code, and IRS rules and publications.

124. The common representations on IRS Form 1098 were made with the intention to induce Plaintiffs and Class Members to rely upon them by in preparing and accurately calculating their taxable income for the IRS.

125. Plaintiffs' and Class Members' reliance upon the representations was reasonable and justified as the calculation of interest payments on Option ARM loans is a mystery to most people who do not have the algorithms to make such calculations or even begin to know how to calculate the manner in which interest payments are applied.

126. Plaintiffs and Class Members' reliance upon the representations was reasonable and justified given the fact that BOA is a highly-regulated national bank having a legal duty to accurately calculate and report mortgage interest to the IRS. Plaintiffs and Class Members had a right to rely upon BOA to accurately calculate the mortgage interest they paid to BOA.

127. Additionally, Plaintiffs' and Class Members' reliance upon the representations was reasonable and justified given Plaintiff and Class Members belief that BOA would act in good faith in calculating and reporting mortgage interest on IRS Form 1098.

128. Plaintiffs and Class Members had no reason to believe that the representations made on IRS Form 1098 by BOA were not true.

129. Named Plaintiffs are informed and believe, and thereon allege that in reliance on these representations, Plaintiffs and Class Members were induced to and did file tax returns with the IRS based upon the misrepresentations of BOA.

130. As a proximate result of defendants' wrongful acts and omissions as alleged herein, Plaintiffs and Class Members have been damaged in an amount according to proof at time of trial including, but not limited to, damages needed to compensate Plaintiffs and Class Members for the expenses to be incurred by Plaintiff and Class Members in filing amended tax returns for each year BOA under-reported the mortgage interest amounts.

## COUNT IV

## INTENTIONAL MISREPRESENTATION

131. Plaintiffs re-allege and hereby incorporate each and every allegation contained in Paragraphs 1 through 130 of this Complaint as though fully set forth herein.

132. When BOA made the above misrepresentations, it knew them to be false. BOA knew that Plaintiffs' and Class Members' principal balance is and was the same as the "Original Loan Amount" and, in each instance, knew that Plaintiffs' and Class Members' principal balances had not decreased – only the "mortgage balances" decreased.

133. More specifically, the defendants knew that the increase in Plaintiffs' and Class Members' mortgage balances was attributable to accrued "unpaid interest" and any payment of such unpaid interest would be reportable as "mortgage interest" on IRS Form 1098.

134. The common misrepresentations were made with the intention to induce Plaintiffs and Class Members to rely upon them so that BOA could account for the receipt of such income in some manner beneficial to BOA and detrimental to Plaintiffs and Class Members.

135. As a proximate result of BOA's wrongful acts and omissions as alleged herein, Plaintiffs and Class Members have been damaged in an amount according to proof at time of trial.

136. The aforementioned conduct and misrepresentations of BOA constituted intentional misrepresentation, deceit and concealment of material fact known to defendants with an intention on the part of defendants to deprive Plaintiffs and Class Members their legal rights or otherwise cause them injury. The knowing and intentional mischaracterization was done with the specific intent to benefit BOA with a complete disregard to the harm BOA knew would be caused to Plaintiffs and Class Members.

137. Plaintiffs allege that such acts and omissions constitute despicable conduct which subjected Plaintiffs and Class Members to loss of tax deductions and unjust hardship in conscious disregard of their rights so as to justify an award of punitive damages against BOA.

## COUNT V

## UNFAIR/DECEPTIVE BUSINESS PARACTICES

138. Plaintiffs re-allege and hereby incorporate each and every allegation contained in Paragraphs 1 through 137 of this Complaint as though fully set forth herein.

139. California Business & Professions Code § 17200 et seq. ("UCL") prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

140. Defendant BOA's scheme, included making false and misleading representations to borrowers, occurring, in part, in California, constitutes unlawful, unfair and fraudulent business practices under the UCL and would also constitute violations of similar consumer protection laws in applicable in the several United states. In particular, because defendants' Option ARM loans were primarily obtained from Countrywide Financial which was headquartered in California, the UCL can be fairly applied to a class of borrowers, both within and outside of California, who have been harmed as a result. Moreover, California has a substantial interest in preventing fraudulent practices within the state which may have an effect both in California and throughout the rest of the country. However, in the event that the Court determines that the UCL cannot be applied in these circumstances outside of California, then Plaintiff HORN assert that a separate subclass of California

borrowers should be certified for plaintiff's UCL claim. This class would be defined in the same manner as the main class, but would be limited to Class Members with loans secured by real property in California.

141. Specifically, Plaintiffs and Class Members have been injured by the false and misleading statements of BOA as hereinbefore alleged. Plaintiff and Class Members have suffered, to varying degrees, years' worth of allowable tax deductions.

142. Plaintiffs' claims involve questions of common and general interest as provided under California Code of Civil Procedure § 382.

143. Plaintiffs have suffered losses of money as a result of defendants' unlawful, deceptive and unfair business practices and will incur future losses as a result of having to amend their tax returns. As a result of defendants' violations of the UCL, Plaintiffs and Class Members are entitled to bring this claim for injunctive relief and consequential damages in the form of accountancy fees they will have to incur to correct BOA's error.

**COUNT VI**

**DECLARATORY RELIEF**

144. Plaintiffs re-allege and hereby incorporate each and every allegation contained in Paragraphs 1 through 144 of this Complaint as though fully set forth herein.

145. An actual controversy has arisen and now exists between Plaintiffs and BOA regarding the manner in which BOA accounts for Class Members' payments and BOA's receipt of "deferred interest" or "unpaid interest" as alleged above.

146. Plaintiffs and Class Members contend that BOA: (1) wrongfully accounts for its receipt of "deferred interest" payments; (2) wrongfully under-reports to the IRS and Plaintiffs the amount of "mortgage interest" paid by Class Members in any given tax year; and (3) wrongfully under-reports its receipt of earned interest income on its own tax returns filed with the IRS.

