1
MORRIS POLICH & PURDY LLP
David J. Vendler, Esq. (SBN 146528)
2
1055 West Seventh Street, Suite 2400
Los Angeles, CA 90017
3
Tel.:   (213) 417-5100
Fax:   (213) 488-1178
4

5
MICHAEL R. BROWN, APC
Michael R. Brown, Esq. (SBN 65324)
6
18101 Von Karman Avenue, Suite 1940
Irvine, California 92612
7
Tel.:   (949) 435-3888
Fax:   (949) 435 3801

8
LAW OFFICE OF JEFFREY D. POINDEXTER
Jeffrey D. Poindexter, Esq. (SBN 167854)
9
2580 Catamaran Way
Chula Vista, CA 91914
10
Tel.:   (619) 271-2382
Fax:   (619) 568-3801
11

12
Attorneys for Plaintiffs,
RICHARD M. HORN, MARIA GUREVICH,
13
and all others similarly situated

14

15
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

16

17
RICHARD M. HORN, an individual
and as Trustee of the Richard M. Horn
18
Trust Dated June 16, 2003, on behalf
of himself and all others similarly
19
situated,

20

21
                Plaintiff,

22
vs.

23

24
BANK OF AMERICA, N.A., a
National Banking Association,

25

26
                Defendant.

27

28

CASE NO.: 12 CV1718 CAB BLM

PLANTIFF'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN
EXPEDITED HEARING FOR
DECLARATORY JUDGMENT, OR,
IN THE ALTERNATIVE,
INJUNCTIVE RELIEF

Date: May 10, 2013
Time: 1:30 p.m.
Courtroom: 9

The Hon. Gonzalo P. Curiel

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................ 1

II.    SUMMARY OF RELIEF SOUGHT BY PLAINTIFF ......................... 2

III.   THERE IS GOOD CAUSE TO GRANT PLAINTIFF'S REQUEST FOR
      EXPEDITED RELIEF .................................................................... 3

IV.   FACTUAL BACKGROUND – WHAT BANK OF AMERICA IS
      DOING WRONG ............................................................................ 5

     A. Plaintiff's Option Arm Loan History and their Attempts to Cure
        Bank of America's Wrongful 1098 Reporting .......................... 6

     B. Bank of America's Reporting Decision was Made with the
        Approval of the Bank's CEO and President ........................... 10

V.    ARGUMENT ................................................................................... 12

     A. Interest is the Cost of Borrowing Money ................................. 12

     B. Interest is Forever Interest, and Does not Change its Character
        Simply Because it is not Timely Paid ...................................... 13

     C. Authority for Requested Relief ................................................. 16

        1. The Court Should Grant a "Speedy Hearing" for Declaratory
           Relief Pursuant to Federal Rule of Civil Procedure Rule 57
           and Title 28 U.S.C. § 2201 .............................................. 16

        2. The Court Should Grant Injunctive Relief Pursuant to Federal
           Rules of Civil Procedure Rule 65 ................................... 20

           a.  Plaintiff is Likely to Succeed on the Merits ............................. 20

           b.  Plaintiff and Thousands of Others Will Suffer
              Irreparable Harm if the Court Does Not Grant
              the Requested Relief ............................................................ 21

           c.  The Balance of Equities Tips in Plaintiff's Favor ................... 22

           d.  The Public Interest Dictates the Granting of Relief ................ 23

VI.   CONCLUSION ............................................................................... 24

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page i

1

## <u>TABLE OF AUTHORITIES</u>

2

3

<u>Cases</u>

4

*Aetna Ins. Co. of Hartford, Conn. V. Haworth* 300 U.S. 227 (1937)..........................19

5

*Arcamuzi v. Cont'l Airlines, Inc.*, 819 F.2d 935 (9th Cir.1987) ..................................20

6

*Buchanan v. Dowdy*, 772 F. Supp. 968 (S.D. Tex. 1991) ............................................18

*California Pharmacists Ass'n v. Maxwell–Jolly*, 596 F3d 1098 (9th Cir. 2010)...........23

7

*California v. Regan,* 641 F.2d 721 (9th Cir.1981) ......................................................17

8

*Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810 (9th Cir.2003)......20

9

*Clemens v. USV Pharmaceutical, A Div. of Revlon, Inc.*, 838 F.2d 1389

10

(5th Cir. 1988) ........................................................................................................18

11

*Coors v. U. S.*, 215 Ct.Cl. 840, 572 F.2d 826 (1978) ..................................................13

12

*Deputy v. DuPont*, 308 U.S. 488 (1940)...............................................................13, 15

13

*Earth Island Institute v. Carlton*, 626 F3d 462 (9th Cir. 2010)..................................22

14

*Eastern Kentucky Welfare Rights Organization v. Simon,* 506 F.2d 1278

15

(D.C.Cir.1974)........................................................................................................18

16

*Enochs v. Williams Packing & Nav. Co.,* 370 U.S. 1 (1962) ......................................18

17

*Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.,* 654 F3d 989 (9th Cir. 2011) ....23

*McGraw-Edison Co. v. Preformed Line Products Co*., 362 F.2d 339 (9th Cir.)

18

cert. denied, 385 U.S. 919 (1966) .........................................................................18

19

*Merrill Lynch, Pierce, Fenner & Smith v. Doe,* 868 Fed.Supp. 532 (1994) ...............19

20

*Motel Corporation v. Commissioner of Internal Revenue*,

21

54 T.C. 1433 (1970) ...............................................................3, 11, 13, 15, 16, 19, 21

22

*Old Colony R. Co. v. Commissioner of Internal Revenue*,

23

284 U.S. 552 (1932) ......................................................................11, 12, 13, 15, 20

24

*Perlowin v. Sassi* , 711 F.2d 910 (9th Cir. 1983)........................................................17

25

*Salazar v. Buono* 559 U.S. 700,  130 S.Ct. 1803 (2010);............................................23

26

*Scotts Co. v. United Industries Corp*., 315 F3d 264 (4th Cir. 2002)..........................22

27

*Stormans, Inc. v. Selecky*, 586 F3d 1109 (9th Cir. 2009) ..........................................23