147. In contrast, BOA contends that Class Members' payments and BOA's receipt of "deferred interest" or "unpaid interest" are "reductions in principal" and are not reportable to the IRS as "mortgage interest" payments received from its customers.

148. A declaratory judgment is necessary to immediately resolve the issue as to whether BOA should include Plaintiff's and Class Members' deferred mortgage interest payments on IRS Form 1098s issued to Plaintiff and Class Members and reported to the IRS and to require BOA to provide corrected 1098 forms to the Class Members.

149. Without such a declaratory judgment, Plaintiff and the Class Members will have no way of determining the proper way to report and account for payments of "deferred" interest to the IRS.

150. Wherefore, declaratory relief is necessary and proper in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all Class Members, pray for judgment and injunctive and equitable relief against BOA , jointly and severally, as follows:

(a) Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiffs as the representatives of the Class (and Plaintiff HORN for the California sub-class (if necessary)), and designating Plaintiffs' counsel as counsel for the Class (and subclass if necessary);

(b) A judicial declaration that BOA has committed the violations alleged herein;

(c) An Order requiring BOA to issue corrected Form 1098s to Plaintiffs and to all Class Members for all years where BOA did not report the payment of "deferred interest" on such forms;

(d) For general and special damages in an amount to be proven at time of trial, including, but not limited to, accountancy fees necessary to amend their tax returns and/or the value of any lost deductions;

(e) For punitive or exemplary damages; and

(f) An Order in equity (if no damages are awarded) requiring defendants to pay for the Class Members' reasonable expenses in filing amended tax returns for those years where BOA did not report "deferred interest" on each Class Members' IRS Form 1098s.

## INJUNCTIVE RELIEF

For an Injunction enjoining BOA from issuing any IRS Form 1098s which does not accurately account for BOA's receipt of "deferred interest" or "unpaid interest" payments from Class Members and for consequential damages necessary as part of implementing the injunctive relief.

## FOR ALL CAUSES OF ACTION

1. Interest at the legal rate on the sum of damages awarded;
2. Attorney's fees according to proof at time of trial;
3. Costs of suit, including expert witness fees and costs, herein incurred; and
4. For such other and further relief as this Court may deem proper and just.

## TRIAL DEMAND

Plaintiff and all those similarly situated hereby demand a trial by jury for all issues so triable.

Date: November 19, 2012

MORRIS POLICH & PURDY LLP

By: ______________________
David J. Vendler

MICHAEL R. BROWN, APC
Michael R. Brown, Esq. (SBN 65324)
18101 Von Karman Avenue, Suite 1940
Irvine, California 92612
Tel.: (949) 435-3888
Fax: (949) 435 3801

LAW OFFICE OF JEFFREY D. POINDEXTER
Jeffrey D. Poindexter, Esq. (SBN 167854)
2580 Catamaran Way
Chula Vista, CA 91914
Tel.: (619) 271-2382
Fax: (619) 568-3801

Attorneys for Plaintiffs RICHARD M. HORN and MARIA GUREVICH and all others similarly situated

# Exhibit "A"

LOAN NO. 205-338593
MIN: 1001310-2050338593-0

# ADJUSTABLE RATE NOTE

**(MTA-Twelve Month Average Index - Payment Caps)**

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

| MAY 02, 2005 | SAN DIEGO | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

4972 ACUNA STREET
SAN DIEGO, CA 92117
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 392,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed (ONE HUNDRED FIFTEEN PERCENT ) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION . I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.375 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the 1ST day of JULY, 2005, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 900/1000 percentage point(s) 2.900 % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than 9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the 1ST day of each month beginning on JULY 01, 2005 . I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 01, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P. O. BOX 85302
ATTN: CASHIER'S DEPT., SAN DIEGO, CA 92186
or at a different place if required by the Note Holder.

LOAN NO. 205-338593

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 1,329.49 unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1ST day of JULY, 2006, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to 115 percent of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

LOAN NO. 205-338593

**4. NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

LOAN NO. 205-338593

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
>
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

RIDER TO THE NOTE AND SECURITY INSTRUMENT ATTACHED AND MADE A PART HEREOF.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_______________________________ (Seal)
RICHARD M. HORN -Borrower

_______________________________ (Seal)
-Borrower

_______________________________ (Seal)
-Borrower

_______________________________ (Seal)
-Borrower

# Exhibit "A-1"

LOAN NO. 205-338593

# ADJUSTABLE RATE RIDER

**(MTA-Twelve Month Average Index - Payment Caps)**

THIS ADJUSTABLE RATE RIDER is made this 2ND day of MAY, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to ("Lender") of the same date and covering the property described in the Security Instrument and located at:

4972 ACUNA STREET, SAN DIEGO, CA 92117

[Property Address]

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agrees as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for changes in the interest rate and the monthly payments, as follows:

**2. INTEREST**

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.375 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the 1ST day of JULY, 2005, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal

LOAN NO. 205-338593

Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 900/1000 percentage point(s) 2.900 % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than 9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the 1ST day of each month beginning on JULY 01, 2005 . I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 01, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P. O. BOX 85302
ATTN: CASHIER'S DEPT., SAN DIEGO, CA 92186
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 1,329.49 unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1ST day of JULY, 2006 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

LOAN NO. 205-338593

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to 115 percent of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

LOAN NO. 205-338593

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
(ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.
(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

LOAN NO. 205-338593

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_______________________________ (Seal)
RICHARD M. HORN -Borrower

_______________________________ (Seal)
-Borrower

_______________________________ (Seal)
-Borrower

_______________________________ (Seal)
-Borrower

# Exhibit "B"

Bank of America
Home Loans

Customer Service
PO Box 5170
Simi Valley, CA 93062-5170

Statement date 11/14/2011
**Account Number 092360416**
Property address
4972 Acuna Street

0000001 01 AT 0.362 **AUTO T1 1 2366 92101-5906
PO A4 AG 500-----0--2-1- M23171 IN P00001
RICHARD M HORN

**How Your Loan Amount Can Change**
If your Minimum Payment is less than the Interest Only Payment:
- Your monthly Minimum Payment will not be enough to cover the interest due.
- The interest due, which is not covered by your Minimum Payment, is known as Deferred Interest and will be added to the amount you owe on your loan. Your Principal balance will then increase, which is known as "Negative Amortization".
- Negative Amortization results in reducing the amount of equity you have in your home. Negative Amortization should be managed carefully, so that you are not surprised by significant increases in future Minimum Payments.