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page ii

*United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F3d 489
(4th Cir. 1999) ................................................................................. 23

*United States v. First Nat'l City Bank*, 379 US 378, 85 S.Ct. 528 (1965) .................... 23

*Wilshire Holding Corporation v. Commissioner*, 262 F.2d 51 (9th Cir. 1958) .......... 20

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .......................... 20, 22, 23

## Statutes

26 U.S.C. § 6050H ................................................................................. 2, 3, 22

26 U.S.C. § 6501 ................................................................................. 4, 21

26 U.S.C. § 6721 ................................................................................. 22

26 U.S.C. § 7421 ................................................................................. 18

28 U.S.C. § 2201 ................................................................. 2, 16, 17, 19

Internal Revenue Code Section 163 ................................................ 6, 12, 13

## Rules

Federal Rules of Civil Procedure Rule 57 ........................................ 2, 16, 17

Federal Rules of Civil Procedure Rule 65 ................................................ 2

## Other Authorities

Anti-Injunction Act ................................................................................. 17, 18

Declaratory Judgment Act ................................................................. 17, 18

Revenue Act of 1921 ................................................................................. 13

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page iii

# I.
## INTRODUCTION

Defendant Bank of America, N.A. ("The Bank" or "Bank") is and has been depriving potentially hundreds of thousands (and perhaps even millions) of American homeowners out of literally billions of dollars in tax deductions to which they are absolutely legally entitled.   The Bank is doing this by deliberately under-reporting the amount of mortgage interest it receives from its borrowers and reporting a substantially lesser amount on its borrowers' Form 1098's.  (IRS Form 1098 is the manner by which the Bank reports to the IRS the amount of interest paid by its borrower in any taxable year).

Plaintiffs Richard Horn and Maria Gurevich ("Plaintiffs") have  brought this action individually, and as the representatives of a class of borrowers who obtained Negative Amortization Adjustable Rate Mortgages ("Option ARMs") and who paid the Bank interest they had previously deferred.

The sole questions presented by this motion are: (a) whether this Court should stop the Bank from inaccurately reporting interest paid by Plaintiffs and class members to the IRS in future years and (b) whether this Court should require the Bank to issue corrected Form 1098's for tax-years 2009 to 2012.

As demonstrated below, the Bank has no defense to its intentional erroneous reporting and has repeatedly refused class-member requests to issue corrected Form 1098s reporting the correct amount of interest.

Unfortunately, the IRS has taken the position that without the Bank issuing corrected Form 1098s, Plaintiffs and members of the class cannot amend their tax returns.  See Declaration of Alexander Gurevich ("Gurevich"), paras. 10, 12-13 and Exhibit D thereto and Declaration of Lourdes Sevilla ("Sevilla"), para. 13 and Exhibit D thereto.  The Bank's "justification" it offers to complaining consumers for refusing to issue accurate Form 1098s is that in 2009, contrary to established tax law, it unilaterally changed its internal policy so as to "capitalize" borrowers' deferred

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 1

interest, which the Bank now claims had the effect of re-characterizing its borrowers' deferred interest magically into payments of principal.  See Sevilla Dec., Exhibits C and D and Gurevich Dec., para. 11. Notably, the Bank failed to inform any of its borrowers prior to making this unilateral and arbitrary change in its 1098 reporting policy.

Because Plaintiffs' legal claims are clear, and cannot be reasonably disputed by the Bank, and because of the huge financial impact on American consumers and the potential for those consumers to lose the opportunity for amending their tax returns because of the passing of the statute of limitations,  this case presents one of those limited situations in which this Court can, and should, order an expedited hearing and issue a declaratory judgment and / or appropriate injunctive relief on an expedited basis.  Thus, notwithstanding this Court's January 31, 2013 Order setting this motion (and the Bank's motion to dismiss for hearing on May 10, 2013), Plaintiffs are requesting the Court to set the matter for hearing on this motion on an expedited basis.

## II.

## SUMMARY OF RELIEF SOUGHT BY PLAINTIFFS

Federal Rule of Civil Procedure Rule 57, and Title 28 U.S.C. § 2201, permit a Court to order an expedited hearing under certain circumstances. Plaintiffs  move this Court for an expedited hearing for a Declaratory Judgment to: (1) declare that Plaintiffs' payments of previously deferred mortgage interest to Bank of America, N.A. should have been reported by the Bank pursuant to 26 U.S.C. § 6050H on Plaintiffs' IRS Form 1098; and, (2) issue such Orders as the Court deems proper to enforce such declaratory judgment, including, but not limited to: (a) requiring the Bank to include in all future Form 1098's it issues the amount of all payments to the Bank during that tax year of previously deferred interest; (b) issue corrected Form 1098's that include the amounts of previously deferred interest that was paid to the Bank for each of the taxable years 2009-2012, inclusive.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 2

In the alternative, Plaintiffs move this Court for immediate injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure to order the Bank to: (a) cease its practice of failing to include payments of previously deferred mortgage interest in Form 1098's that it issues pursuant to 26 U.S.C. § 6050H and / or (b) issue corrected Form 1098's that include the amounts of previously deferred interest that was paid to the Bank for each of the taxable years 2009-2012.

### III.

### THERE IS GOOD CAUSE TO GRANT PLAINTIFFS REQUEST FOR EXPEDITED RELIEF

The Bank has the duty under 26 U.S.C. § 6050H to accurately report on IRS Form 1098 the amount of mortgage interest that has been paid to it each year by its borrowers.

By their nature, negative amortization loans allow borrowers to defer paying some of the mortgage interest they owe in a given month to a later time.  When, however, borrowers do pay the "deferred interest," the Bank's 2009 policy-change attempts to recast payments of that deferred interest into principal.  Sevilla Dec., Exhibit C.

The case of *Motel Corporation v. Commissioner of Internal Revenue*, 54 T.C. 1433 (1970) establishes that the Bank's financial alchemy of trying to turn deferred interest into principal is improper and contrary to established law. Yet, by this sleight of hand accounting practice, and its backroom unilateral policymaking, the Bank is denying billions of dollars' worth of tax deductions to hundreds of thousands, if not millions, of its most cash-strapped American mortgage-holders.[1]  For this reason, Plaintiffs are bringing this motion.