**FOR CUSTOMER SERVICE: 1.800.669.6607**

## Your Monthly Home Loan Statement

**Snapshot of your Home Loan as of November 14, 2011**

| | |
|---|---|
| Type of Loan | 30 Yr Conv Jumbo PayOption ARM |
| Current Principal Balance | $405,684.79 |
| Original Loan Amount | $392,000.00 |
| Maximum Limit (see explanation at bottom of page) | 115.00% |
| Margin | 2.900% |
| Interest Rate this Month | 3.125% |
| Remaining Term | 23 Years, 7 Months |

**Payment Due Date: Dec 1, 2011**
**Late Payment Charge:** $101.39 if payment is not received by **Dec 16, 2011**

**Bank of America, N.A. is required by law to inform you that this communication is from a debt collector.**

## Your Payment Options this Month

The amounts listed below are total payments, including amounts collected for escrow items such as taxes and insurance premiums.

| Payment Options | Total Payment | Deferred Interest | Principal/ Interest Owed | Outstanding Late Charges** | Escrow | Optional Products*** |
|---|---|---|---|---|---|---|
| Option 1 Amortized Payment - This option is not available this month. | | | | | | |
| Option 2 15-Year Amortized Payment | $4,495.60 | | $4,495.60 | | | |
| Option 3 Minimum Payment | $2,027.88 | | $2,027.88 | | | |
| Option 4 Interest Only Payment - This option is not available this month. | | | | | | |

*Negative amounts (-) minus sign) shown in the deferred interest column are added to the principal balance. This results from making a Minimum Payment that is less than the interest due.
**Outstanding late charges up to $400.00 are reflected in the payment option amount.

## Secure and simple ways to make your mortgage payment

Take advantage of our secure online options when making your monthly mortgage payment. Choose a payment method that suits you and your schedule from a number of simple options. You can set up one-time or recurring payments the same day or up to 30 days in advance.

Find out more about our flexible payment options:
1. Simply visit bankofamerica.com to sign in to your Bank of America account.
2. Select your mortgage account and click "View all payment options."
3. Explore and choose the method most convenient for you.

112011 M23171 AREOF370

Maximum Limit - Per your loan documents, the Maximum Limit is the maximum amount your loan can grow to before you are required to make the Full Payment. If you reach the Maximum Limit, your Minimum Payment will increase to the amount sufficient to repay your unpaid principal balance in full on the Maturity Date in substantially equal payments at the then current interest rate.

## Your Home Loan Activity this Month

Breakdown of Payments and Other Amounts

| Date | Description | Amount | Principal/ Deferred Interest* | Interest | Additional Principal | Escrow | Late Charges | Optional Products You Requested | Buy-down Assistance | Unapplied |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/10/2011 | November payment | $2,027.88 | $968.88 | $1,059.00 | | | | | | |
| 11/10/2011 | Misc posting | 2.12 | | | 2.12 | | | | | |
| | **Ending balance | | $405,684.79 | | | | | | | |

*Amounts preceded by a (-) sign have been added to the principal balance.

**Please note: The ending principal balance shown above may not be the amount required to pay off your loan. For payoff information, you may use our 24-hour automated information system. Call 1.800.669.5833.

## Mortgage-Related Expenses You're Responsible for Paying

| Type of Payment | Who Receives the Payment | Your Policy Number or Tax ID | Frequency of Payment | Next Payment Due | Amount Due |
|---|---|---|---|---|---|
| Homeowners insurance | Nationwide Group | DFNC00197779744 | Annual | 09/11/2012 | $302.00 |

**DID YOU KNOW?**

**Payments**

We may charge you a fee (of up to $40.00) for any payment returned or rejected by your financial institution, subject to applicable law.

All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited by law.

**Your account...HOW YOU WANT IT, WHEN YOU WANT IT**

Next time you want to confirm a payment (or even make a payment), log in to www.bankofamerica.com. Manage your account online with powerful tools. Log in today! Restrictions apply.

Look for your year-end Tax Document in your December Monthly Statement or in a separate mailing in January.

**TO CONTACT US**

**CREDIT REPORTING NOTICE**

We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

**For up-to-the-minute information about the account**, use our 24-hour automated information system. To ask us about this statement or account information, call 1.800.669.6607, Monday-Friday 7a.m. - 7p.m. Local Time. Calls may be monitored and/or recorded for service quality purposes. *Se habla español.* 1.800.295.0025. TDD 1.800.300.6407

**Please have the account number available when you call.**

Or write to us at:
The address for general inquiries and all RESPA Qualified Written Requests is:
Bank of America, N.A., Attn:
Customer Service CA6-919-01-41, PO Box 5170, Simi Valley, CA 93062-5170

Tax Dept CA6-913-LB-01, PO Box 10211, Van Nuys, CA 91410-0211
Insurance Dept., PO Box 961291, Fort Worth, TX 76161-0291
Payments, Attn: Remittance Processing PO Box 515503, Los Angeles, CA 90051-6803
*Overnight deliveries LADC Retail Payment Services, CA9-705-09-31, 1000 W Temple Street, Los Angeles, CA 90012-1514
Our website www.bankofamerica.com
Your account information is available in Spanish on the site mentioned above.
*The facility at this address does not accept walk-up payments, it accepts overnight mail only. Payments can be made by Phone, Online, Mail, or at Bank of America Banking Centers.

Bank of America, N.A. Member FDIC. Equal Housing Lender. © 2011 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved.

ayment (principal and based on your remaining

ount necessary to pay the loan off ipal and interest) at the maturity substantially equal payments your loan has a balloon payment lue on the maturity date). Under the terms of your Note, this payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term of your loan.