---

[1] Negative amortization loans were most frequently taken out by consumers who could not afford the fully amortized monthly payment and thus needed the "flexibility" to pay less than an interest only payment.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 3

Exigent circumstances and an extremely widespread potential harm exists which make expedited interim relief appropriate.  First, the deadline for all Americans to file their individual tax returns for the year 2012 is April 15, 2013.  Plaintiffs approached the Bank in December 2012 requesting it to change its practices for the 1098 forms it was going to issue in 2013.  See Declaration of David J. Vendler ("Vendler), paras. 8-17.  The Bank never responded to this request.  Rather, it was only on January 21, 2013, when Plaintiff Horn received his Form 1098 for tax-year 2012, which again failed to include the amount of deferred interest he paid to the Bank on his Option ARM in that year, that Plaintiffs knew that they had to file this motion. Declaration of Richard Horn, at para. 18.  (For Mr. Horn alone, the amount of the lost deduction for 2012 is over $12,000.  *Id.* at para. 4.)  It is not too late for this Court to order the Bank to send out corrected Form 1098's for tax-year 2012, which will avoid having the Bank's borrowers lose their rightful deduction for this tax year.

The second reason the Court should act with urgency affects the limitations facing the borrowers to obtain any refunds from the IRS resulting from amended tax returns filed with a corrected Form 1098. The time for filing an amended return and seeking any refund is governed by 26 U.S.C. § 6501(a). The period of time set forth therein is three years and cannot be extended by any act of the affected consumers or the Bank.  For tax-year 2009, the three-year statute of limitations for filing an amended return is about to expire.  If the Bank is ordered to issue corrected Form 1098s for tax year 2009 immediately, consumers will at least have the opportunity to amend their 2009 return before the expiration of the statute of limitations.  (Plaintiffs and class members will then seek all costs in connection with amending their returns in the damages phase of the case).  However, if they are not provided a corrected Form 1098 by the Bank now, they will forever lose their opportunity to amend their 2009 tax return (and in other years if this litigation continues over several years) and their sole recourse will be to seek the amount of their lost deductions as damages

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 4

against the Bank resulting from the Bank's intentional under-reporting of the interest paid to the Bank.

## IV.

## FACTUAL BACKGROUND – WHAT
## BANK OF AMERICA IS DOING WRONG

Plaintiffs and all putative Class Members have, or had, Negative Amortization Adjustable Rate Mortgages ("Option ARMs") owned and/or serviced by the Bank. The exact number of Option ARMs owned and/or serviced by the Bank is unknown to Plaintiffs, but is estimated to be in the hundreds of thousands, if not millions. Plaintiffs' contention is that after the Bank acquired a multi-billion dollar portfolio of Option ARMs as part of its purchase of Countrywide Financial in July 2008, the Bank, unbeknownst to its borrowers, including Plaintiffs and class members, began to systematically underreport mortgage interest on potentially millions of consumers' 1098 forms, resulting in the loss of billions of dollars of potential deductions.[2]

An example best makes the point about what the Bank is doing wrong.

Assume John Doe has a Bank of America Option ARM in the amount of $100,000 and that the monthly interest obligation on the note is $1,000. Further assume the note permits a "minimum payment" of $750 per month. For month 1 in tax year 2009 Doe elects to pay the minimum payment of $750, and thus "defers" $250 of the interest due for that month. In month 2 Doe elects to pay $1,250, i.e., the full $1,000 in interest due for that month, plus an additional $250. In months 3-12 Doe pays the full $1,000 per month due in interest. For the purposes of Mr. Smith's

---

[2] Plaintiffs do not know the number of negative amortization mortgages held by the Bank. The Bank acquired Countrywide Financial Corporation in July 2008. Countrywide had a portfolio of approximately $27 billion in Option ARMS. Plaintiffs assume that they number more than several hundred thousand and potentially into the millions. Since no Rule 26 conference has yet taken place, Plaintiffs have been unable to conduct discovery necessary to determine the exact size of the class.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 5

2009 1098 form, how much mortgage interest has he paid?     Doe's position is $12,000.  The Bank's position is $11,750.

According to the Bank, once the borrower elects to defer the payment of $250 in month 1, that amount is "added to the principal balance of your loan" and thus is no longer "interest" when it is repaid, but is principal.[3]     (Other banks, including Wells Fargo, Chase, and IndyMac, do not do this, but treat payments of previously deferred interest as "interest" and report those amounts on customers' 1098 forms.  See Horn Dec., para. 19 and Sevilla Dec., para 6. In short, the Bank stands alone its practice.

## A. PLAINTIFFS' OPTION ARM LOAN HISTORY AND THEIR ATTEMPTS TO CURE BANK OF AMERICA'S WRONGFUL 1098 REPORTING

With an Option ARM loan, a borrower can select different monthly payment options, including the option to make a payment for less than the interest then due in any given month. Plaintiffs Horn and Gurevich both chose to avail themselves of this option, i.e., they both on various occasions made minimum monthly payments that were not enough to pay the full amount of the interest due for that month under their respective notes.   As such, their mortgage loan balances increased as the unpaid interest was *added* to the Principal – a defined term.  Bank of America discloses this fact to its borrowers, including on its Online Banking system:

> "Minimum Payment**- Important: If this amount is less than the Interest Only, paying this will not be enough to pay all of the interest due, will not reduce your principal, and** the unpaid interest will be added to your principal**. This is called negative amortization, meaning the amount you owe increases." [Emphasis added: see Plaintiff Horn's Bank of America Online Banking Statement dated January 22, 2013 attached to and made a part of his Declaration as Exhibit 1]**

---

[3] The reason the distinction between interest and principal is important is because IRC Code Section 163(a) provides that "[t]here shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness."  The Bank's characterization of consumer payments of deferred interest as principal, and not interest, results in consumers losing the ability to deduct those sums from their taxes.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 6