**This option is not available this month because this amount is equal to or less than the minimum payment.**

**OPTION 2**
**15-Year Amortized Payment (principal and interest)**

The amount necessary to pay the loan off (principal and interest) within a 15-year term from the first payment due date, in substantially equal payments (unless your loan has a balloon payment due on the maturity date). Under the terms of your Note, this payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term of your loan.

Account number 092360416 (9)
Richard M Horn
4972 Acuna Street
San Diego, CA 92117

Payment due Oct 1, 2011 $4,442.08
After Oct 16, 2011 late payment $4,543.47
Please update e-mail information on the reverse side of this coupon.

2170

Additional Principal

Additional Escrow

Check total

Bank of America, N.A.
PO BOX 515503
LOS ANGELES, CA 90051-6803

092360416900000444208000454347

⑆586990058⑆092360416⑈

**OI N 3**
**Minimum Payment**

Important: If this amount is less than the Interest Only, paying this will not be enough to pay all of the interest due, will not reduce your principal, and the unpaid interest will be added to your principal. This is called "negative amortization", meaning the amount you owe increases. You will be charged interest on the entire principal. Negative Amortization will reduce the equity you have in your home. Negative amortization should be managed carefully, so that you are not surprised by significant increases in future Minimum Payments.

Account number 092360416 (9)
Richard M Horn
4972 Acuna Street
San Diego, CA 92117

Payment due Oct 1, 2011 $2,027.88
After Oct 16, 2011 late payment $2,129.27
Please update e-mail information on the reverse side of this coupon.

2170

Additional Principal

Additional Escrow

Check total

Bank of America, N.A.
PO BOX 515503
LOS ANGELES, CA 90051-6803

092360416900000202788000212927

⑆586990058⑆092360416⑈

**PTION 4**
**Interest-Only Payment**

ou pay only the interest charged on our loan for the previous month. By aking an Interest Only Payment, you ill avoid negative amortization, but no rtion of the payment will be applied to duce the principal balance of your an.

**This option is not available this month because this amount is equal to or less than the minimum payment.**

# Exhibit "C"

LOAN # 6900091171

# ADJUSTABLE RATE NOTE

LIBOR Annual Monthly Average (LAMA) of 1-Month LIBOR Index

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY PAYMENT CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

JUNE 08, 2005 [Date] SAN JOSE [City] CA [State]

1271 TERILYN AVENUE, SAN JOSE, CA 95122

[Property Address]

1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 468,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.000 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on AUGUST 01, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied first to current interest, then to prior unpaid interest, and the remainder to Principal. If, on JULY 01, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at BANK OF AMERICA, N.A., P.O. BOX 17404, BALTIMORE, MD 21297-1404 or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,505.28. This amount may change.

(C) Monthly Payment Changes

The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Interest Rate Change Dates

The interest rate I will pay may change on the first day of AUGUST, 2005, and on the first day of every month thereafter. Each date on which my interest rate could change is called a "Rate Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable rate will be based on an Index. The "Index" is equal to the LIBOR Annual Monthly Average ("LAMA") of the 1-month London Inter-Bank Offered Rate ("LIBOR"), as made available by Fannie Mae on their website, through electronic transmission or by telephone. The most recent LIBOR Annual Monthly Average ("LAMA") figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available or is no longer posted either through electronic transmission or by telephone, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculations of Interest Rate Changes**

Before each Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-EIGHTH percentage points ( 2.125 %) to the Current Index. The Note Holder will then round the result of this addition to the NEXT HIGHEST one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Rate Change Date.

**(D) Interest Rate Limit**

My interest rate will never be greater than 9.950 %.

**(E) Payment Changes**

My monthly payment will be adjusted on AUGUST 01, 2006 and on the same date each year thereafter. Each date on which my payment could change is called a "Payment Change Date." My monthly payment will not increase or decrease by more than 7.5% from the payment in effect just prior to the change ("Annual Payment Cap"), except as described in Section 4(G) below. Unless limited by the Annual Payment Cap, my new monthly payment will equal the amount necessary to amortize (pay off) my loan in substantially equal installments over its remaining term based on the interest rate that became effective on the Rate Change Date prior to the Payment Change Date.

**(F) Principal Balance Adjustments - Deferred Interest (Negative Amortization)**

If my monthly payment is less than the amount necessary to pay the full amount of interest for that month, the portion of interest that is unpaid will be added to the principal balance of my loan as of the due date for such payment and will accrue interest at the rate in effect from time to time in accordance with this Note.

**(G) Full Reamortization**

The Payment Change Dates occurring immediately following every fifth year (on the due dates for my 61st, 121st, 181st, 241st and 301st payments) are instead called "Reamortization Dates." In addition, if as of a due date for any payment, the principal balance on this loan would increase to an amount that equals or exceeds 115 % of the original principal balance, that due date will also be a "Reamortization Date."

Effective with the payment due on a Reamortization Date, the Note Holder will adjust my monthly payment in the same manner as provided in Section 4(E) above, except that the Note Holder will not apply the Annual Payment Cap. I will continue making payments at the new level until the next Payment Change Date or Reamortization Date.

I understand that changes in the interest rate that occur during the final five years of my loan term may make my monthly payments insufficient to pay off my loan over the remaining term in equal installments unless I elect to make fully amortizing payments during that period, as provided in Section 4(H) below. As agreed in Section 3(A) above, I will pay off all amounts still owing under this Note on or before the Maturity Date even if this requires a substantially higher payment on the Maturity Date than the immediately preceding payment amounts. Lender is under no obligation to refinance the loan at that time. I will, therefore, be required to make payment out of other assets that I may own, or I will have to find a lender, which may be the lender I have this loan with, willing to lend me the money. If I refinance this loan at maturity, I may have to pay some or all of the closing costs normally associated with a new loan even if I obtain refinancing from the same lender.