By electing the Minimum Payment option, the borrower's mortgage loan balance increases – but not the "Principal" -- as the unpaid interest is *added* to the Principal.  Plaintiff Richard Horn's Bank of America Online Banking Statement dated January 22, 2013 is attached as Exhibit E to the declaration of Richard Horn.  The statement points out the obvious – *Principal is the face value or original amount borrowed.*   This is consistent with the language of Horn's note, which defines "Principal" as the $392,000 Horn borrowed.  **See Adjustable Rate Note:  Section 1: *"$392,000 (this amount is called "Principal")"*** attached to Horn's Declaration as Exhibit D.[4]

The Principal on Plaintiff Horn's Option ARM started at $392,000. And, from 2009 through 2012, Horn's mortgage loan balance never fell below that amount. Rather, because Plaintiff Horn was making the "minimum payment" from 2005 to March 2009, his mortgage loan balance increased to $428,000 as unpaid interest was being *added* to Principal.

In March 2009, interest rates decreased substantially on Horn's Option ARM loan, which had a variable interest rate that adjusted periodically.  Thus, even though Plaintiff continued to make the same "minimum payment," the amount of these payments was now more than the interest obligation for those months.  As such, after March 2009, Horn's monthly payments gradually commenced paying down the deferred interest that had accrued during the previous four years.  This is borne out in the chart below.

---

[4] As will be shown, the language of Horn's note does not control the legal question of whether his payments of deferred interest are reportable by Bank of America as payments of mortgage interest for tax purposes on IRS Form 1098.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 7



### RICHARD HORN'S MORTGAGE LOAN HISTORY WITH BANK OF AMERICA
### 2005 TO 2012

* See Adjustable Rate Note:   Section 1:   *"$392,000 (this amount is called "Principal");"*
Section 3(e):   *"Additions To My Unpaid Principal."*

^ See Adjustable Rate Note:   Section 3(a):   *"Each monthly payment will be applied...to interest before Principal."*

Given the fact that Horn's loan never dipped below the Principal amount of $392,000.00, all of Horn's payments to the Bank should have been reflected as payments of interest on the 1098's he received.  But that did not happen. For tax years 2009 through 2012, the Bank did not report its receipt of almost $36,000 in payments of deferred interest. Instead, the Bank deliberately mischaracterized these payments of "deferred" or "unpaid" interest payments as "reductions in Principal."    Horn complained to the Bank about the improper calculation of his mortgage interest payments. The Bank refused to provide him with a corrected Form 1098.  Horn Dec., paras. 18-19.  The chart below demonstrates how, since 2009, the Bank has deprived Horn the ability to deduct all of his mortgage interest by under-reporting the figure of IRS Form 1098.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 8

1

2

3

**BofA Under-Reporting of Mortgage Interest Payments On Forms 1098 for Tax Years 2009 − 2012**



4-Year Total Mortgage Interest Paid By Plaintiff To BofA:                                    $93,199

4-Year Total Mortgage Interest Reported by BofA on Forms 1098:                    $57,360

4-Year Total Amount of Interest Under-Reported by BofA on Forms 1098:       $35,839

Mr. and Mrs. Gurevich ("Gurevich") had the same problem with the Bank. After selling their home and paying off the entirety of their mortgage in 2010, including paying all of the interest that they had previously deferred, the Bank did not report any of the deferred interest payments on the Gurevich's 2011 Form 1098. Like Horn, the Gurevich's first requested the Bank to issue them a corrected 1098 form. Gurevich Dec., para. 11. The Bank refused. *Id.* at paras. 11-12. The Gurevich's then went a step further. They tried to amend their tax return with the IRS to reflect the un-reported deferred interest they paid. *Id.* at 12. The IRS rejected the amended return because the interest amount as calculated by the Gurevich's did not match the amount on the Bank's Form 1098. See Gurevich Declaration, Exhibit D depicted below.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 9



"We also cannot adjust the amount claimed on Schedule A for home mortgage interest, **without a corrected Form 1098 from Bank of America verify that you paid the additional mortgage interest.**" [Emphasis added: see Plaintiff's IRS Letter dated November 5, 2012, attached to and made a part of this Motion as EXHIBIT ___]

Since the Bank has refused to accurately report the payments of all interest and issue a corrected 1098, this lawsuit is Plaintiff Gurevich's only path to relief.

## B. BANK OF AMERICA'S REPORTING DECISION WAS MADE WITH THE APPROVAL OF THE BANK'S CEO AND PRESIDENT

In addition to Plaintiffs' Horn and Gurevich, Plaintiffs' counsel was recently contacted by putative class-member Lourdes Sevilla.  Like Plaintiffs Horn and Gurevich, Ms. Sevilla also complained in vain to the Bank that it was under-reporting payments of interest and was refused a corrected Form 1098.  (Ms. Sevilla discovered the reporting problem because she also had Option Arm loans with Chase and IndyMac banks and those banks both properly reported the amounts of  deferred interest.)  Sevilla Dec., para. 6.   Bank of America initially issued Ms. Sevilla a short form letter explaining why it was refusing her request for a revised Form 1098, stating:

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 10

> We are unable to grant your request for your 1098
> corrections.  Effective with the 2009 tax year, once interest
> has been capitalized (added to principal), it is no longer
> considered interest, and it is now part of the principal balance.
> Therefore, repaid capitalized interest is no longer added to
> your annual interest total.

Sevilla Dec., Exhibit C.  The phrase "repaid capitalized interest" demonstrates that the Bank is relying on just the sort of "esoteric concept derived from subtle and theoretic analysis" that the Supreme Court held was improper to do with respect to determining what is and is not interest in *Old Colony R. Co. v. Commissioner of Internal Revenue*, 284 U.S. 552, 560-561 (1932) and which was squarely rejected in exactly the present circumstances in *Motel Corporation.*

Ms. Sevilla, however, did not give up after receiving the Bank's first dismissive communication.  She made a Qualified Written Request pursuant to Section 6 of RESPA which resulted in the Bank's Office of the CEO and President responding, and reaffirming the statement that "repaid capitalized interest is no longer added to the interest total."  The Bank then states that "Our Year End system is programmed (sic unless you are in England) to exclude the amount of interest from each payment that was capitalized."  Sevilla Dec., Exhibit  D.[5]  Notably, nowhere in the lengthy letter from the CEO / President is any legal authority cited.   Rather, the Bank simply made a policy decision and was parroting that policy decision back to all complaining consumers, including Ms. Sevilla and the Gurevich's.