**(H) Payment Options**

I will have up to three monthly payment options for my loan. I may always make the monthly payment required under Sections 3(B), 4(E) or 4(G), as applicable (the "Required Payment"). If the Required Payment is insufficient to fully amortize my loan as a result of the application of the Annual Payment Cap or principal balance adjustments, I will have the option to make a fully amortizing payment, which is an amount sufficient to pay off my loan in substantially

equal payments over its remaining term at its then interest rate. If the Required Payment is not sufficient to pay all of the interest owed for that month, which would result in negative amortization, I also will have the option to make an interest-only payment, which will be sufficient to pay the monthly interest and avoid negative amortization, but will not reduce the principal balance. Even if these options are available, I may still elect to make only the Required Payment.

(I) Effective Date of Interest Rate Changes

My new interest rate will become effective on each Rate Change Date. I will pay the amount of my new monthly payment beginning on the Payment Change Date or the Reamortization Date, as applicable, until the amount of my monthly payment changes again.

(J) Notice of Changes

The Note Holder will deliver or mail to me an annual notice of any changes that have occurred to my adjustable interest rate in the preceding year. The Note Holder will also deliver or mail to me a notice of the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATE OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES. MY PARTIAL PREPAYMENT MAY REDUCE THE AMOUNT OF MY MONTHLY PAYMENTS AFTER THE FIRST RATE CHANGE DATE FOLLOWING MY PARTIAL PREPAYMENT. HOWEVER, ANY REDUCTION DUE TO MY PARTIAL PREPAYMENT MAY BE OFFSET BY AN INTEREST RATE INCREASE.

6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any Required Payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.0 % of my overdue Required Payment. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each Required Payment or any other amounts due under this Note on the date the payment or other amount is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

______________________________ (Seal)
BRIAN D O'DONNELL -Borrower

______________________________ (Seal)
-Borrower

______________________________ (Seal)
-Borrower

______________________________ (Seal)
-Borrower

______________________________ (Seal)
-Borrower

______________________________ (Seal)
-Borrower

______________________________ (Seal)
-Borrower

______________________________ (Seal)
-Borrower

# Exhibit "D"

Bank of America
Home Loans

Special Loan Servicing
Mail Stop, CA6-914-01-4
P.O. Box 10227
Van Nuys, CA 91410-0227

RICHARD M HORN

**Notice Date:** May 26, 2011

**Account No.:** 092360416

**Property Address:**
4972 ACUNA STREET
SAN DIEGO, CA 92117-0000

## Adjustable-Rate Mortgage (ARM) Payment Adjustment Notice

**IMPORTANT MESSAGE ABOUT YOUR MORTGAGE**

Thank you for your business and for working with BAC Home Loans Servicing, LP on your mortgage needs. This notice contains information about an upcoming change in the monthly Minimum Payment amount due on your adjustable rate mortgage. It also explains why you should consider making more than the Minimum Payment each month.

- **On July 1, 2011 your new monthly Minimum Payment will change from $2,084.29 to $2,027.88.**
- **Your new monthly Minimum Payment including $.00 as the escrow portion of your monthly payment will be $2,027.88.** If the escrow amounts change, we will notify you of any adjustments to your total monthly payment.
- **Your new interest rate is 3.125%.**
- To avoid a large increase to your future Minimum Payments, please consider making a **payment that is larger than your current Minimum Payment**, such as the **Amortized Payment (includes principal and interest) or Interest-Only Payment**, if they are larger than your Minimum Payment.

The optional payment feature for your adjustable rate mortgage provides you with up to four payment choices: 1) a Minimum Payment, 2) an Interest-Only Payment, 3) an Amortized Payment and 4) a 15-year Amortized Payment. The Interest-Only and two Amortized options are only available if they are more than the Minimum Payment. You must make at least the Minimum Payment each month. Please refer to your monthly statement to see which options are available to you and detailed explanations about each in your payment coupons.

Making the Minimum Payment each month may not be enough to cover the interest you owe on your mortgage and, if that is the case, will cause your mortgage balance to increase because the unpaid interest each month is added to your mortgage balance. To find out if your Minimum Payment is less than the Interest-Only Payment amount, refer to your most recent monthly statement. If the minimum amount is less than the interest-only amount, subtract the minimum amount from the interest-only amount. The resulting amount will be added to your mortgage balance. This is called negative amortization. Negative amortization lowers the amount of equity you have in your home. Eventually, your payment will increase to cover both principal and interest, to ensure that your mortgage can be paid in full by the end of the term. If negative amortization occurs, your future principal and interest payment will be larger than if you made the Amortized Payment each month.

We encourage you to make the Amortized Payment each month as shown on your monthly statement. The Amortized Payment includes all the principal and interest that is due for the month. If you consistently make the Amortized Payment, your mortgage balance will decrease, and you will reduce the possibility of a large increase to future Minimum Payments.

Also, your mortgage has a recast feature where on July 1, 2015 and every 60 months thereafter, your monthly Minimum Payment will increase to an amount that would be enough to ensure you can pay off your mortgage by the end of the term if you continued to make this payment amount each month and your interest rate remained the same for each month of the remaining term. This amount, which will include principal and interest, could be significant if you do not consistently make the Amortized Payment each month. You will pay the increased amount (for 12 months) until your monthly payment changes on the next scheduled payment change date.

For the times you are unable to pay the amortized amount (except for when you are required to, such as when your loan is recast according to the schedule in your mortgage documents or due to negative amortization), you should at least make the Interest-Only Payment to avoid negative amortization and keep your mortgage balance from growing. You can do this by selecting the Interest-Only Payment option if this amount is greater than your new Minimum Payment. You may also be able to make additional principal prepayments to reduce the mortgage balance. Please refer

This communication is from BAC Home Loans Servicing, LP, the Bank of America company that services your home loan.

BAC Home Loans Servicing, LP is required by law to inform you that this communication is from a debt collector.

to your mortgage documents for any conditions, restrictions or limitations on prepayments, including prepayment penalties.