Like the Gurevich's, Ms. Sevilla also approached the IRS with her problem and was given the same direction in writing -- unless she could obtain a corrected Form 1098 from the Bank, there was nothing she could do.  As the IRS put it: "If the amounts are incorrect (sic) reported by Bank of America they (sic) need to send corrected 1098 forms."  Sevilla Dec., Exhibit E.

---

[5] Clearly, if the system can be programed to exclude the amount of interest from each year that was capitalized, then reprograming the system back to where it again includes those amounts should not be a tremendous burden on the Bank.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 11

As a direct result of the Bank's voodoo accounting practice, Mr. Horn, the Gurevich's and Ms. Sevilla have lost more than $110,000 in tax deductions for the years 2009-2012.  Plaintiff Horn lost $35,839 in deductions (Horn Dec., para. 17); Plaintiff Gurevich lost $30,261 in deductions (Gurevich Dec., para. 10); and class member Sevilla lost $37,772.07 (Sevilla Exhibit B.).  Assuming a 30% tax bracket, these numbers equate to more $10,000 each in overpayment of taxes.  Extrapolating from this pool to the hundreds of thousands, if not millions, of similarly situated borrowers, the Bank's unilateral, undisclosed, and legally unsupportable accounting policy change is costing Americans literally billions of dollars which they could be using to feed, clothe and house their families.

## V.

## ARGUMENT

## A. INTEREST IS THE COST OF BORROWING MONEY

The United States Supreme Court has held that "interest" as used in Section 163(a) is not a complicated concept requiring special knowledge or expertise to understand.  *Old Colony R. Co. v. Commissioner of Internal Revenue*, 284 U.S. 552, 560-561 (1932).

> And as respects 'interest,' the usual import of the term is the amount which one has contracted to pay for the use of borrowed money.  He who pays and he who receives payment of the stipulated amount conceives that the whole is interest.  In the ordinary affairs of life, no one stops for refined analysis of the nature of a premium, or considers that the periodic payment universally called 'interest' is in part something wholly distinct; that is, a return of borrowed capital.  It has remained for the theory of accounting to point out this refinement.  We cannot believe that Congress used the word having in mind any concept other than the usual, ordinary, and everyday meaning of the term, or that it was acquainted with the accountants' phrase 'effective rate' of interest, and intended that as the measure of the permitted deduction.

> … Until the present contention was put forward, no one supposed that the taxpayer was not entitled to deduct the entire amount specified in

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 12

the coupon and actually paid during the taxable year as interest. The person who receives this sum certainly considers it interest and so, apparently, does the government, which requires him to return it all as such, and does not permit him, if he or his predecessor holder paid more than par for the bond, to treat part of the sum received as a return of capital loaned and the remainder as interest received.

In short, we think that, in the common understanding, 'interest' means what is usually called interest by those who pay and those who receive the amount so denominated in bond and coupon, and that the words of the statute permit the deduction of that sum, and do not refer to some esoteric concept derived from subtle and theoretic analysis.

*Id.* at 560-561 (1932). [6]  See also *Deputy v. DuPont*, 308 U.S. 488 (1940) and *Coors v. U. S.*, 215 Ct.Cl. 840, 572 F.2d 826 (1978) (holding that interest paid on loan against insurance policy was properly deductible, even where the interest become a part of the indebtedness on the policy).

## B. **INTEREST IS FOREVER INTEREST, AND DOES NOT CHANGE ITS CHARACTER SIMPLY BECAUSE IT IS NOT TIMELY PAID**

*Motel Corporation v. Commissioner of Internal Revenue*, *supra*, 54 T.C. 1433 fully controls this case; it directly applies the *Old Colony / Deputy* definition of interest in the context of payments of previously deferred interest and squarely concludes that payments of such amounts are interest and not principal for tax-purposes.

The facts of *Motel Corporation* are as follows: Motel Corporation issued a mortgage note to Barrett as part of Barrett's purchase of a motel owned by Motel Corporation.  In the tax-year 1962, Barrett's interest obligation under the mortgage

---

[6] While *Old Colony* was construing the word "interest" in the Revenue Act of 1921, a predecessor statute to Internal Revenue Code Section 163, there is no substantive difference in the two statutes.  The language in the Revenue Act of 1921 was that "all interest paid or accrued within the taxable year on its indebtedness" was deductible. This is functionally the same as Section 163's current language that "[t]here shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness."

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 13

note was $15,240.19, but Barrett only paid $12,000, leaving an interest shortfall of $3,240.19.  In 1963, however, Barrett made payments totaling $19,200.  This amount not only covered the $12,893.26 due in interest for 1963, but also more than covered the $3,240.19 interest shortfall from 1962.

In its tax return for 1963, Motel Corporation relied on the same rationale that the Bank relies on here in refusing to properly report on Form 1098 the amount of interest its borrowers paid.  Like the Bank, Motel Corporation claimed that when Barrett did not pay the $3,240.19 interest shortfall in 1962, that amount was "added to principal."  When the shortfall from 1962 was paid by Barrett in 1963, Motel Corporation claimed to the IRS that the $3,240.19 payment was not income to it, but a repayment of principal.  The IRS rejected Motel Corporation's position and claimed Motel Corporation should have included as income for 1963 not only the $12,893.26 in interest owed for that year, but also the $3,240.19 that had accrued in 1962, but which was paid by Barrett in 1963.