We encourage you to track and manage negative amortization on your mortgage. Here is how this works and why your payment may increase significantly:

- You are responsible for ensuring that your principal (mortgage) balance can never be more than 115.00% of what you originally borrowed, also referred to as your original principal balance.
- To keep your principal balance from exceeding 115.00%, you will have to make a new and much larger monthly payment.
- This change to a larger monthly payment can occur at any time, and not just annually, since the change occurs when your principal balance would otherwise become larger than the maximum allowed.
- You can see that keeping your unpaid principal balance from exceeding 115.00% of your original principal balance is important to help you manage your finances.

Your current balance is 104.97% of your original principal balance. This growth resulted from negative amortization.

Your Minimum Payment is scheduled to change again on July 1, 2012, and you will receive a new ARM Payment Adjustment Notice prior to that change.

The following section provides more details about your new payment amount and interest rate.

**PAYMENT AND INTEREST RATE CHANGES TO YOUR ADJUSTABLE RATE MORTGAGE**

The following shows how your new interest rate and new Minimum Payment are calculated:

**Step 1:** How we calculate your new interest rate

| | Current Interest Rate | New Interest Rate |
|---|---|---|
| Loan Index | .2950% | .2783%[1] |
| Margin | 2.900% | 2.900% |
| Total | 3.1950% | 3.1783% |
| Rounding | 3.250% | 3.125% |
| **Interest Rate** | 3.250% | **3.125%** |

[1] Published as of May 17, 2011.

Your rate is based on MONTHLY TREASURY AVERAGE (MTA), which is a variable rate, plus 2.900% margin. The margin is fixed for the life of your mortgage, so it does not change from month to month. The rate is rounded NE to .1250% to come up with the actual interest rate. Your rate will change when the loan index changes. Your rate will not exceed 9.950%.

**Step 2:** How we calculate your new payment amount after we determine your new interest rate

**Your new monthly Minimum Payment will be either the Full or Limited payment amount, whichever is less.** To determine what your new monthly Minimum Payment will be, we must calculate both the Full and Limited payment amounts. Please note that the Full and Limited amounts are not payment choices in addition to those described earlier in this notice.

| **Full Payment** | |
|---|---|
| New Interest Rate | 3.125% |
| Anticipated Principal Balance* | $410,513.35 |
| Remaining Term as of June 1, 2011 | 288 months |
| Full Payment | $2,027.88 |

| **Limited Payment** | |
|---|---|
| Current Minimum Payment | $2,084.29 |
| Maximum Payment Increase of 7.500% | $156.32 |
| Limited Payment | $2,240.61 |

*Anticipated principal balance is the unpaid principal that you are expected to owe on the payment change date, and is calculated based on the assumption that the Minimum Payment will be made on payments due before the new payment effective date.

**Limited Payment:**

- Your mortgage has a 7.500% payment cap on the amount by which your payment can increase on each payment change date. This means that your new Minimum Payment amount effective on any payment change date will not increase by more than this percentage over your then current Minimum Payment.
- As an example, if your payment cap is 7.50%, and your current payment is $1,000.00, your new payment cannot be more than $1,075.00 (7.50% x $1,000.00).
- The payment cap only applies to the percentage increase in your minimum payment before you are required to make amortizing payments and also does not apply to amounts paid each month for items such as taxes and insurance owed on your property.
- If your new payment is the Limited Payment amount, and this amount is less than the interest you owe each month (refer to the interest-only payment amount in your monthly statement for a comparison), paying this amount will cause negative amortization meaning you are paying less interest than you owe causing the principal balance to increase.

**RATE CHANGE HISTORY FOR THE PAST YEAR**

The following information does not affect the new Minimum Payment calculation or any of the other information contained in this notice. Changes in your interest rate are based on the MONTHLY TREASURY AVERAGE (MTA) and occur every month. We are required to provide you with all rate changes that have occurred on your mortgage since the most recent ARM Payment Adjustment Notice you received.

| Change Date | Loan Index | Interest Rate |
|---|---|---|
| May 1, 2011 | .2950% | 3.250% |
| April 1, 2011 | .3067% | 3.250% |
| March 1, 2011 | .3117% | 3.250% |
| February 1, 2011 | .3183% | 3.250% |
| January 1, 2011 | .3250% | 3.250% |
| December 1, 2010 | .3300% | 3.250% |
| November 1, 2010 | .3417% | 3.250% |
| October 1, 2010 | .3533% | 3.250% |
| September 1, 2010 | .3700% | 3.250% |
| August 1, 2010 | .3858% | 3.250% |
| July 1, 2010 | .4017% | 3.250% |
| June 1, 2010 | .4125% | 3.375% |

**WE ARE HERE TO HELP**

To help you manage negative amortization and prevent large increases to your future Minimum Payments, please consider making the Amortized Payment.

If you have any questions about your payment and interest rate adjustment, please call us at 1-800-669-6607. If you feel you will be unable to make your new monthly payment this month or in the future, please call us and be prepared to provide us with your financial information including your current income, expenses, other outstanding loans and changes in your financial situation.

For information about BAC Home Loans Servicing, LP, please visit us online at www.bankofamerica.com. You may also call us at 1-800-669-6607.

**If You Are Currently a Debtor in a Bankruptcy:**
Federal law requires that we send you this notice. This information is being furnished to you for informational purposes only. This is not an attempt to collect a debt against you personally. BAC Home Loans Servicing, LP will take no steps to collect from you personally or against the property securing this loan while the bankruptcy's automatic stay remains in effect. In the future, you may receive a discharge in bankruptcy. Under those circumstances, by operation of law, BAC Home Loans Servicing, LP will retain the ability to enforce its rights against the property securing this loan should there be a default under the terms of your loan documents. If you would like to stop receiving these statements, please contact us at 1-800-669-6607.