In siding with the IRS, the United States Tax Court made clear that like the leopard being unable to change its spots, "interest" cannot change its character to "principal" simply because the borrower defers payment of it from the date it was originally due.  As the Tax Court put it:

> In reaching this conclusion, we start from two basic premises.  The first is that interest is compensation for the use of money.  *Deputy v. DuPont*, 308 U.S. 488 (1940).  The second is the fundamental proposition of tax law that in determining the tax treatment of a transaction, substance governs form. *Gregory v. Helvering*, 293 U.S. 465 (1935). Viewed substantively, we can perceive no reason why defaulted interest should be transformed into principal for purposes of tax law.  Such interest, no matter when paid, is clearly compensation for the use of money, and its character as such does not change merely because it is not timely paid. The fact that a payment is not called 'interest' is not controlling for tax purposes if, in substance, it is such. See *Wilshire Holding Corporation v. Commissioner*, 262 F.2d 51 (C.A. 9, 1958).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 14

*Id*. at 1440.  The Court further stated:

> Having concluded that defaulted interest does not become principal for tax purposes, we must next consider when such interest is treated as paid.  Partial payments on a note are generally treated as first applying to interest and then to reduce principal.  *Estate of Daniel Buckley*, 37 T.C. 664 (1962); *Estate of Paul M. Bowen*, 2 T.C. 1 (1943); *Theodore R. Plunkett*, 41 B.T.A. 700 (1940), affd. 118 F.2d 644 (C.A. 1, 1941).  This rule was expressly included in the Barrett note.[ ]  Since each payment made in 1962 was less than the interest accrued and unpaid to the date of the payment, the entire amount of the payments made in that year were allocable to the payment of interest and taxable as such.  Since $16,133.45 of the amounts paid in 1963 is applicable to interest accrued and unpaid at the date of the payments, that amount is allocable to the payment of interest in that year and taxable as such.

*Id*.

As in *Motel Corporation*, there is no question here that the amounts of interest consumers elected to defer paying to the Bank constitute "interest" as defined by the Supreme Court in *Old Colony* and in the *Deputy* case cited in *Motel Corporation*.  Indeed, there can be little question that the deferred interest which consumers were charged by the Bank, and which they paid, was compensation for the use of borrowed funds.  For not even the Bank would contest that if its borrowers had <u>timely</u> paid the amounts they instead elected to defer, the Bank would have included those amounts on the borrowers' 1098 forms as payments of mortgage interest in the year they were paid.

Like Motel Corporation, the Bank's position relies exclusively on the consumer's election to defer the interest payments until a later time to magically "transform" the character of the obligation from interest to principal.  But as explained by the Tax Court in *Motel Corporation*, "for purposes of tax law" interest's "character as such does not change merely because it is not timely paid."  Therefore, the interest the consumers initially deferred, but later paid, continues to be "interest," and should

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 15

have been reported by the Bank on consumers' 1098 forms pursuant to 26 U.S.C. § 6050H.

Yet, despite notice of this lawsuit, the clear law in Plaintiffs' favor, and Plaintiffs' counsel's repeated overtures in late 2012 requesting that the Bank change its practices at least for the 2012 tax year, (Vendler Dec.,  paras. 8-17), the Bank, without regard to the severe and significant harm it was causing Plaintiffs and class members, as well as the potential burden it was placing on the IRS to process potentially millions of amended returns, issued its 2012 1098 forms with the same inaccurate mortgage interest payment calculations.  See Horn Dec., para. 4.

Because April 15, 2013 is the deadline for Americans to file their tax returns with the IRS, and because the 3-year limitations period is about to expire for seeking amendments to tax-year 2009, an expedited hearing on the present motion is warranted.  Further, given the *Motel Corporation* holding, it is highly likely Plaintiffs will prevail on the merits (assuming the foregoing arguments are not sufficient to support Plaintiffs' claims outright) and the Bank should be ordered to issue corrected 1098 forms to consumers in time to meet the April 15, 2013 filing deadline and/or to amend their returns for earlier years.

## C. AUTHORITY FOR REQUESTED RELIEF

### 1. The Court Should Grant A "Speedy Hearing" For Declaratory Relief Pursuant To Federal Rule of Civil Procedure Rule 57 and Title 28 U.S.C. § 2201.

It is not too late for the Court to order the Bank to issue correct Form 1098s to its borrowers in compliance with the IRS and Tax Court rulings.  This is not a difficult task for the Bank.  The Bank stated in its letter to Ms. Sevilla that it can program its system to include or exclude payments of deferred interest.  Here, where the Bank has been willfully and intentionally acting in violation of its obligations to issue accurate Form 1098s to its borrowers, there should be little sympathy for whatever the cost is to the Bank to make things right.  In violation of *Motel Corporation,* it made an

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 16

1  arbitrary and illegal policy change in 2009 to benefit its own interests.  Even when this

2  lawsuit was filed challenging its procedure for issuing inaccurate Form 1098s, and in

3  response to Plaintiffs' meet and confer efforts relating to the Bank issuing its 1098s

4  for the year 2012, it still refused to correct its procedures.  Yet, as of the date of this

5  filing, the tax filing deadline is still two months away and if corrected promptly, Class

6  Members will be able to avoid the cost and inconvenience of having to later file

7  amended tax returns.  (Indeed, since many taxpayers file for extensions, even if this

8  Court decides the matter prior to the expiration of the October 15, 2013 extension

9  deadline, many consumers will still benefit).