POA002 12697 12/20/2010

**Bank of America**

Home Loans

*Special Loan Servicing*
*Mail Stop, CA6-914-01-4*
*P.O. Box 10227*
*Van Nuys, CA 91410-0227*

0000755-0003017 LETS 001 ------ 938361

RICHARD M HORN

**Notice Date:** May 18, 2012

**Account No.:** 092360416

**Property Address:**
4972 ACUNA STREET
SAN DIEGO, CA 92117-0000

**Adjustable-Rate Mortgage (ARM)**
**Payment Adjustment Notice**

**IMPORTANT MESSAGE ABOUT YOUR MORTGAGE**

Thank you for your business and for working with Bank of America, N.A. on your mortgage needs. This notice contains information about an upcoming change in the monthly Minimum Payment amount due on your adjustable rate mortgage. It also explains why you should consider making more than the Minimum Payment each month.

- **On July 1, 2012 your new monthly Minimum Payment will change from $2,027.88 to $2,001.75.**
- **Your new monthly Minimum Payment including $.00 as the escrow portion of your monthly payment will be $2,001.75.** If the escrow amounts change, we will notify you of any adjustments to your total monthly payment.
- **Your new interest rate is 3.000%.**
- To avoid a large increase to your future Minimum Payments, please consider making a **payment that is larger than your current Minimum Payment**, such as the **Amortized Payment (includes principal and interest) or Interest-Only Payment**, if they are larger than your Minimum Payment.

The optional payment feature for your adjustable rate mortgage provides you with up to four payment choices: 1) a Minimum Payment, 2) an Interest-Only Payment, 3) an Amortized Payment and 4) a 15-year Amortized Payment. The Interest-Only and two Amortized options are only available if they are more than the Minimum Payment. You must make at least the Minimum Payment each month. Please refer to your monthly statement to see which options are available to you and detailed explanations about each in your payment coupons.

Making the Minimum Payment each month may not be enough to cover the interest you owe on your mortgage and, if that is the case, will cause your mortgage balance to increase because the unpaid interest each month is added to your mortgage balance. To find out if your Minimum Payment is less than the Interest-Only Payment amount, refer to your most recent monthly statement. If the minimum amount is less than the interest-only amount, subtract the minimum amount from the interest-only amount. The resulting amount will be added to your mortgage balance. This is called negative amortization. Negative amortization lowers the amount of equity you have in your home. Eventually, your payment will increase to cover both principal and interest, to ensure that your mortgage can be paid in full by the end of the term. If negative amortization occurs, your future principal and interest payment will be larger than if you made the Amortized Payment each month.

We encourage you to make the Amortized Payment each month as shown on your monthly statement. The Amortized Payment includes all the principal and interest that is due for the month. If you consistently make the Amortized Payment, your mortgage balance will decrease, and you will reduce the possibility of a large increase to future Minimum Payments.

Also, your mortgage has a recast feature where on July 1, 2015 and every 60 months thereafter, your monthly Minimum Payment will increase to an amount that would be enough to ensure you can pay off your mortgage by the end of the term if you continued to make this payment amount each month and your interest rate remained the same for each month of the remaining term. This amount, which will include principal and interest, could be significant if you do not consistently make the Amortized Payment each month. You will pay the increased amount (for 12 months) until your monthly payment changes on the next scheduled payment change date.

For the times you are unable to pay the amortized amount (except for when you are required to, such as when your loan is recast according to the schedule in your mortgage documents or due to negative amortization), you should at least make the Interest-Only Payment to avoid negative amortization and keep your mortgage balance from growing. You can do this by selecting the Interest-Only Payment option if this amount is greater than your new Minimum Payment. You may also be able to make additional principal prepayments to reduce the mortgage balance. Please refer

to your mortgage documents for any conditions, restrictions or limitations on prepayments, including prepayment penalties.

We encourage you to track and manage negative amortization on your mortgage. Here is how this works and why your payment may increase significantly:

- You are responsible for ensuring that your principal (mortgage) balance can never be more than 115.00% of what you originally borrowed, also referred to as your original principal balance.
- To keep your principal balance from exceeding 115.00%, you will have to make a new and much larger monthly payment.
- This change to a larger monthly payment can occur at any time, and not just annually, since the change occurs when your principal balance would otherwise become larger than the maximum allowed.
- You can see that keeping your unpaid principal balance from exceeding 115.00% of your original principal balance is important to help you manage your finances.

Your current balance is 101.98% of your original principal balance. This growth resulted from negative amortization.

Your Minimum Payment is scheduled to change again on July 1, 2013, and you will receive a new ARM Payment Adjustment Notice prior to that change.

The following section provides more details about your new payment amount and interest rate.

**PAYMENT AND INTEREST RATE CHANGES TO YOUR ADJUSTABLE RATE MORTGAGE**

The following shows how your new interest rate and new Minimum Payment are calculated:

**Step 1:** How we calculate your new interest rate

| | **Current Interest Rate** | **New Interest Rate** |
|---|---|---|
| Loan Index | .1525% | .1467%[1] |
| Margin | 2.900% | 2.900% |
| Total | 3.0525% | 3.0467% |
| Rounding | 3.000% | 3.000% |
| **Interest Rate** | 3.000% | **3.000%** |

[1] Published as of May 17, 2012.

Your rate is based on MONTHLY TREASURY AVERAGE (MTA), which is a variable rate, plus 2.900% margin. The margin is fixed for the life of your mortgage, so it does not change from month to month. The rate is rounded NE to .1250% to come up with the actual interest rate. Your rate will change when the loan index changes. Your rate will not exceed 9.950%.

**Step 2:** How we calculate your new payment amount after we determine your new interest rate

**Your new monthly Minimum Payment will be either the Full or Limited payment amount, whichever is less.** To determine what your new monthly Minimum Payment will be, we must calculate both the Full and Limited payment amounts. Please note that the Full and Limited amounts are not payment choices in addition to those described earlier in this notice.

| **Full Payment** | |
|---|---|
| New Interest Rate | 3.000% |
| Anticipated Principal Balance* | $398,741.27 |
| Remaining Term as of June 1, 2012 | 276 months |
| Full Payment | $2,001.75 |

| **Limited Payment** | |
|---|---|
| Current Minimum Payment | $2,027.88 |
| Maximum Payment Increase of 7.500% | $152.09 |
| Limited Payment | $2,179.97 |

*Anticipated principal balance is the unpaid principal that you are expected to owe on the payment change date, and is calculated based on the assumption that the Minimum Payment will be made on payments due before the new payment effective date.