10       Federal Rule of Procedure Rule 57 provides:

11            *These rules govern the procedure for obtaining a declaratory*
             *judgment under 28 U.S.C. §2201.  Rules 38 and 39 govern a*
12            *demand for a jury trial.  The existence of another adequate*
             *remedy does not preclude a declaratory judgment that is*
13            *otherwise appropriate.*  ***The court may order a speedy***
             ***hearing of a declaratory-judgment action****.* [emphasis added]
14

15       The first amended complaint, at paragraph 148, seeks a judicial declaration:

16            A declaratory judgment is necessary to immediately resolve
             the issue as to whether BOA should include Plaintiff's and
17            Class Member's deferred mortgage interest payments on IRS
             Form 1098s issued to Plaintiff and Class Members and
18            reported to the IRS and require BOA to provide corrected
             1098 forms to the Class Members.
19

20

21       Title 28 U.S.C. § 2201 provides in relevant part:

22            In a case of actual controversy within its jurisdiction, except
             with respect to Federal taxes[7] other than actions brought
23

24  ───────────────

    [7] This action is not an action "with respect to Federal Taxes" because it does not
25  contest the assessment or collection of any tax.  As explained by the Ninth Circuit in
    *Perlowin v. Sassi*, 711 F.2d 910 at 911 (9th Cir. 1983), "The Declaratory Judgment
26  Act is coextensive with the Anti-Injunction Act despite the broader language of the
    former." *See California v. Regan,* 641 F.2d 721, 723 (9th Cir.1981). If suit is allowed
27  under the Anti-Injunction Act, it is not barred by the Declaratory Judgment
    Act. *E.g., Eastern Kentucky Welfare Rights Organization v. Simon,* 506 F.2d 1278,
28

> under section 7428 of the Internal Revenue Code of 1986,… any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The courts have generally recognized two criteria for determining whether declaratory relief is appropriate; "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *McGraw-Edison Co. v. Preformed Line Products Co*., 362 F.2d 339, 342 (9th Cir.), cert. denied, 385 U.S. 919 (1966) (quoting Borchard, *Declaratory Judgments*, 299 (2d ed. 1941).

Declaratory relief is appropriate in this provisional context. *Merrill Lynch, Pierce, Fenner & Smith v. Doe,* 868 Fed.Supp. 532, 535 (1994) ("Given the ability of the Court to issue a final declaratory judgment under 28 U.S.C. § 2201, which is

---

1285 (D.C.Cir.1974), *vacated on other grounds,*426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). The Anti-Injunction Act provides, ". . . no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . ." Title 26 U.S.C. § 7421. "The manifest purpose of s 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue." *Enochs v. Williams Packing & Nav. Co.,* 370 U.S. 1, 7 (1962). Since this action does not seek to restrain the assessment or collection of a tax, it is not prohibited by the Anti-injunction Act, and likewise is not prohibited by the "with respect to Federal Taxes" provision of the Declaratory Judgment Act. Indeed, *Clemens v. USV Pharmaceutical, A Div. of Revlon, Inc.*, 838 F.2d 1389 (5th Cir. 1988) and *Buchanan v. Dowdy*, 772 F. Supp. 968 (S.D. Tex. 1991) both established that the recipient of an informational return (such as the Form 1098's at issue here) is entitled to bring an action against the issuer to correct errors on the informational return (and for resulting accountancy fees) where, *as here*, (1) the recipient contacted the issuer prior to the lawsuit, (2) pointed out the error, and (3) the issuer refused to correct the error.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 18

equitable in nature, this Court also has the power to issue such provisional equitable relief when it is necessary based on the urgency of the situation, [of which there is plenty], the irreparable harm that would otherwise occur, and the remaining factors which courts consider when granting provisional injunctive relief."

The Supreme Court has held that declaratory relief is appropriate where:

> The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. [Citations omitted.] It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. [Citations omitted.] Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages.

*Aetna Ins. Co. of Hartford, Conn. v. Haworth* 300 U.S. 227, 240-241 (1937).  Here, there is a definite and concrete issue where the facts are undisputed; the purely legal issue is whether payments of previously deferred interest by consumers to the Bank should be reported by the Bank on consumers' Form 1098's.  Stated conversely, is the Bank wrongfully failing to include consumer payments of deferred interest on the Form 1098's it issues?  *Motel Corporation* makes clear the answer is in plaintiff's favor.

Since the legal issue is straightforward, and since there is urgency and irreparable harm, discussed *infra*, this Court can, *and should,* grant plaintiffs the declaratory judgment they seek.

### 2.  The Court Should Grant Injunctive Relief Pursuant To Federal Rule of Civil Procedure Rule 65

A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 19

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 19, (2008) (internal citations omitted).  The standard for granting a preliminary injunction further balances a plaintiff's likelihood of success on the merits against the relative hardships to the parties.  The greater the relative hardship to the moving party, the less probability of success on the merits must be shown and *vice versa*. *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir.2003). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Arcamuzi v. Cont'l Airlines, Inc.*, 819 F.2d 935, 937 (9th Cir.1987) (internal citations omitted).  However, all four factors are considered together in evaluating whether a preliminary injunction is appropriate.  In this case, all of the factors clearly weigh in favor of granting this motion.

### a.  Plaintiff is Likely to Succeed on the Merits

The sole issue in the case is whether or not the Bank's financial alchemy of converting "interest" into "principal" is supportable under tax law.  It is not.  As established by the Supreme Court, "interest" is "the amount which one has contracted to pay for the use of borrowed money."  *Old Colony, supra,* 284 U.S. 560.  Or, as the Ninth Circuit put it in *Wilshire Holding Corporation v. Commissioner*, 262 F.2d 51, 53 (9th Cir. 1958)  "Roughly, interest is the rental price of money."   That a consumer chooses to defer part of his/her January interest obligation until February does not change the fact that the deferred obligation from January was part of the cost of borrowing the original principal.

This was the express holding in *Motel Corporation* – "we can perceive no reason why defaulted . . . [or, as in this case, deferred] . . . interest should be transformed into principal for purposes of tax law.  *Id.*  Such interest, no matter when paid, is clearly compensation for the use of money, and its character as such does not change merely because it is not timely paid."   Since there is no countervailing

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 20

authority supporting the Bank's position, Plaintiff has a strong likelihood of success on the merits.

### b. Plaintiffs and Thousands of Others Will Suffer Irreparable Harm If The Court Does Not Grant The Requested Relief

Plaintiffs and those similarly situated are all likely to suffer irreparable harm if this Court does not act expeditiously.  This is because of the three-year statute of limitations for filing amended tax returns imposed by 26 U.S.C. § 6501(a).  This three-year limitation period is totally beyond the control of plaintiffs (and even this Court) to change.  In short, even if this Court were to order the Bank to change its practices and issue corrected Form 1098's reflecting the correct amount of interest consumers paid for the past 4 years, consumers would not be able to file amended returns for more than the past three tax years.   Absent an act of Congress, this limitation simply cannot be modified.