**Full Payment:**

- The Full Payment is an estimate of what your monthly payment would need to be to pay off your mortgage by the end of the term (maturity date). This amount is based on the assumption that your interest rate will not change.
- The interest rate we use for this estimate is your interest rate that is in effect the month before your payment changes.
- We apply this interest rate to the amount of your principal balance that we estimate you will owe on the payment change date.
- You will have to pay the Full Payment amount as your Minimum Payment if your principal balance will grow more than 115.00% of what you originally borrowed if we don't change your payment, or if your mortgage is scheduled for a payment adjustment (typically every five years, but please refer to your mortgage documents for the schedule).

**Limited Payment:**

- Your mortgage has a 7.500% payment cap on the amount by which your payment can increase on each payment change date. This means that your new Minimum Payment amount effective on any payment change date will not increase by more than this percentage over your then current Minimum Payment.
- As an example, if your payment cap is 7.50%, and your current payment is $1,000.00, your new payment cannot be more than $1,075.00 (7.50% x $1,000.00).
- The payment cap only applies to the percentage increase in your minimum payment before you are required to make amortizing payments and also does not apply to amounts paid each month for items such as taxes and insurance owed on your property.
- If your new payment is the Limited Payment amount, and this amount is less than the interest you owe each month (refer to the interest-only payment amount in your monthly statement for a comparison), paying this amount will cause negative amortization meaning you are paying less interest than you owe causing the principal balance to increase.

**RATE CHANGE HISTORY FOR THE PAST YEAR**

The following information does not affect the new Minimum Payment calculation or any of the other information contained in this notice. Changes in your interest rate are based on the MONTHLY TREASURY AVERAGE (MTA) and occur every month. We are required to provide you with all rate changes that have occurred on your mortgage since the most recent ARM Payment Adjustment Notice you received.

| Change Date | Loan Index | Interest Rate |
|---|---|---|
| May 1, 2012 | .1525% | 3.000% |
| April 1, 2012 | .1583% | 3.000% |
| March 1, 2012 | .1692% | 3.125% |
| February 1, 2012 | .1817% | 3.125% |
| January 1, 2012 | .1958% | 3.125% |
| December 1, 2011 | .2075% | 3.125% |
| November 1, 2011 | .2175% | 3.125% |
| October 1, 2011 | .2308% | 3.125% |
| September 1, 2011 | .2433% | 3.125% |
| August 1, 2011 | .2517% | 3.125% |
| July 1, 2011 | .2633% | 3.125% |
| June 1, 2011 | .2783% | 3.125% |

**WE ARE HERE TO HELP**

To help you manage negative amortization and prevent large increases to your future Minimum Payments, please consider making the Amortized Payment.

If you have any questions about your payment and interest rate adjustment, please call us at 1-800-669-6607. If you feel you will be unable to make your new monthly payment this month or in the future, please call us and be prepared to provide us with your financial information including your current income, expenses, other outstanding loans and changes in your financial situation.

For information about Bank of America, N.A., please visit us online at www.bankofamerica.com. You may also call us at 1-800-669-6607.

**If You Are Currently a Debtor in a Bankruptcy:**
Federal law requires that we send you this notice. This information is being furnished to you for informational purposes only. This is not an attempt to collect a debt against you personally. Bank of America, N.A. will take no steps to collect from you personally or against the property securing this loan while the bankruptcy's automatic stay remains in effect. In the future, you may receive a discharge in bankruptcy. Under those circumstances, by operation of law, Bank of America, N.A. will retain the ability to enforce its rights against the property securing this loan should there be a default under the terms of your loan documents. If you would like to stop receiving these statements, please contact us at 1-800-669-6607.

# Exhibit "E"

IRS Department of the Treasury
Internal Revenue Service
PO BOX 9038
ANDOVER MA 01810-4544

In reply refer to: 0883080001
Nov. 05, 2012 LTR 2626C A1
0 201012 30
Input Op: 0883080001 00011202
BODC: NOBOD

ALEXANDER GUREVICH & MARY BORDETSKY
39 GLENLAND RD
CHESTNUT HILL MA 02467-2142

Taxpayer Identification Number:
Tax Period: Dec. 31, 2010
Tax Form: 1040
550471710

Dear Alexander Gurevich & Mary Bordetsky:

Thank you for your response of July 11, 2012.

We cannot accept your Form 1040X Amended U.S. Individual Income Tax Return as filed. You have not sent substantiation for the over claimed federal withholding of $3,000.00. We also cannot adjust the amount claimed on Schedule A for home mortgage interest, without a corrected Form 1098 from Bank of America verify that you paid the additional mortgage interest.

The law requires us to charge interest on unpaid tax from the due date of the return to the date you pay the tax in full. The law doesn't allow us to reduce or eliminate interest based on reasonable cause. We've enclosed Notice 746, which gives more detail on our interest charges.

We need your signature on the "Consent to Tax Increase" at the end of this letter to complete our action on your tax account. Please sign the consent and send it to us. If you filed a joint return, you and your spouse must sign the consent.

Please use the enclosed envelope to send your signed consent or explanation to us by Nov. 28, 2012. You may fax your consent or explanation to 877-477-9485. If we don't hear from you within that time, we will continue to process the proposed changes to your return based on the information we currently have. If there is an amount you owe, we'll continue to charge interest until you pay the amount you owe in full.

If you have any questions about this letter, you may call Office of M Judge between 7:00 AM and 8:00 PM EDT at 800-829-3009 for assistance. You may also fax us at 877-477-9485.

Whenever you write to us, or wish us to respond to you by phone, please give us your telephone number, including an area code, the hours we can reach you, a person to contact, and a copy of this