Further, since the IRS has taken the position with both the Gurevich's and Ms. Sevilla that it will not accept amended returns without the Bank providing corrected Form 1098's, it is simply not possible, absent this Court's intervention, for Plaintiffs -- or any of the members of the putative class -- to properly file their tax returns so as to obtain all of the deductions to which they are lawfully entitled.

While plaintiffs and the members of the class will certainly seek to collect from the Bank the amount of any deductions they lose from the passage of the three year limitations period, this does not mean that plaintiffs have an adequate remedy at law.

First of all, "a bird in the hand is worth two in the bush."  The results of litigation are always uncertain.  But the real point for purposes of irreparable harm is that Plaintiffs and the members of the class have the legal right to take these deductions *on their tax returns* and they will irretrievably lose that right when the IRC Section 6501 limitations period expires for any given year.   But if the Bank issues the corrected 1098 forms sought by this motion now, then consumers will at least have the opportunity to file amended returns reaching as far back to the 2009 tax-year.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 21

### c.  The Balance of Equities Tips in Plaintiff's Favor

Before a preliminary injunction may issue, the court must identify the harm that a preliminary injunction might cause the defendant and weigh it against plaintiff's threatened injury. "[T]he real issue in this regard is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is *improperly* granted or denied." *Scotts Co. v. United Industries Corp*., 315 F3d 264, 284 (4th Cir. 2002) (emphasis in original); *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008); *Earth Island Institute v. Carlton,* 626 F3d 462, 475 (9th Cir. 2010) — "The assignment of weight to particular harms is a matter for district courts to decide."

In this case, balancing the equities is easy.  The Bank is already under the legal duty – imposed by 26 U.S.C. Section 6050H(b)(2)(B) -- to *accurately* report "the amount of [mortgage] interest (other than points) received for the calendar year." Thus, if this Court agrees with Plaintiffs that the Bank has erroneously calculated mortgage interest paid and received by the Bank in any tax year, there is no "burden" on the Bank since it would already be under the statutory obligation to fix its error. Indeed, the Bank would face exposure to substantial IRS penalties were it not to do so. See 26 U.S.C.A. § 6721.  By granting this motion for declaratory relief/injunction, the Court would simply be ordering what the Internal Revenue Code already requires. Moreover, the bank makes clear by its letter to Ms. Sevilla, that it programed its system in 2009 to exclude payments of deferred mortgage interest for 1098 reporting purposes.  It thus cannot be that burdensome for the Bank to reprogram its system to the way it used to be before the change.

By contrast, the burden on Plaintiffs (and the hundreds of thousands or even millions of similarly situated consumers) is great.  For just the three taxpayers discussed in this memorandum, the amount of lost deductions is over $110,000. When multiplied across the hundreds of thousands of persons in the class, the amount of aggregate lost deductions is truly staggering.   In these cash-strapped times, Americans like Plaintiffs' simply cannot afford to lose thousands of dollars each.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 22

### d.  The Public Interest Dictates the Granting of Relief

In exercising their sound discretion, courts of equity "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 US 7, 24, 129 S.Ct. 365, 376–377 (2008); *Salazar v. Buono* 559 U.S. 700,  130 S.Ct. 1803, 1816 (2010); *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.,* 654 F3d 989, 996–997 (9th Cir. 2011). Where an injunction's reach is narrow and affects only the parties with no impact on nonparties, "the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F3d 1109, 1139 (9th Cir. 2009) (internal quotes and brackets omitted)]. But if the injunction goes beyond the parties, carrying with it a potential for public consequences, the "public interest" becomes relevant to whether an injunction should issue: "Courts of equity may, and frequently do, go much further both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *United States v. First Nat'l City Bank*, 379 US 378, 383, 85 S.Ct. 528, 531 (1965); *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F3d 489, 497 (4th Cir. 1999) (internal quotes omitted); *California Pharmacists Ass'n v. Maxwell–Jolly,* 596 F3d 1098, 1114–1115 (9th Cir. 2010) — recognizing public interest in safeguarding access to health care for those eligible for Medicaid.

Here, the public interest is almost too obvious to state.  There are potentially hundreds of thousands of borrowers, if not millions, in the same situation as Plaintiffs. Not only are these consumers facing losses of thousands in individual deductions due to the expiration of the statute of limitations for filing amended returns, but the burden on the IRS (and putative class members) will be greatly reduced if the Court orders the Bank to correct its Form 1098's at least for tax year 2012 immediately, as this will prevent another year passing where consumers would have to file amended returns.  Similarly, action now will provide consumers with at least an opportunity to preserve

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 23

their rights for the 2009 tax year for which the statute of limitations is rapidly approaching.

The Bank's continuing violation of Form 1098 reporting requirements, and the resulting abuse of the tax system, does not serve the public interest.  Rather, the public interest is best served by this Court ordering the Bank to get it right and issue corrected Form 1098s (at least for tax years 2009 and 2012 <u>before</u> the tax deadline of April 15, 2013.

**VI.**

**CONCLUSION**

For all of these reasons, Plaintiffs request that their motion be granted.

DATED:  February 19, 2013        **MORRIS, POLICH & PURDY, LLP**

                                 BY:  _/s/ David J. Vendler_____

                                      David J. Vendler, Esq.
                                      Attorney for Plaintiffs

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 24

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following counsel of record who are deemed to have consented to electronic service are being served this 19th day of February, 2013, with a copy of the PLANTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF via the Court's CM/ECF system per Civil Local Rule 5.4(d).

Peter B Morrison
Skadden Arps Slate Meagher & Flom
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Scott D. Musoff
Skadden Arps Slate Meagher & Flom
Four Time Square
New York, NY 10036-6522

DATED:  February 19, 2013

/s/ Jeffrey D. Poindexter

Jeffrey D. Poindexter

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AN EXPEDITED HEARING FOR DECLARATORY
JUDGMENT, OR, IN THE ALTERNATIVE, INJUNCTIVE RELIEF

12 CV1718 CAB BLM
Page 25