1  MORRIS POLICH & PURDY LLP
David J. Vendler, Esq. (SBN 146528)
2  1055 West Seventh Street, Suite 2400
Los Angeles, CA 90017
3  Tel.:   (213) 417-5100
Fax:   (213) 488-1178
4
MICHAEL R. BROWN, APC
5  Michael R. Brown, Esq. (SBN 65324)
18101 Von Karman Avenue, Suite 1940
6  Irvine, California 92612
Tel.:   (949) 435-3888
7  Fax:   (949) 435 3801
8  LAW OFFICE OF JEFFREY D. POINDEXTER
Jeffrey D. Poindexter, Esq. (SBN 167854)
9  2580 Catamaran Way
Chula Vista, CA 91914
10  Tel.:   (619) 271-2382
Fax:   (619) 568-3801
11
Attorneys for Plaintiff  RICHARD M. HORN
12  and all others similarly situated

13                UNITED STATES DISTRICT COURT

14              SOUTHERN DISTRICT OF CALIFORNIA

15

16  RICHARD M. HORN, an individual and as       CASE NO.:  12CV1718 GPC BLM
    Trustee of the Richard M. Horn Trust Dated
17  June 16, 2003, on behalf of himself and all  **PLAINTIFF'S OPPOSITION TO BANK**
    others similarly situated,                   **OF AMERICA, N.A.'S MOTION TO**
18                                               **DISMISS THE FIRST AMENDED**
                   Plaintiff,                    **COMPLAINT, OR IN THE**
19                                               **ALTERNATIVE, STAY THE ACTION;**
    vs.                                          **REQUEST FOR LEAVE TO AMEND;**
20                                               **MEMORANDUM OF POINTS AND**
    BANK OF AMERICA, N.A., a national            **AUTHORITIES IN SUPPORT THEREOF;**
21  banking association,                         **DECLARATION OF DAVID J. VENDLER**

22                 Defendant.                    Hon. Gonzalo P. Curiel

23                                               Date:    April 12, 2013
                                                 Time:    1:30 p.m.
24                                               Ctrm.:   2D

25

26        Plaintiffs Richard M. Horn and Maria Gurevich, for themselves and others similarly situated,

27  submit this opposition to Bank of America, N.A.'s ("BOFA") Motion to Dismiss The First Amended

28  Complaint or in the Alternative Stay the Action.

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT ................................................................................. 1

    A.   BOFA Is Defining "Interest" Differently Than The Supreme Court. ........................... 1

    B.   Plaintiffs Have Standing To Sue. ............................................................................. 1

    C.   Directing Aggrieved Borrowers To Call And Possibly File Suit Against The IRS Is Not A Practical Or Reasonable Solution................................................ 2

II.   STANDARD ON MOTION TO DISMISS ........................................................... 3

III.  PLAINTIFFS HAVE STANDING TO RAISE THEIR CLAIMS ......................... 4

IV.   THE PRIMARY JURISDICTION ARGUMENT FAILS AS THIS IS A QUESTION OF LAW FOR THE COURT, NOT A FACTUAL QUESTION FOR THE IRS ................. 10

    A.   This Court Does Not Need Agency Assistance To Determine That Deferred Interest *Is* Interest Under Section 163(a) Because The IRS Has Already So Determined ......................................................................... 12

    B.   The IRS Has Repeatedly Determined That Deferred Interest Payments Are Deductible. ................................................................................................. 14

V.    PLAINTIFFS' BREACH OF CONTRACT CLAIM IS WELL STATED – BANK OF AMERICA HAS BREACHED ITS CONTRACTUAL OBLIGATIONS .......................... 16

    A.   The Contract Terms Do Not Allow Bank of America To Convert Interest Into Principal ................................................................................................... 17

    B.   Any Ambiguity In The Contract Must Be Construed Against Bank of America. ...................................................................................................... 19

    C.   By Unilaterally Capitalizing Accrued Interest In 2009, Bank Of America Also Breached The Covenant Of Good Faith and Fair Dealing ............................... 21

VI.   PLAINTIFFS' INTENTIONAL AND NEGLIGENT MISREPRESENTATION CLAIMS ARE WELL STATED ........................................................................ 23

    A.   Bank Of America Is Misrepresenting *A Fact* – The Amount Of Interest It Receives. ...................................................................................................... 23

    B.   Bank Of America Knows, Or Should Know, What It Is Doing Is Wrong................. 25

VII.  UNDER REPORTING OF INTEREST PAYMENTS MISLEADS CONSUMERS AND VIOLATES CAL. BUS. & PROF. CODE § 17200.......................................... 26

VIII. THE DECLARATION JUDGMENT CLAIM SHOULD PROCEED.................................. 28

IX    BOFA'S ORIGINAL ISSUE DISCOUNT ("OID") ARGUMENT IS WRONG ................. 29

X.    CONCLUSION ................................................................................................. 30

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*Apple Computer, Inc. v. Podfitness, Inc.,*
2007 WL 1378020 (N.D.Cal. 2007) ............................................................... 11

*Arvin v. Go Go Investment Club,*
1997 WL 709329 (9th Cir. 1997) ................................................................... 7

*Badie v. Bank of America,*
67 Cal.App.4th 779 (1998) ............................................................................ 23

*Barahona v. T-Mobile USA, Inc.,*
628 F.Supp.2d 1268 ........................................................................................ 11

*Bardin v. DaimlerChrysler Corp.,*
136 Cal.App.4th 1255 (2006) ........................................................................ 27

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ....................................................................................... 3

*Boschma v. Home Loan Ctr., Inc.,*
198 Cal.App.4th 230 (2011) .......................................................................... 26

*Brillhart v. Excess Ins. Co. of America,*
316 U.S. 491 (1942) ....................................................................................... 28

*Buchanan v. Dowdy,*
772 F.Supp. 968 (S.D. Tex. 1991) ............................................................. passim

*California Pharmacy Management, LLC v. Zenith Ins. Co.,*
669 F.Supp. 2d 1152 (C.D. Cal. 2009) .......................................................... 24

*Camacho v. Automobile Club of Southern California,*
142 Cal.App.4th 1394 (2006) ........................................................................ 27

*Capital One Financial Corp., and Subsidiaries v. C.I.R.,*
659 F.3d 316 (4th Cir. 2011) ......................................................................... 13

*Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal.4th 163 (1999) .................................................................................... 26

*Central Valley Chrysler-Jeep, Inc. v. Witherspoon,*
2005 WL 2709508 (E.D.Cal. 2005) ............................................................... 11

*Cervantes v. United States,*
330 F.3d 1186 (9th Cir. 2003) ....................................................................... 3

*Chamberlain v. Allstate Ins. Co.,*
931 F.2d 1361 (9th Cir. 1991) .................................................................. 28, 29

1  *Clark v. Time Warner Cable*,
      523 F.3d 1110 (9th Cir.2008) .................................................................... 10
2
   *Clemens v. USV Pharmaceutical, A Div. of Revlon, Inc.*,
3     838 F.2d 1389 (5th Cir. 1988) ............................................................. passim
4  *Clothesrigger, Inc. v. GTE Corp.*,
      191 Cal. App. 3d 605 (1987) ...................................................................... 26
5
   *Commercial Union Assurance Cos. v. Safeway Stores, Inc.*,
6     26 Cal.3d 912 (1980) .................................................................................. 22
7  *Conley v. Gibson*,
      355 U.S. 41 (1957) ........................................................................................ 3
8
   *Coors v. U. S.*,
9     215 Ct.Cl. 840, 572 F.2d 826 (1978) ......................................................... 14
10 *Cort v. Ash*,
      422 U.S. 66 (1975) ................................................................................ 7, 9, 10
11
   *Crescent Woodworking Co., Ltd. v. Accent Furniture, Inc.*,
12    2005 WL 5925586 at * 3-4 (C.D.Cal. 2005) ............................................. 22
13 *Darby v. Cisneros*,
      509 US 137, 113 S.Ct. 2539, 2542 (1993) ................................................... 6
14
   *Deputy v. Du Pont*,
15    308 U.S. 488 (1940) ................................................................................... 15
16 *Environmental Technology Council v. Sierra Club*,
      98 F.3d 774 (4th Cir. 1996) ....................................................................... 11
17
   *Federal Maritime Bd. v. Isbrandtsen Co.*,
18    356 U.S. 481, 521 (1958) ........................................................................... 11
19 *First Pacific Bancorp, Inc. v. Helfer*,
      2000 WL 1099791 (9th Cir.2000) ................................................................ 8
20
   *First State Ins. Co. v. Callan Assoc.*,
21    113 F.3d 161 (9th Cir.1997) ...................................................................... 29
22 *Foley v. Interactive Data Corp.*,
      47 Cal.3d 654 (1988) .................................................................................. 17
23
   *Gierbolini Rosa v. Banco Popular de Puerto Rico*,
24    930 F.Supp. 712 (D.Puerto Rico 1996) ......................................................... 5
25 *Goodrich & Pennington Mortg. Fund, Inc. v. Chase Home Finance, LLC*,
      2008 WL 698464 *7 (S.D.Cal. 2008) ........................................................ 17
26
   *Great Northern Ry. Co. v. Merchants' Elevator Co.*,
27    259 U.S. 285, (1922) .................................................................................. 11
28

*Grubb v. Ranger Ins. Co.,*
   77 Cal.App.3d 526 (1978)..................................................................... 16

*Haggarty v. Wells Fargo Bank, N.A.,*
   2011 WL 445183 at *3 (N.D.Cal. 2011)................................................. 23

*Hall v. Santa Barbara,*
   833 F.2d 1270 (9th Cir. 1986)............................................................ 3, 11

*Hernandez v. Hilltop Financial Mortg., Inc.,*
   622 F.Supp.2d 842, (N.D. Cal. 2007) ..................................................... 17

*Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.,*
   4 Cal.App.4th 1538, (1992) ..................................................................... 21

*I. C. C. v. Big Sky Farmers and Ranchers Marketing Co-op. of Mont.,*
   451 F.2d 511 (9th 1971)........................................................................... 11

*In re Biesel,*
   195 B.R. 378 .......................................................................................... 12

*In re Farm Raised Salmon Cases,*
   42 Cal.4th 1077 (2008) ......................................................................... 26

*In re Pico,*
   2011 WL 3501009 at *3 (Bkrtcy.S.D.Cal. 2011) ................................... 19

*Jefferson v. Chase Home Finance LLC,*
   2007 WL 1302984, at *3 (N.D.Cal. 2007)................................................ 17

*Lazar v Hertz Corp.,* 143 Cal.App.3d 128, 141 (1983) .................................. 21

*Love v. Fire Ins. Exchange,*
   221 Cal.App.3d 1136 (1990).................................................................... 21

*Lucas v. Dep't of Corr.,*
   66 F.3d 245 (9th Cir.1995)........................................................................ 3

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)..................................................................................... 4

*Lyons v. Bank of America, N.A.,*
   2011 WL 3607608, at *11 (N.D.Cal. 2011)............................................. 27

*Miller v. Yokohama Tire Corp,*
   358 F.3d 616 (9th Cir. 2004).................................................................... 24

*Morales v. Cate,*
   757 F.Supp.2d 961 (N.D.Cal. 2010) ........................................................... 3

*Motel Corporation v. Commissioner of Internal Revenue,*
   54 T.C. 1433 (1970)........................................................................... passim

*National Basketball Ass'n v. SDC Basketball Club, Inc.,*
   815 F.2d 562 (9th Cir.1987)..................................................................... 20

*National Educ. Ass'n,*
  2008 WL 2179530 (W.D.Wash. 2008) ................................................. 11

*New York Life Ins. Co. v. Hollender,* 38 Cal.2d 73, 81-82 (1951) ................... 18

*Old Colony R. Co. v. Commissioner of Internal Revenue,*
  284 U.S. 552 (1932) ........................................................... passim

*Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,*
  69 Cal.2d 33 (1968). ........................................................... 20, 21

*Perdue v. Crocker National Bank,*
  38 Cal.3d 913 (1985) ........................................................... 21, 22

*Rumfelt v. Jazzie Pools, Inc.,*
  2011 WL 2144553 (E.D.Va. 2011) ................................................. 5

*Scott v. Pacific Gas & Electric Co.,*
  11 Cal.4th 454 (1995) ........................................................... 17

*Silva v. Providence Hospital of Oakland,*
  14 Cal.2d 762 (1939) ........................................................... 17

*Solid Host, NL v. Namecheap, Inc.,*
  652 F.Supp.2d 1092 (C.D.Cal. 2009) ............................................. 17

*Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc.,*
  307 F.3d 775 (9th Cir. 2002). ................................................... 12

*Titan Corp. v. Aetna Cas. and Sur. Co.,*
  22 Cal.App.4th 457 (1994) ..................................................... 18

*U.S. v. 43.47 Acres of Land,*
  45 F.Supp.2d 187 (D.Conn 1999) ............................................... 12

*Union Oil Co. v. International Ins. Co.,*
  37 Cal.App.4th 930 (1995) ..................................................... 18

*United States v. Redwood City,*
  640 F.2d 963 (9th Cir. 1981) ................................................... 3

*Victoria v. Superior Court,*
  40 Cal. 3d 734 (1985) ........................................................... 19

*Wershba v. Apple Computer, Inc.,*
  91 Cal.App.4th 224 (2001) ..................................................... 26

*Wool v. Tandem Computers, Inc.,*
  818 F.2d 1433 (9th Cir.1987) ................................................... 3

**Statutes**

12 U.S.C. Section 1821(d)(15) ..................................................... 8

26 U.S.C. Section 6050H ....................................................... passim

California *Business & Professional Code* Section 17200 ............................................................ 1, 26

California *Civil Code* Section 1619 ................................................................................................... 16

California *Civil Code* Section 1654 ................................................................................................... 19

**Other Authorities**

69 FR 25489-02, 2004 WL 972762 .................................................................................................... 15

IRS Revenue Ruling 77-135 ......................................................................................... 1, 15, 16, 25

**Regulations**

26 CFR Section 1.1275-2 .................................................................................................................... 30

26 CFR Section 1.221-2(h) ..................................................................................................... 15, 25

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF ARGUMENT

The central issue is whether payments of deferred mortgage interest, once paid, should be reported by BOFA on the Form 1098s it reports to the IRS and issues to consumers.  Citing no authority to support its position that deferred interest converts to "Principal" and is therefore not reportable, BOFA claims the answer is "no," or that it is "uncertain."  Motion at 6:3-4.  BOFA's position is  contrary to established law.  Because of BOFA's wrongful accounting/reporting practice, BOFA's borrowers are losing billions of dollars in tax deductions to which they are lawfully entitled.[1]

### A.    BOFA Is Defining "Interest" Differently Than The Supreme Court.

*Motel Corporation v. Commissioner of Internal Revenue*, 54 T.C. 1433 (1970) and IRS Rev. Rul. 77-135 clarify that BOFA's policy of excluding deferred mortgage interest payments on Form 1098s contravenes established tax law.[2]  Nowhere in BOFA's motion it is a citation to single authority allowing BOFA to "transform" interest into "Principal."  This is because there is none. Over 80 years ago, the U.S. Supreme Court established that <u>for tax purposes:</u> "'interest' means what is usually called interest."  *Old Colony R. Co. v. Commissioner of Internal Revenue*, 284 U.S. 552 (1932).  BOFA cannot define it differently from the Supreme Court.

### B.    Plaintiffs Have Standing To Sue.

BOFA's primary argument is that even if what it is doing is wrong -- and if it's wrong is costing its borrowers billions of dollars in lost tax deductions -- plaintiffs have no standing to sue BOFA.  BOFA's opposition again ignores established case law on this point:  *Clemens v. USV Pharmaceutical, A Div. of Revlon, Inc.*, 838 F.2d 1389 (5th Cir. 1988) and *Buchanan v. Dowdy*, 772 F.Supp. 968 (S.D. Tex. 1991).  Both cases hold that where, as here, the recipient of an informational

---

[1] Just for the two named plaintiffs and Ms. Sevilla, whose declarations were submitted in support of plaintiffs' motion for declaratory and injunctive relief, the amount of lost deductions exceeds $110,000 for tax years 2009-2012. *See* Document 26-2 at ¶ 17; Document 26-3 at ¶ 8; and Exhibit B to Document 26-4.

[2] While IRS Revenue Ruling 77-135 applies to "Graduated Payment Mortgages," there is no meaningful distinction between payments of previously deferred interest under a "Graduated Payment Mortgage" and payments of previously deferred interest under an Option ARM loan.

1  return (Form 1098 is an IRS "information return") complains to the issuer, and the issuer refuses to

2  correct the error, the recipient has suffered an injury in fact and has standing to sue the issuer to

3  force it to correct the error and seek damages.

4  **C.    Directing Aggrieved Borrowers To Call And Possibly File Suit Against The IRS**
   **Is Not A Practical Or Reasonable Solution.**

5

6      Ignoring *Old Colony, Motel Corporation, Clemens,* and *Buchanan,* BOFA argues that the

7  burden of correcting its continuing wrongs should fall, not on BOFA, but upon its negatively-

8  affected borrowers.  According to BOFA, each of its Option ARM borrowers should individually

9  battle out the issue out with the IRS, *year by year,* for as long as BOFA continues with its wrongful

10  practice.  Document 25-1 page 11, ¶ 2.  This is an outrageous "cure" for the problems created by

11  BOFA.

12      Cutting a malignant vine at the root is preferable to picking off individual diseased leaves as

13  other branches continue to grow.  BOFA's passing the buck to the IRS is not feasible.  The IRS

14  accepts Form 1098s at their face value and will not accept an amended tax return without a corrected

15  Form 1098.  First Amended Complaint, ¶ 79 and Exhibit E (IRS letter to Plaintiff Gurevich - *"we*

16  *cannot adjust the amount claimed on schedule A for mortgage interest without a corrected Form*

17  *1098 from Bank of America."*)

18      Clearly, the IRS and consumers accept the reported amounts on Form 1098 at face value.

19  And since BOFA never disclosed to its borrowers in 2009 that it unilaterally changed its reporting

20  practices to exclude payments of deferred interest on Form 1098, the vast majority of BOFA's

21  borrowers do not understand that any wrong has been committed against them.  Worse, because of

22  the three-year statute of limitations for filing amended tax returns imposed by IRC Section 6501(a),

23  once the time for amending tax returns passes, these consumers will forever lose their ability to

24  claim their rightful deductions.  Their only relief will be damage claims against BOFA.

25      BOFA's argument that consumers' only relief should lie with the IRS does not even work

26  with respect to the few borrowers (like plaintiffs and non-party Sevilla) who figured out BOFA's

27  inaccurate reporting practices -- in spite of BOFA's secretive policy change.  After being refused

28  corrected 1098s from BOFA, they tried to get relief from the BOFA and the IRS -- even to the extent

1  of filing an amended return in plaintiff Gurevich's case, and calling and writing to the IRS in the

2  case of Sevilla.  The IRS' response was uniform -- the only way for them to obtain relief was for

3  BOFA to issue corrected Form 1098s.  And that is what this case aims to do.

4       While BOFA adds to the plight of the hundreds of thousands, if not millions, of its Option

5  ARM borrowers that are deprived of billions of dollars in tax deductions because of its deliberately-

6  conceived wrongful policy, (or that the few who realize what is being done to them will have to

7  individually spend hundreds, if not thousands of dollars, to hire accountants and lawyers to attempt

8  to correct  BOFA's intentional error), its callous disregard fortunately does not bind this Court.

9  **II.    STANDARD ON MOTION TO DISMISS**

10      The purpose of a motion to dismiss is not to test whether a claim ultimately has merit.

11  Rather, the only determination that the Court may make is procedural; namely whether the

12  defendants have shown beyond doubt that the Court could not grant relief no matter what plaintiff

13  can prove.  *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *Wool v. Tandem Computers, Inc.*, 818

14  F.2d 1433, 1439 (9th Cir.1987).  Conversely, to survive dismissal of the action, the plaintiff must

15  only allege facts sufficient "to raise a right to relief above the speculative level" and "state a claim to

16  relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In making

17  this determination, courts must accept as true the complaint's allegations and construe them in the

18  light most favorable to plaintiff. *Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003).

19      Because of these liberal pleading standards, "motion[s] to dismiss for failure to state a claim

20  [are] viewed with disfavor and [are] rarely granted." *Morales v. Cate*, 757 F.Supp.2d 961, 964

21  (N.D.Cal. 2010), quoting *Hall v. Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986).  "[I]t is only

22  the extraordinary case in which dismissal is proper." *United States v. Redwood City*, 640 F.2d 963,

23  966 (9th Cir. 1981).  Leave to amend must be granted unless it is absolutely clear that no amendment

24  can cure the complaint's deficiencies. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir.1995).

25      Plaintiffs submit that the First Amended Complaint states claims that are clearly "plausible

26  on its face."  Should the Court, however, find pleading deficiencies in the First Amended Complaint,

27  plaintiffs respectfully ask this Court for leave to amend.

28

1

**III.    PLAINTIFFS HAVE STANDING TO RAISE THEIR CLAIMS**

2
3
4
5
6
7

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992), the United States Supreme Court held that to have standing, the plaintiff must have suffered an "injury in fact," namely an invasion of a legally protected interest which is: (a) concrete and particularized;[3] and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  The injury also has to be "fairly... trace[able] to the challenged action of the defendant, and not... th[e] result [of] the independent action of some third party not before the court."

8
9
10
11
12
13
14

BOFA concedes it has a duty to issue plaintiffs 1098 forms, but denies it owes plaintiffs any duty to do so correctly.  The 5th Circuit's opinion in *Clemens* dispenses with BOFA's argument. *Clemens* established not only that BOFA owes a duty to issue 1098 returns, which BOFA does not dispute, but that a recipient of an informational return (such as a Form 1098) has standing to sue the issuer to correct errors on the return (and for resulting accountancy fees) where, as here: (1) the recipient contacted the issuer prior to the lawsuit and pointed out the error; and (2) the issuer refused to correct the error.

15
16
17

In *Clemens*, the plaintiff sued his employer for accountancy fees and damages he incurred as the result his employer's incorrect information return (Form W-2) and his employer's failure to correct it after being requested to do so.  The 5th Circuit held:

18
19

> The duty of those who file information returns does not end, however, when a form is filed, correct or incorrect.  It extends to correction of any errors made, at least when the employee detects the error and calls on the form filer to correct the erroneous report.

20

*Id.* at 1394.

21
22
23
24
25
26

> We hold, therefore, that persons who undertake the duty of filing information returns concerning their employees and ex-employees have a duty to act with reasonable promptness to correct erroneous information they have sent to the IRS when such errors come to their attention in order to prevent precisely the kind of injury Clemens suffered in this case: being subjected to an IRS audit and wrongfully assessed back taxes, penalties, and interest, then having to undergo the inconvenience and expense involved in straightening things out after the passage of time and intervening events have compounded the initial error.  This duty must rest upon the person who files the return, because the person who is shown to have received income is powerless to correct the mistake by himself.

27
28

---

[3] "Particularized," according to the Supreme Court, means that the injury must affect the plaintiff in a personal and individual way.  *Id.* at 504 U.S. 560 at fn. 1.

1  *Id.* at 1395.[4]

2       *Buchanan v. Dowdy*, 772 F. Supp. 968 (S.D. Tex. 1991) follows this same rationale.   It

3  involved disputes arising out of the purchase of a travel agency.   One of the disputes involved the

4  issuance of a Form 1099 reporting the plaintiff had received more than $55,000 of income.   After

5  receiving the erroneous Form 1099, plaintiff's accountant wrote several letters requesting a

6  correction.   These requests were refused.   The plaintiff retained an accountant to fix the problem.

7  Relying on *Clemens,* the district court likewise held that issuers of informational returns have a duty

8  to correct erroneous information sent to the IRS.   When this issuer does not do so, it can be held

9  liable for the damages caused by the error.

10       Here, just as in *Clemens* and *Buchanan*, plaintiffs contacted BOFA prior to filing the lawsuit

11  and requested corrected Form 1098s.   First Amended Complaint at ¶¶ 77-78.   BOFA refused their

12  requests.   *Id.* (BOFA has received so many of these complaints from consumers it generated a form

13  letter and script to use in response.   *See* Exhibit C to Document 26-4).   And, since plaintiff Horn

14  continues to have his mortgage with BOFA, the same intentional under-reporting is going to repeat

15  itself, over and over, year after year, until BOFA is forced to change its policy.   Just this past

16  January, BOFA issued Form 1098s for tax-year 2012 with the same intentionally misrepresented

17

18  [4] BOFA cites *Gierbolini Rosa v. Banco Popular de Puerto Rico*, 930 F.Supp. 712 (D.Puerto Rico
19  1996) and the unpublished *Rumfelt v. Jazzie Pools, Inc.*, 2011 WL 2144553 (E.D.Va. 2011) in
    support of its argument that IRC Section 6050H imposes no duty running from BOFA to plaintiffs,
20  and that "those required to file informational returns only have the 'duty… to report, leaving it to the
    government and the taxpayer to sort out their differences [as to the tax status of reported amounts].
21  Motion at 17:20-21.

22       Aside from the fact that BOFA has a legal duty to <u>accurately</u> report mortgage interest on
    Form 1098, *Gierbolini* is neither on point nor is it inconsistent with *Clemens*.   This case is not about
23  whether plaintiffs' interest payments are deductible, but is about requiring BOFA to correctly report
    the amount of interest it received from its borrowers and to recover any damages caused by BOFA's
24  erroneous reporting.   Plaintiffs agree that once BOFA correctly reports the amounts of mortgage
    interest paid to it, the issue of whether those amounts are deductible is up to the individual taxpayer
25  and the IRS to work out, which is the holding in *Gierbolini*.   As to *Rumfelt*, the *pro se* plaintiff in
    that case neither provided facts nor allegations as to what he was suing for.   He simply identified a
26  number of Internal Revenue Code sections and claimed they had been violated.   Not surprisingly, the
    claims were rejected.   Here by contrast, plaintiffs allege specific damages, past harm, and impending
27  future harm that will result to them individually caused by BOFA's erroneous reporting.   *Clemens*
28  and *Buchanan* both specifically allow such suits.

1   calculation. *See* Document 26-2 at ¶¶ 18-19.

2          As to plaintiff Gurevich, she not only complained to BOFA, but she filed an amended return

3   with the IRS[5] with a higher interest amount than what was reported by BOFA. (This is exactly what

4   *Clemens* says consumers should not be forced to do because of the likelihood of triggering an audit

5   and incurring additional accountancy expenses). As predicted in *Clemens*, her amended return was

6   rejected by the IRS precisely because the interest amount did not match BOFA's 1098 reporting.

7   (This is the same response Ms. Sevilla got when she attempted to raise the matter with the IRS –

8   nothing could be done until BOFA issued a corrected Form 1098. *See* Exhibit F to Document 26-4.)

9          BOFA claims that the Gureviches' filing an amended return was not enough, and that Mr.

10  Horn, Ms. Gurevich, and presumably every other borrower that BOFA issues under-reported interest

11  to, should be forced to argue, and if necessary, litigate (at their own cost) with the IRS -- to the

12  Supreme Court if necessary -- to vindicate their position before being allowed to sue BOFA.

13         But the administrative exhaustion doctrine BOFA urges does not apply here. It only applies

14  to remedies mandated by statute or agency rule and does not require plaintiffs to exhaust remedies

15  that are merely optional, such as appealing the rejection of the Gureviches' amended return or any of

16  the other options BOFA suggests in its motion. *Darby v. Cisneros,* 509 US 137, 143, 113 S.Ct.

17  2539, 2542 (1993). BOFA's suggestion of requiring consumers to individually challenge the IRS,

18  while BOFA – the root cause of the problem – not only sits on the sidelines, but compounds the

19  problem year after year by issuing more erroneous 1098s is ludicrous. This Court must act or

20  billions of dollars in deductions will be forever lost to consumers. That is a fact.

21         Relief from BOFA's reporting error does not lie, individual by individual, with the IRS; the

22  IRS has already demonstrated through its dealings with plaintiff Gurevich and Ms. Sevilla that it

23  simply accepts at face value the amounts reported to it by BOFA and rejects out of hand any

24  different amounts provided by consumers. It is for this very reason that the 5th Circuit determined

25  that consumers who receive erroneous 1098s can sue where the issuer refuses to correct the error.

26  _____

27  [5] BOFA complains that plaintiff Gurevich did not attach her amended tax return to her complaint. BOFA is clearly welcome to seek the (privileged) return in discovery. But, BOFA's complaint

28  makes the point that discovery on both sides is necessary in this case to flush out all the facts.

1    BOFA's arguments that: (1) plaintiffs' claims must be dismissed because there is no private

2    right of action under 26 U.S.C. Section 6050H[6]; and (2) plaintiffs cannot sue under IRC Section

3    7434 (providing for recovery of actual and statutory damages for fraudulently filing certain types of

4    informational returns) miss the point. *Clemens* and *Buchanan* allow plaintiffs to sue under state law.

5    Moreover, BOFA's argument that there can be no private right of action under Section

6    6050H -- because it is not listed among the types of informational returns covered by Section 7434 --

7    is overly restrictive. The United States Supreme Court has created a four-factor test for determining

8    the existence of an implied private right of action "in a statute not expressly providing one." *Cort v.*

9    *Ash*, 422 U.S. 66, 78 (1975). A court determining whether a private right of action is implied in a

10   statute must consider: (1) whether the plaintiff is "one of the class for whose especial benefit the

11   statute was enacted—that is, [whether] the statute create[s] a federal right in favor of the plaintiff";

12   (2) whether "there [is] any indication of legislative intent, explicit or implicit, either to create such a

13   remedy or to deny one"; (3) whether the cause of action is "consistent with the underlying purposes

14   of the legislative scheme"; and (4) whether "the cause of action [is] one traditionally relegated to

15   state law, in an area basically the concern of the States, so that it would be inappropriate to infer a

16   cause of action based solely on federal law." *Id.*

17   BOFA argues that the reason there can be no implied right of action under Section 6050H is

18   because the statute's purpose is exclusively to benefit the IRS. Motion at fn. 4. But the sole case

19   BOFA relies on for this proposition -- *Arvin v. Go Go Investment Club*, 1997 WL 709329 (9th Cir.

20   1997) -- is not citable authority under Ninth Circuit Rule 36-3(c).[7]  More importantly, the plain

21   language of the statute belies BOFA's position. Section 6050H not only requires issuers of 1098

22   forms to provide copies of their filing to the government, *but also to the taxpayer*. It also requires

23

24   [6] All further statutory references, unless otherwise stated, are to the Internal Revenue Code.

25   [7] The Rule states:  Citation of Unpublished Dispositions and Orders Issued before January 1, 2007.

26   > Unpublished dispositions and orders of this Court issued before January 1, 2007 may not be
     > cited to the courts of this circuit, except in [circumstances that don't apply here.]

27   BOFA also heavily (and improperly) relies on *Arvin* in support of its arguments for dismissing
     plaintiffs' claims for negligence *per se* and for negligent misrepresentation. This Court should

28   ignore BOFA's improper citation to *Arvin* in all three contexts.

1   issuers to include on the form "the name, address, and phone number of the information contact of

2   the person required to make such return." These reporting requirements were added as part of the

3   *Taxpayer Bill of Rights* 2. H.R. REP. 104-506 at *76. The same House Report recognized that

4   "Taxpayers may encounter difficulties when a payor issues an erroneous information return and

5   refuses to correct the information and report the change to the IRS..." *Id.* at *36. Recognizing the

6   rights of taxpayers, Congress required issuers of 1098s to not only copy the taxpayer on the 1098,

7   but also *to provide their contact information*, so that the taxpayer recipients could in fact seek to

8   correct errors that might have been made by the issuer. Since the IRS was already receiving such

9   information prior to the amendment, Congress established a procedure for the benefit of taxpayers to

10  monitor the lender's reporting practices for accuracy.

11          In this regard, the 9th Circuit case of *First Pacific Bancorp, Inc. v. Helfer*, 2000 WL 1099791

12  (9th Cir.2000) and the district court case of *State of Washington, Dept. of Revenue v.*

13  *WWW.Dirtcheapcig.com,*                                                                          *Inc.,*

14  260 F.Supp.2d 1048 (W.D.Wash. 2003) should guide this Court's analysis. In *Helfer*, the Court

15  found an implied right of action pursuant to 12 U.S.C. 1821(d)(15) because it created an obligation

16  for shareholders to receive certain reports – "The statute creates in shareholders the right to receive

17  annual reports on the financial activities of the institution in receivership. That the FDIC is required

18  to submit reports to the Secretary of the Treasury, the Comptroller General, and the appointing

19  agency provides no basis for distinguishing the standing of those entities from the standing of

20  shareholders." *Id.* at *13.

21          Section 6050H requires BOFA to provide reports to the IRS and to taxpayers, and does not

22  distinguish between who the statutory duty runs to. The *Helfer* Court found a private right of action

23  to be implied in such cases because, in the absence of allowing an accounting action, shareholders

24  would be deprived of any means of enforcing the right to inspect corporation records. *Id.* at 3, 8

25  ("Congress would not create a right in the shareholders to access the financial reports without a

26  concomitant expectation that the information itself would be available to examine.") The same is

27  true here. Congress would not create a "right" to receive copies of 1098s as part of the *Taxpayer Bill*

28  *of Rights* without an expectation that the taxpayer could sue the issuer to correct the mistake,

1    especially after bringing the mistake to the attention of the issuer and been refused relief.

2          In *State of Washington*, the district court similarly found a private right of action under The

3    Jenkins Act because it required internet sellers of cigarettes to report such sales to the tobacco tax

4    administrators of the states in which the consumers resided and, like Section 6050H, it also required

5    the report to include the name and address of the seller.  The district court found a private right of

6    action existed because these "provisions reveal congressional intent to 'especially' benefit the states

7    to whom the registration and reports are provided." *Id*. at 1054.

8          The same is again true here.  Congress requires accurate 1098s to be filed, and it requires

9    them to be sent to both the IRS and to the taxpayer.  The first *Cort* factor is met.  Taxpayers are

10   "especially" benefitted by Section 6050H.

11         As to the second *Cort* factor, legislative intent, the argument is the same; the requirement that

12   the taxpayer be sent a copy of the 1098 was imposed as part of the "Taxpayers' Bill of Rights"

13   which was intended to "promote and protect taxpayer rights." S. Rept. 100–309, at 1 (1988).

14   Contrast this with the situation in *Cort*, where the "the protection of ordinary stockholders was "at

15   best a secondary concern." *Cort, supra,* at 81.  Clearly, Congress intended that taxpayers could

16   enforce the "rights" they were being given by the legislature.  Thus, an implied private right of

17   action to correct erroneous returns that the issuer refuses to correct is not at all inconsistent with the

18   legislative history of Section 6050H and the enforcement of the Taxpayers' Bill of Rights.  The

19   second factor is met.

20         Finding an implied right of action under Section 6050H is also "consistent with the

21   underlying purpose of Section 6050H," namely allowing taxpayers and the government to arrive at

22   the proper amount of deductions.  Absent relief, taxpayers are left with having to individually fight

23   the government, wasting the time and resources of both.  The third *Cort* factor is met.

24         Finally, as recognized in *State of Washington*, the reporting of tax information is not an area

25   "traditionally relegated to state law.'" *Id*.  As such, the fourth *Cort* factor is met.

26         So, once plaintiffs figured out BOFA's reporting errors and BOFA refused requests to correct

27   the erroneous 1098s, they gained standing to sue BOFA– whether under state law, as held by

28   *Clemens* and *Buchanan*, or by virtue of an implied right of action under Section 6050H because: (1)

they were among the class the statute is intended to protect; (2) they are powerless to correct the error themselves; and (3) reporting of a different interest amount on their tax returns than what BOFA reports on Form 1098s would, as *Clemens* explicitly recognizes, raise a "red flag" for the IRS to conduct an audit that would likely result in plaintiffs (and the government) having to incur substantial "inconvenience and expense." *Clemens* at 1393.

*Clemens* makes clear future injury confers standing to bring an action against the issuer of the inaccurate informational return. This logic is especially compelling where a large institution like BOFA is repeating its wrongful reporting hundreds of thousands, or perhaps even millions, of times. BOFA's position -- that each affected taxpayer should individually bear the burden to straighten out BOFA's error (year after year) with the government is just what *Clemens* is aimed at preventing, and which would be totally inconsistent with *Cort's* third factor. Thus, if this Court somehow finds that none of plaintiffs' state law claims have merit, it should nonetheless allow plaintiffs to amend their complaint to state an implied private cause of action under Section 6050H. This would not hinder the IRS at all. If the IRS wants to take its own action against BOFA for filing wrongful returns under Section 6721, it can. Allowing this suit to proceed would do nothing to interfere with that ability.

## IV.   THE PRIMARY JURISDICTION ARGUMENT FAILS AS THIS IS A QUESTION OF LAW FOR THE COURT, NOT A FACTUAL QUESTION FOR THE IRS

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir.2008). "[T]he doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry, rather than by the judicial branch." *Id.* BOFA claims this Court should refer the case to the IRS for it to weigh in on the question presented.

This Court should not be so easily led astray; the doctrine of primary jurisdiction is not appropriate where, as here, the material issues being litigated are primarily legal and not factual. This rule was long ago established by the Supreme Court in *Great Northern Ry. Co. v. Merchants'*

1    *Elevator Co.*, 259 U.S. 285, (1922).  The issue there was whether certain types of "disposition

2    orders" fell within an exemption provision of a tariff.  If so, the shipper would not have to pay a

3    $5.00 per car reconsignment fee; if not, the fee would have to be paid.  As even BOFA admits in its

4    motion, this case presents a similarly narrow and equally binary *legal* question, namely does the

5    "deferred" mortgage interest paid to BOFA qualify as "mortgage interest" under Section 163(a).  If it

6    does, then "the amount of such interest" should be reflected on 1098 forms under Section 6050H; if

7    not, then no such reporting was required.  No factual question needs to be addressed.

8         Just like BOFA, the carrier in *Great Northern* argued that since primary jurisdiction for

9    tariffs resided with the ICC, the case should be referred to that agency for an opinion on the proper

10   construction of the tariff.  *Id.* at 289.  Justice Brandeis rejected the argument, holding that "(e)very

11   question of the construction of a tariff is deemed a question of law . . ." and that questions of law,

12   unlike questions of fact, are originally cognizable in the courts without preliminary resort to any

13   agency.  *Id.* at 289-90.[8]  The Supreme Court reiterated this rule in *Federal Maritime Bd. v.*

14   *Isbrandtsen Co.*, 356 U.S. 481, 521 (1958), stating that "where a decision of a case depends on

15   determination of a question of law..., the doctrine of primary jurisdiction has no function, because

16   there is no occasion to refer a matter to the administrative agency." [9]

17

---

18   [8] Given Justice Brandeis' categorical statement that "(e)very question of the construction of a tariff
19   is deemed a question of law," it would appear that the Washington district court's decision to apply
20   the primary jurisdiction doctrine in *Barahona v. T-Mobile USA, Inc.*, 628 F.Supp.2d 1268, cited by
    BOFA, was based less on the issue of whether the tariff involved was a "rate" and more on the
    factual issue of the reasonableness of the charge.

21   [9] Lower federal courts follow this rationale routinely.  *See, e.g. I. C. C. v. Big Sky Farmers and*
22   *Ranchers Marketing Co-op. of Mont.*, 451 F.2d 511, 515 (9th Cir. 1971) ("The doctrine of primary
23   jurisdiction is inapplicable to this case; the material issues being essentially legal, not factual, they
    are not peculiarly within the field of the Commission's special expertise, but are the sort properly
24   referred in the first instance to judicial consideration and decision"); *Daniels-Hall v. National Educ.*
    *Ass'n*, 2008 WL 2179530 (W.D.Wash. 2008) (declining to invoke primary jurisdiction where the
25   material issue in dispute was the purely legal issue); *Environmental Technology Council v. Sierra*
    *Club*, 98 F.3d 774, 789 (4th Cir. 1996) ("The EPA's special expertise is not needed to decide a
26   question of law"); *Apple Computer, Inc. v. Podfitness, Inc.*, 2007 WL 1378020 (N.D.Cal. 2007)
    (Primary jurisdiction limited to factual issues); *Central Valley Chrysler-Jeep, Inc. v. Witherspoon*,
27   2005 WL 2709508 (E.D.Cal. 2005) (Primary jurisdiction does not apply to issues of statutory
    construction because "[t]here is no principle of administrative law requiring a court to await an
28   agency's interpretation of the law before the court interprets the law"; *U.S. v. 43.47 Acres of Land*,

---

1    Here, the issue is whether payment of previously deferred mortgage interest that the lender

2  has "added to Principal" (capitalized) is reportable on Form 1098s as deductible interest payments

3  under Section 163(a).  BOFA admits this is a purely legal issue.[10]  Motion at 4:26-27; 13:8-9; and

4  26:20-23.  And, the IRS concurs.

5    Among the supposed alternative avenues of relief BOFA says plaintiffs should have taken

6  beyond are: (1) attempting to file an amended return with correct amounts (Gurevich), (2) writing to

7  the IRS explaining the problem (non-party Sevilla); and (3) calling the IRS on the phone to complain

8  about BOFA's erroneous returns (Gurevich and Sevilla) was that the plaintiffs should have

9  complained to the Office of the Taxpayer Advocate.  In fact, they did.  And, just recently, the IRS

10  responded to that complaint to plaintiffs' counsel, stating:

11    In reviewing your submission, we determined it is not an issue under the purview of the
       Systemic Advocacy Program.  The issue does not fall within the structure of a systemic
12     problem, but rather **involves interpretation of legal matters**.  (Emphasis added).

13    Having established that the issue is purely legal, the doctrine of primary jurisdiction does not

14  and should not apply.  But there is an even better reason to reject BOFA's assertion of the doctrine –

15  the IRS has already addressed the issue *multiple times* – which BOFA conveniently overlooks.

16  **A.    This Court Does Not Need Agency Assistance To Determine That Deferred
           Interest *Is* Interest Under Section 163(a) Because The IRS Has Already So
17         Determined**

18    Section 163(a) states that "[t]here shall be allowed as a deduction all interest paid or accrued

19  within the taxable year on indebtedness."  The Supreme Court long ago held that "interest" is not a

20  complicated concept requiring special knowledge or expertise to understand.  *Old Colony R. Co. v.*

21

22  45 F.Supp.2d 187 (D.Conn 1999) ("the doctrine's usefulness decreases in proportion as legal issues
     predominate over factual.")

23  [10] Even the cases BOFA cites support plaintiffs' position.  *In re Biesel*, 195 B.R. 378, 380, clarifies

24  that the doctrine of primary jurisdiction applies only where the inquiry "is fact intensive, and would
     require the Court to apply detailed Treasury regulations."  *Id.*  There are no factual issues at play

25  here and the Treasury regulations that apply are plain as day.  *Syntek Semiconductor Co., Ltd. v.*
     *Microchip Technology Inc.*, 307 F.3d 775 (9th Cir. 2002) also supports plaintiffs.  There, the Court

26  utilized the primary jurisdiction doctrine because it involved a "complicated issue" of "first

27  impression whether decompiled object code qualifies for registration as source code under the
     Copyright Act."  *Id.* at 781.  The case at bar presents neither a complicated issue nor one of first

28  impression.

*Commissioner of Internal Revenue,* 284 U.S. 552, 560-561 (1932).[11]

> **And as respects 'interest,' the usual import of the term is the amount which one has contracted to pay for the use of borrowed money.** He who pays and he who receives payment of the stipulated amount conceives that the whole is interest. In the ordinary affairs of life, no one stops for refined analysis of the nature of a premium, or considers that the periodic payment universally called 'interest' is in part something wholly distinct; that is, a return of borrowed capital. It has remained for the theory of accounting to point out this refinement. [12] **We cannot believe that Congress used the word having in mind any concept other than the usual, ordinary, and everyday meaning of the term,** or that it was acquainted with the accountants' phrase 'effective rate' of interest, and intended that as the measure of the permitted deduction.
>
> ... Until the present contention was put forward, no one supposed that the taxpayer was not entitled to deduct the entire amount specified in the coupon and actually paid during the taxable year as interest. The person who receives this sum certainly considers it interest and so, apparently, does the government, which requires him to return it all as such, and does not permit him, if he or his predecessor holder paid more than par for the bond, to treat part of the sum received as a return of capital loaned and the remainder as interest received.[13] In short, **we think that, in the common understanding, 'interest' means what is usually called interest by those who pay and those who receive the amount** so denominated in bond and coupon, and that the words of the statute permit the deduction of that sum, and do not refer to some esoteric concept derived from subtle and theoretic analysis. (Emphasis added)

*Id.* at 560-561 (1932). The Ninth Circuit also has held that the definition of interest is easy to

---

[11] While *Old Colony* was construing the word "interest" under the Revenue Act of 1921, a predecessor statute to Section 163, there is no substantive difference in the two statutes. The language in the Revenue Act of 1921 was that "all interest paid or accrued within the taxable year on its indebtedness" was deductible. This is functionally the same as Section 163's current language that "[t]here shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness."

[12] This is precisely what BOFA is trying to do, transmute "deferred interest" into principal. But as the Supreme Court recognizes here, straw cannot be turned into gold through accounting artifices. Thus, while *Old Colony* is being cited in this section of plaintiffs' brief solely for the proposition that this Court does not need any agency assistance to interpret what is "interest," plaintiffs submits that *Old Colony's* holding controls on the ultimate issue as well, namely that BOFA wrongly failed to include payments of "deferred" interest on Form 1098s.

[13] Plaintiffs suspect, and should be allowed to confirm in discovery, that on its own tax returns BOFA has considered "deferred" or "unpaid" interest as income to it, and not as a repayment of principal. There would be good reasons for BOFA to do this. First, treating interest that is "unpaid," but which has accrued, as income increases BOFA's visible profitability. Yet, at the same time, by treating the subsequent payments of "deferred" interest as repayments of principal, BOFA can appear to lessen its exposure to the toxic debt of negative amortization mortgages. The problem with such creative accounting, of course, is that it violates the rule of parallel tax treatment. *Capital One Financial Corp., and Subsidiaries v. C.I.R.,* 659 F.3d 316, 328 (4th Cir. 2011). "Deferred" interest cannot be income to BOFA when it is accrued, but then change its nature to a repayment of principal when the previously "deferred" interest it is actually paid by the consumer.

1  understand and apply. "Roughly, interest is the rental price of money." *Wilshire Holding*

2  *Corporation v. Commissioner*, 262 F.2d 51, 53 (9th Cir. 1958).

3       Here, the "deferred interest" that was and is paid to BOFA is clearly part of what borrowers

4  "contracted to pay for the use of borrowed money." After all, had plaintiffs not elected to defer the

5  interest and paid it when due, BOFA would have reported those amounts *as interest* on plaintiffs'

6  Form 1098. Since there is no doubt that the deferred interest plaintiffs accrued was part of the cost

7  of borrowing the Principal (a specific defined amount in the loan documents), it is therefore

8  deductible "interest" under Section 163(a) and *Old Colony* and reportable as such on Forms 1098.

9  This should be the end of the argument. BOFA's position that "deferred interest" suddenly loses its

10  character as "interest" the moment the borrower elects to defer its payment until a later time is just

11  the sort of "subtle esoteric accounting device" *Old Colony* holds can't be countenanced. As interest

12  is defined as the cost of borrowing money, then the mere deferring of that same cost to a later time

13  cannot change its fundamental character. It still remains interest notwithstanding BOFA's attempt to

14  magically call it something else by converting those amounts to "Principal."

15  **B.    The IRS Has Repeatedly Determined That Deferred Interest Payments Are**
      **Deductible.**

16

17       In *Motel Corporation,* the taxpayer asserted that payments of previously deferred interest

18  were payments of principal, not income, because once the interest had been deferred, it became

19  capitalized into larger loan. This is exactly the argument BOFA is making. The IRS disagreed and

20  was successful before the Tax Court in arguing that interest does not change its character into

21  principal just because it is paid at a different time – "we can perceive no reason why defaulted . . .

22  [or, as in this case, deferred] . . . interest should be transformed into principal **for purposes of tax**

23  **law**. Such interest, no matter when paid, is clearly compensation for the use of money, and its

24  character as such does not change merely because it is not timely paid." [14]  (Emphasis added)

25       But the *Motel Corporation* case is not the only instance where the IRS has made this

26  determination. In 1977, the United States Treasury Department issued regulations (entirely

---

27  [14] *See also Coors v. U. S.*, 215 Ct.Cl. 840, 572 F.2d 826 (1978) (holding that interest paid on loan
   against insurance policy was properly deductible, even where the interest became a part of the

28  indebtedness on the policy).

1    consistent with *Motel Corporation*) governing the deductibility of deferred interest paid on

2    "Graduated Payment Mortgages." Such mortgages are also negative amortization loans, but instead

3    of offering the customer an option to pay less in any given month (hence, "Option ARM"), the loan

4    provides a fixed schedule of payments that are less than the interest due at the beginning of the

5    mortgage. As the mortgage term continues, the payments "graduate," to make up for the interest that

6    was not paid in the early years of the mortgage. IRS Revenue Ruling 77-135 explicitly holds:

7        "...when the amount of the payments has increased to the extent that it now exceeds the
         current interest charge owed, the excess... will be treated as discharging first that part of
8        the unpaid balance of the loan that represents accumulated interest carried over from
         prior years and will be included in income by the mortgagee and deducted by the
9        mortgagor as interest at that time."

10   The logic of Revenue Ruling 77-135 applies equally to Option ARM loans since both are

11   tigers of the same stripe, i.e. mortgage loans that provide for negative amortization -- deferred

12   interest accruing and being *added* to principal. There is simply no distinction between payments of

13   previously deferred interest under a "Graduated Payment Mortgage" and payments of previously

14   deferred interest under an Option ARM loan.

15   Finally, in 2004, the Treasury Department published its Rule that established payments of

16   previously deferred (capitalized) student loan interest were deductible. *See* 26 C.F.R. Section 1.221-

17   2(h). Even BOFA cites this Rule in its brief and concedes it is analogous to the present situation.

18   Motion at 28:20:29:8. What BOFA does not disclose is that the Treasury Department's stated

19   rationale for its determination that deferred student loan interest is deductible – and should be

20   reported on Form 1098-E – in the year it is paid is exactly the same as plaintiffs' argument here,

21   namely that:

22       Courts have defined the term "interest," for income tax purposes, as compensation paid
         for the use or forbearance of money. *See, e.g., Deputy v. Du Pont*, 308 U.S. 488 (1940).
23       Consistent with this definition, the final regulations provide that capitalized interest is
         deductible as qualified education loan interest... Under the final regulations, a payment
24       generally first applies to interest that has accrued and remains unpaid as of the date the
         payment is due and then applies to the outstanding principal.
25

26   69 FR 25489-02, 2004 WL 972762. BOFA argues that the issuance of this regulation supports

27   invocation of the primary jurisdiction doctrine because it supposedly shows that the IRS "could issue

28   formal guidance addressing the question posed by plaintiffs." Motion at 28:20-21. In fact, it only

1  further supports plaintiffs' argument.  Like Revenue Ruling 77-135, the final regulations applicable

2  to student loans make clear that payments of previously deferred interest/capitalized interest are

3  deductible and should be reported on Form 1098  pursuant to Section 6050S.  This is exactly the way

4  plaintiffs contend their mortgage interest payments should have been allocated, and reported on the

5  1098s they received.  Indeed, this is apparently the way BOFA allocated deferred interest until it

6  unilaterally and secretly changed its policy in 2009.

7       The parallel between the tax treatment of payments of deferred interest in "Graduated

8  Payment Mortgages" and "Option ARM" loans is exact.  The parallel between the tax treatment of

9  payments of deferred interest on student loans and mortgage loans is equally plain.  (Even BOFA

10  recognizes it).  As the IRS has already addressed the deductibility of deferred interest multiple times,

11  there is simply no reason why this Court would need to refer this purely legal issue to the IRS for an

12  echo.  For all of these reasons, this is not an appropriate case to apply the doctrine of primary

13  jurisdiction.

14  ## V.  PLAINTIFFS' BREACH OF CONTRACT CLAIM IS WELL STATED – BANK OF AMERICA HAS BREACHED ITS CONTRACTUAL OBLIGATIONS

15

16       A contract is either express or implied.  Cal. *Civil Code* Section 1619.  The terms of an

17  express contract are stated in words.  *Id.* at Section 1620.  But this is not the limit of the content of a

18  contract.  California law provides that "all applicable laws in existence when an agreement is made

19  necessarily enter into the contract and form a part of it, without any stipulation to that effect, as fully

20  as if they were expressly referred to and incorporated in its terms."  *Grubb v. Ranger Ins. Co.*, 77

21  Cal.App.3d 526, 529 (1978).  (This would of course include Section 6050H's accurate interest

22  reporting requirement).  Thus, BOFA's argument that the language of its contract does not

23  incorporate the requirements of Section 6050H – Motion at 14:9-10 – is simply incorrect.

24       Further, California law recognizes that "loan transactions between a mortgage finance

25  company and the plaintiff involve 'more than the provision of a loan; they also include [the]

26  financial services [of managing the loan].'")  *Hernandez v. Hilltop Financial Mortg., Inc.*, 622

27  F.Supp.2d 842, (N.D. Cal. 2007), quoting *Jefferson v. Chase Home Finance LLC*, 2007 WL

28  1302984, at *3 (N.D.Cal. 2007).  Plaintiffs submit that part of managing plaintiffs' loans -- and

1   implicit in their contracts – is the provision of *accurate* 1098 forms.  Since BOFA is not complying

2   with Section 6050H by not reporting the correct amount of mortgage interest, it is breaching its

3   contract with plaintiffs.

4          Moreover, the existence and terms of a contract can also be implied and manifested by

5   conduct.  *Id.* at § 1621.  A contract implied in fact "consists of obligations arising from a mutual

6   agreement and intent to promise where the agreement and promise have not been expressed in

7   words."  *Silva v. Providence Hospital of Oakland,* 14 Cal.2d 762, 773 (1939).  Even when a written

8   contract exists, "[e]vidence derived from experience and practice can now trigger the incorporation

9   of additional, implied terms."  *Scott v. Pacific Gas & Electric Co.*, 11 Cal.4th 454, 463 (1995),

10  quoting *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 679 (1988).[15]

11         Whether the parties' conduct creates such implied agreements is generally "a question of

12  fact." (*Id.* at p. 677) and hence inappropriate for resolution on a motion to dismiss.  *Solid Host, NL v.

13  Namecheap, Inc.*, 652 F.Supp.2d 1092, 1119 (C.D.Cal. 2009); *Goodrich & Pennington Mortg. Fund,*

14  *Inc. v. Chase Home Finance, LLC*, 2008 WL 698464 *7·(S.D.Cal. 2008) ("Whether or not an

15  implied contract has been created is determined by the acts and conduct of the parties and all the

16  surrounding circumstances involved and is a question of fact.")

17     **A.     The Contract Terms Do Not Allow Bank of America To Convert Interest Into**
        **Principal**

18

19         BOFA's primary claim is that it has not breached its contract with the plaintiffs because,

20  according to BOFA, the contract explicitly provides that deferred interest "becomes part of the

    principal balance of the loan."  Motion at 7:4.  This mischaracterization of the contract's actual

21  language is another example of BOFA not being entirely forthright with the Court.  "Principal" is a

22  defined term in each of BOFA's notes for a specific dollar amount—the amount originally

23

24

    _____

25  [15] *Foley* makes clear that contract terms can be imposed by law.  As stated in Foley, "numerous
    legislative provisions have imposed obligations on parties to contracts which vindicate significant
26  social policies extraneous to the contract itself."  *Id.* at 700.  With all mortgages, there is certainly an
    implied term (by Section 6050H) that the lender will report to the I.R.S. the amount of interest the
27  borrower has paid. Plaintiffs contend that if a lender changes its policy of how it calculates those
    amounts midstream, it constitutes a breach of the prior implied agreement.
28

1   borrowed. First Amended Complaint, Exhibit A, Section 1- "$392,000 (this amount is called
2   "Principal");" *see also* Exhibit C, Section 1.

3        The actual language of the loan documents provides:

4       Section 3(E): **Additions to My Unpaid Principal:** …For each month that my monthly
5       payment is less than the interest portion, the Note Holder will subtract the amount of my
        monthly payment from the amount of the interest portion and will **add the difference to**
6       **my unpaid Principal**, and interest will accrue on the amount of this difference at the
        interest rate required by Section 2 [which is the paragraph establishing the interest rate
7       applied to Principal]. (Emphasis added)

8   *See* Exhibit A to Document 26-3 at ¶ 3(E).  There are several reasons why BOFA is wrong in
9   claiming that the contract magically converts deferred interest into principal for 1098 reporting
10  purposes.  First, if the parties' originally intended deferred interest to become part of the principal,
11  then the language "and interest will accrue on the amount of this difference at the interest rate
12  required by Section 2" would be superfluous. Section 2 would simply govern and interest would be
13  charged on the "Principal" without the need to separately specify that interest would also be charged
14  on the deferred interest at the same rate.   Under California law, each word and clause in a contract
15  must be given independent meaning, where possible, so that no word or clause is made redundant or
16  superfluous.  *Union Oil Co. v. International Ins. C*o., 37 Cal.App.4th 930, 935 (1995) ("In this
17  regard, an interpretation that gives effect to every clause is preferred over one that would render
18  other policy terms meaningless." *See also Titan Corp. v. Aetna Cas. and Sur. Co.*, 22 Cal.App.4th
19  457, 474 (1994) and *New York Life Ins. Co. v. Hollender,*
20  38 Cal.2d 73 (1951).

21       Second, left completely ignored by BOFA is the Prepayment Penalty Addendum in the
22  Gurevich note.  *See* Exhibit B to Document 26-3.  This addendum changes the terms of the original
23  note which originally provided that "the noteholder will use my prepayments to reduce the amount
24  of Principal I owe under this note."  *See* ¶ 5 of Exhibit A to Document 26-3.  The Prepayment
25  Penalty Addendum provides that if Ms. Gurevich made a prepayment, the lender could: "…apply my
26  Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my
27  Prepayment to reduce the Principal amount of the Note."  If BOFA intended that all accrued and
28  unpaid interest simply becomes "Principal" -- as BOFA now claims – then there would be no need

1   for an addendum distinguishing "accrued and unpaid interest" from "Principal."

2   Also conveniently ignored by BOFA, but attached to the First Amended Complaint as

3   Exhibit C, is another BOFA-originated note that similarly provides that deferred interest will be

4   "*added*" to principal. Given this language and BOFA's argument, one would expect BOFA to have

5   applied payments on this note the same way as it did with plaintiffs' notes. But the note attached as

6   Exhibit C states just the opposite, namely that "Each monthly payment will be applied... first to

7   current interest, then to prior unpaid interest, and the remainder to principal. *Id.* at ¶ 3(A).[16]

8   If unpaid interest is really "Principal" as BOFA would have this Court believe, then would

9   not this language in the Addendum be superfluous? Given that both notes have the same language

10   that interest will be "*added*" to principal, and that one of them is explicit that payments of deferred

11   interest will be applied before principal, it is at the very least ambiguous whether language "adding"

12   deferred interest to principal somehow converts interest into principal for 1098 reporting purposes.

13   Of course, the U.S. Supreme Court and U.S. Tax Court have already held contrary to BOFA's

14   intractable position.

15       **B.**    **Any Ambiguity In The Contract Must Be Construed Against Bank of America.**

16   "In cases of uncertainty . . . the language of a contract should be interpreted most strongly

17   against the party who caused the uncertainty to exist." (Civ. Code § 1654.) *Victoria v. Superior*

18   *Court,* 40 Cal. 3d 734, 745 (1985). BOFA's predecessors-in-interest drafted plaintiffs' notes; any

19   ambiguity in those notes must be construed against BOFA, not the plaintiffs. *In re Pico*, 2011 WL

20   3501009 at *3 (Bkrtcy.S.D.Cal. 2011) (successor corporation bound to predecessor's ambiguity).

21   Plaintiff submits that the language "*adding*" deferred interest to principal means just that: the

22   "deferred interest" is added to the "Principal" but does not itself become "Principal." If the principal

23   was $100,000 and the consumer elected to "defer" $1,000 of interest in a given month, then the total

24   amount the consumer would owe to BOFA would be $100,000 in principal plus the $1,000 in

25   [16] Because no discovery has yet occurred, plaintiffs are unaware of how BOFA is in fact treating
     payments of deferred interest by customers who have loans under the Exhibit C form. However,

26   plaintiffs suspect from the letter that BOFA sent to non-party Sevilla (Exhibit D to Document 26-4)
     that BOFA's 2009 decision to "programme" its "Year End system ... to exclude the amount of

27   interest from each payment that was capitalized" has been applied to all BOFA notes, irrespective of

28   the actual language of the notes.

1  "deferred interest."  Given the clear language of the Gurevich Addendum and that BOFA's notes

2  both allocate payments of deferred interest prior to "Principal," plaintiffs submit that their

3  construction is the only reasonable one.

4  Plaintiffs submit that there is no ambiguity as the language of the documents clearly shows

5  that deferred interest is *added* to "Principal" but does not become "Principal."  However, if an

6  ambiguity exists, California law has also long held that "[i]t is appropriate to consider extrinsic

7  evidence for the purpose of determining whether an ambiguity exists."  *Pac. Gas & Elec. Co. v.*

8  *G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 37 (1968).

9  The BOFA-originated documents attached as Exhibits to the First Amended Complaint

10  clearly state that deferred interest is added to Principal.  When electing Option 3 which allows for a

11  payment of less than the interest then due: "… **the unpaid interest will be added to your**

12  **principal**."  First Amended Complaint, Exhibit B- Monthly Home Loan Statement; "Making the

Minimum Payment each month may not be enough to cover the interest you owe on your mortgage

13  and. if that is the case, will cause your mortgage balance to increase because **the unpaid Interest**

14  **each month is added to your mortgage balance**."  First Amended Complaint, Exhibit B- Payment

15  Adjustment Notices.

16  In *National Basketball Ass'n v. SDC Basketball Club, Inc.*, 815 F.2d 562, 569 (9th Cir.1987),

17  it was held that past practice evidence is admissible in the face of an ambiguous contract.  Here, the

18  relevant extrinsic evidence of past practice is found in BOFA's letter from the Office of the

19  President to Ms. Sevilla (Document 26-4), which states it was only in 2009 that BOFA

20  "programmed" its "Year End system … to exclude the amount of interest from each payment that

21  was capitalized."  As supported by Document 26-4, prior to 2009, including when plaintiffs' notes

22  were entered into, BOFA included payments of deferred interest in its Form 1098's.  First Amended

23  Complaint at ¶ 78.

24  Plaintiffs are further prepared to allege (based on conversations held between BOFA and

25  another class member complaining to BOFA about the same issue as plaintiffs), that prior to 2009

26  BOFA reported payments of "deferred" interest on Form 1098, and that it was only in or about 2009,

27  that BOFA unilaterally changed its policy of reporting mortgage interest without notifying its

28  borrowers that it was doing so.

1    Plaintiffs should thus be allowed to take discovery to determine if BOFA has always acted in

2    a manner consistent with the arguments it is now advancing.  The language of its own notes and the

3    letter to Ms. Sevilla, however, indicate it has not done so.  Clearly, if prior to 2009, BOFA reported

4    payments of deferred interest on its 1098s this was an implied term of its contract, which it then

5    breached by unilaterally changing its policy, and seemingly so without notice to anyone.

6    Additional extrinsic evidence exists as to custom and practice in the industry.  Wells Fargo,

7    JPMorgan Chase and IndyMac Bank all report payments of deferred mortgage interest.  *See* First

8    Amended Complaint, ¶ 89; Documents 26-2, ¶ 20, and 26-4, ¶ 7).   *Horsemen's Benevolent &*

9    *Protective Assn. v. Valley Racing Assn.*, 4 Cal.App.4th 1538, (1992) (extrinsic evidence admissible

10   to prove parties' intention as to the term "based on.")  Here, the only difference is that term being

11   argued over is "*added to principal*."  Under *Pac. Gas & Elec. Co.*, plaintiffs must be allowed to take

12   discovery on the custom and practice in the banking industry with relation to reporting deferred

13   interest on 1098 forms to prove ambiguity.

14   **C.    By Unilaterally Capitalizing Accrued Interest In 2009, Bank Of America Also**
        **Breached The Covenant Of Good Faith and Fair Dealing**

15

16   "Every contract imposes upon each party a duty of good faith and fair dealing in its

17   performance and its enforcement."  Rest.2d Contracts, § 205.  "The essence of the good faith

18   covenant is objectively reasonable conduct."  *Lazar v Hertz Corp.*, 143 Cal.App.3d 128, 141 (1983).

19   In essence, the covenant is implied as a supplement to the express contractual covenants, to prevent a

20   contracting party from engaging in conduct which (while not technically transgressing the express

21   covenants) frustrates the other party's rights to the benefits of the contract.  *Love v. Fire Ins.*

22   *Exchange*, 221 Cal.App.3d 1136, 1153 (1990).  Thus, "[w]here a contract confers on one party a

23   discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in

24   good faith and in accordance with fair dealing."  *Perdue v. Crocker National Bank,* 38 Cal.3d 913,

25   923 (1985).  If one party exercises its discretionary authority in bad faith for the purpose of

26   frustrating the other party's legitimate expectations, it has breached the implied covenant of good

27   faith and fair dealing.  *Commercial Union Assurance Cos. v. Safeway Stores, Inc.*, 26 Cal.3d 912,

28   918 (1980).

The holding in *Crescent Woodworking Co., Ltd. v. Accent Furniture, Inc.*, 2005 WL 5925586 at * 3-4 (C.D.Cal. 2005) applies the *Perdue* principles in the context of a motion to dismiss where one contracting party exercised discretionary power over the contract and which negatively affected the rights of the other.[17]   Specifically, Counter-claimant, Accent, entered into a contract to sell Chinese furniture to the counter-defendant, Crescent.  In January 2004, the U.S. International Trade Commission found that the United States furniture industry was threatened by Chinese imports and increased the import duty from 10.98% to 198.08% after a given date.  Importing firms like Crescent could avoid the new duty, however, by answering a confidential questionnaire.  Accent alleged that it asked Crescent to complete the questionnaire, but that Crescent never did so.  When part of the goods arrived after the newly imposed duty went into effect, Accent refused to pick them up because of the new duty rate.   Crescent sued Accent and Accent counterclaimed based, *inter alia*, on Crescent's breach of the implied covenant.  Crescent moved to dismiss Accent's counter-claim.

In denying Crescent's motion, the district court held that even though there was no obligation in the contract to fill out the questionnaire, Accent properly stated a claim for breach of the covenant of good faith and fair dealing.  "Whether or not Crescent completed a questionnaire would not have affected the timeliness of the goods.  However, a completed questionnaire would have at least reduced the level of duties imposed and would have allowed the parties to come closer to fulfillment of contract purposes.  A 10.98% duty has different implications than the 198.08% duty that was ultimately imposed. This is the sort of conduct that the covenant of good faith and fair dealing was meant to protect against." *Id.* at *4.

The situation is the same here.  Even if BOFA had the discretion to change its interest reporting policy to exclude payments of deferred interest (which it didn't under well-recognized tax law principles), the fact is that doing so mid-stream in the contract to the significant detriment of its borrowers is again just the sort of activity that the covenant is "meant to protect against."

[17] Contrary to BOFA's contention, the Ninth Circuit has held that a breach of a specific contractual provision is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing. *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937-938. "'The covenant is implied . . . to prevent a contracting party from engaging in conduct which (while technically not transgressing the express covenant) frustrates the other party's rights of the benefit of the contract.' *Los Angeles Equestrian Ctr., Inc. v. City of Los Angeles* (1993) 17 Cal.App.4th 432, 447."

Closer to home, in *Badie v. Bank of America*, 67 Cal.App.4[th] 779, 796 (1998) the court held another unilateral decision of Bank of America – adding an ADR provision to a credit card agreement – violated the implied covenant. The court reasoned that where a party has the unilateral ability to change an agreement, and does so in objective bad faith, it violated the implied covenant.

Here, in 2009 BOFA made a unilateral, and unannounced, decision to "capitalize" deferred interest depriving borrowers of a large portion of their interest deduction.[18] The logic is the same.

"The issue of whether the implied covenant of good faith and fair dealing has been breached is ordinarily a question of fact unless only one inference [can] be drawn from the evidence." *Haggarty v. Wells Fargo Bank, N.A.*, 2011 WL 445183 at *3 (N.D.Cal. 2011). In this case, there clearly is not just one inference that can be drawn from the available evidence. Thus, this Court should deny BOFA's motion on this claim and allow discovery to proceed.

## VI.  PLAINTIFFS' INTENTIONAL AND NEGLIGENT MISREPRESENTATION CLAIMS ARE WELL STATED

BOFA argues that the causes of action for intentional and negligent misrepresentation should be dismissed because: (1) the under reporting of mortgage interest on Form 1098s are not representations of fact, but rather are representations of law; and (2) with regard to intentional misrepresentation, that BOFA believed the under reported figures were true. Both arguments fail.

### A.  Bank Of America Is Misrepresenting *A Fact* – The Amount Of Interest It Receives.

In 2009, with no disclosure to its borrowers, BOFA made the decision to cease reporting payments of deferred interest on Form 1098s. Since that time, in January of 2010, 2011 and 2012 BOFA mailed out millions of Form 1098s incorrect reporting interest amounts received by BOFA from its mortgage loan customers. To support its argument that these 1098s were representation of law, BOFA offers *California Pharmacy Management, LLC v. Zenith Ins. Co.*, 669 F.Supp. 2d 1152, 1161 (C.D. Cal. 2009) and *Miller v. Yokohama Tire Corp*, 358 F.3d 616, 621 (9th Cir. 2004).

*Zenith* is off point. There, the plaintiff alleged that defendant insurer engaged in a collusive

---

[18] The Ninth Circuit has long held that a party can't unilaterally change the terms of a contract; it must obtain the other party's consent before doing so. *Union Pac. R.R. v. Chi., Milwaukee, St. Paul & Pac. R.R.*, 549 F.2d 114, 118 (9th Cir.1976).

1   campaign of sham litigation and invalid objections to avoid paying insurance claims. The

2   misrepresentations consisted of, among other things, the submission of ". . . fraudulent objection

3   letters and . . . blanket denials of CPM's claims in telephone calls with CPM's collectors." *Zenith* at

4   1162. The court denied the motion to dismiss concluding that the fraud had been pled sufficiently.

5   The *Zenith* court did not engage in a discussion of whether the misrepresentation was one of fact or

6   law and thus it provides no help to BOFA's argument.

7         *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 618 (9th Cir. 2004) was a RICO case where the

8   alleged misrepresentation was that Yokohama, ". . . falsely represented to him and other employees

9   that they were not entitled to overtime pay because they were salaried." The court noted: "Miller

10  alleges that the Yokohama managers formed a scheme to defraud him and other Yokohama

11  employees *through misrepresenting the law*, and furthered that scheme through the mailing of

12  paychecks and W-2's" [Emphasis added.] *Id.* at 620. The court further noted that, "The Yokohama

13  managers' statements did not include express or implied misrepresentations of fact." *Id.* at 621.

14        This case at bar is considerably different. Plaintiffs do not allege, as did Miller, that there

15  have been any misrepresentations of law.       Plaintiffs have exclusively alleged factual

16  misrepresentations, i.e. the amount of interest that plaintiffs paid.   Paragraph 115 of the First

17  Amended Complaint alleges:

18        On IRS Form 1098 for the 2009 tax year, BOA represented to Plaintiff HORN and the
          IRS that Plaintiff has paid BOA "mortgage interest" of $17,952 when, in fact, Plaintiff
19        had paid approximately $22,936.

20        This is a factual misrepresentation; it is not a misrepresentation of law. To the extent that

21  BOFA argues that it had to resolve a matter of law in order to make the factual representation, and

22  therefore the representation was essentially a representation of the law, Restatement of Torts, 2nd

23  Section 545 refutes BOFA's position.

24        § 545. Misrepresentation Of Law

25        (1) If a misrepresentation as to a matter of law includes, expressly or by implication, a
          misrepresentation of fact, the recipient is justified in relying upon the misrepresentation
26        of fact to the same extent as though it were any other misrepresentation of fact.

27        (2) If a misrepresentation as to a matter of law is only one of opinion as to the legal
          consequences of facts, the recipient is justified in relying upon it to the same extent as
          though it were a representation of any other opinion.

28

1   For the past four Januarys, BOFA has been telling borrowers BOFA received a lesser amount

2   of mortgage interest than they in fact did; these hundreds of thousands, if not millions, of

3   misrepresentations were factual, not legal.  Whether BOFA did this intentionally, which the Sevilla

4   letter and other factors indicate is the case, or negligently, it is still actionable.

5   **B.**   **Bank Of America Knows, Or Should Know, What It Is Doing Is Wrong.**

6   BOFA argues that it cannot be held liable for any intentional misrepresentation because it

7   thought it was acting correctly.  This strains credulity.

8   First, even now after BOFA has filed its original Motion to Dismiss (Document 7), the

9   instant Motion to Dismiss, and the Opposition to Plaintiffs' Ex Parte Application for An Expedited

10  Hearing Date for Plaintiffs Motion for Declaratory and Injunctive Relief (Document 28), BOFA

11  cannot cite a single authority supporting the position it has taken.

12  The *Motel Corporation* case came out in 1970.  In 1977, Revenue Ruling 77-135 governing

13  the deductibility of deferred interest paid on "Graduated Payment Mortgages" was published.  And

14  in 2004, the Treasury Department published its rule establishing payments of previously deferred

15  (capitalized) student loan interest were deductible and reportable on Form 1098.  *See* 26 C.F.R.

16  Section 1.221-2(h).  Even BOFA cites this latter regulation in its brief and concedes it is analogous

17  to the present situation.  Motion at 28:20:29:8.

18  Detracting further from BOFA's position that it was acting in good faith is that when BOFA

19  changed its reporting policy in 2009, it never provided notice to its borrowers.  Finally, and probably

20  the most damning evidence of all in terms of BOFA's lack of good faith is that other large banks,

21  including JPMorgan Chase, Wells Fargo and IndyMac are all reporting consumer payments of

22  deferred interest on the 1098's they issue to the IRS.  *See* Document 26-2, ¶ 20 and 26-4, ¶ 7.

23  Given the wealth of legal authority existing prior to the BOFA's 2009 policy change, the fact

24  that there has been no change in the tax laws or court rulings supporting BOFA's position, that

25  BOFA seemingly stands alone in its wrongful practice, and that BOFA failed to disclose its actions

26  to the borrowers, it is certainly reasonable to allege that BOFA knew its actions were wrong and that

27  it intentionally went forward and issued erroneous 1098s anyway, without regard to the harmful

28  effects its action would have on its borrowers.

## VII.   UNDER REPORTING OF INTEREST PAYMENTS MISLEADS CONSUMERS AND VIOLATES CAL. BUS. & PROF. CODE § 17200

California's Unfair Competition Law ("UCL") (Cal. *Bus. & Prof. Code* Section 17200 *et seq.*), prohibits business acts or practices that are "unlawful," "unfair," or "fraudulent." Each of these prongs constitutes a separate and independent cause of action. *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). BOFA violated all three prongs.[19]

The UCL's "unlawful" prong is essentially an incorporation-by-reference of all other state, federal, and even local laws. *Cel–Tech* at 539–40 ("By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." Plaintiffs have already explained how BOFA is improperly reporting the wrong amounts of interest in violation of Section 6050H, (i.e. it is engaging in "unlawful" conduct). Even if this Court determines that there is no private right of action under Section 6050H, BOFA's violation of that statute can still serve as the predicate for a UCL violation. *In re Farm Raised Salmon Cases*, 42 Cal.4th 1077, 1095-1096 (2008) (claims can be based on California laws incorporating federal statutes even if the federal statute itself does not provide for a private right of action.)

As to the "unfair" prong, California law holds that a practice may be deemed unfair even if not specifically proscribed by law. *Boschma v. Home Loan Ctr., Inc.*, 198 Cal.App.4th 230, 252 (2011). To determine whether a business practice is "unfair," the California Supreme Court has not yet established a firm test. *Cel–Tech*, *supra*, 20 Cal.4th at p. 187, fn. 12. The most common approach applies the three factors constituting unfairness in the Federal Trade Commission Act: (1) the injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) the injury must be one that the consumer could not reasonably have avoided. *Camacho v. Automobile Club of Southern California*, 142 Cal.App.4th 1394, 1402-1403 (2006). Other courts, however, have found business practices to be unfair under the UCL

---

[19] Although plaintiff Gurevich resides in Massachusetts, like plaintiff Horn, her loan contract originated with Countrywide Financial, a California corporation. As such, she is entitled to claim the benefits of California law. *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 613 (1987); and *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 242 (2001) (California law can be applied to a national class where there are significant contacts with California).

1  when they violate public policy as declared by "specific constitutional, statutory or regulatory

2  provisions," or when a practice is "immoral, unethical, oppressive, unscrupulous, or substantially

3  injurious to consumers." *Bardin v. DaimlerChrysler Corp.*, 136 Cal.App.4th 1255, 1260–61 (2006).

4  Under any of these tests, plaintiffs' complaint states a cause of action.

5         First, it is obvious that the injury to consumers is substantial. Billions of dollars in lawful tax

6  deductions are being denied to borrowers as a result of BOFA's wrongful practice. Second, even

7  though BOFA knows that its customers and the IRS regularly rely on their 1098 forms to accurately

8  state the amount of mortgage interest BOFA received, BOFA never told anyone that it was changing

9  its method for miscalculating interest in 2009. Third, *Motel Corporation* and the other authorities

10 cited herein demonstrate there is no legal justification for BOFA's revised method for calculating

11 reportable mortgage interest. Indeed, other banks do it the correct way. Fourth, as demonstrated by

12 the IRS' rejection of plaintiffs' and Ms. Sevilla's attempts to resolve the situation themselves,

13 consumers are helpless to avoid the damaging effects of BOFA's practice. Finally, BOFA's reasons

14 for changing its policy in 2009 appear to have been entirely self-serving, unjust, immoral and

15 oppressive. BOFA does not offer any explanation to defend its practice. Rather, it appears to have

16 been a decision borne solely out of expediency after BOFA took over Countrywide and BOFA's

17 financial stability was crumbling. These facts establish a violation of the UCL's "unfair" prong.

18        Violations of the UCL's "fraudulent" prong require plaintiffs to plead BOFA's business

19 practice is one "in which members of the public are likely to be deceived." *Lyons v. Bank of*

20 *America, N.A.*, 2011 WL 3607608, at *11 (N.D.Cal. 2011). In this context, the relevant facts are

21 again: (1) that consumers rely on the amounts reported on their 1098 forms; (2) BOFA never told

22 anyone it was changing how it was going to calculate those amounts when it did so in 2009; and (3)

23 that there was no legal support for BOFA's revised methodology; it was purely self-serving.

24        *Lyons* makes clear that you can't change the rules in the middle of the game. In that case,

25 BOFA was trying to unilaterally escape from the existence of a loan modification plan it had

26 previously negotiated. Here, it is the method for calculating mortgage interest for reporting purposes

27 on 1098 forms that BOFA unilaterally changed. In both cases, BOFA tried to change the rules mid-

28 stream in ways that hurt its borrowers. The *Lyons* court found plaintiffs had stated a UCL claim, and

1  so should this Court.

2      If this Court, for any reason, does not believe plaintiffs' First Amended Complaint does not

3  sufficiently state any of the claims asserted (as it does not, for instance, include reference to the

4  letters sent to non-party Sevilla which were only discovered by plaintiffs after the filing of the FAC),

5  plaintiff requests leave to amend to state those additional facts.

6  **VIII.   THE DECLARATION JUDGMENT CLAIM SHOULD PROCEED**

7      The seminal case on exercising, or not exercising, jurisdiction over a federal declaratory

8  relief claim is *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942), where the Supreme

9  Court outlined three reasons a district court should not exercise jurisdiction.  The *Brillhart* decision

10  is discussed in *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991) provides:

11      First, the Court wanted to avoid having federal courts needlessly determine issues of state

12  law.  The Court recognized the difficulty federal district courts would have in ruling on complex

13  state law issues when it warned that "scattered opinions of an intermediate appellate court of a State

14  may convey only doubts and confusion to one inexpert in the law of that State and yet be entirely

15  clear and consistent when placed in the mosaic of the whole law of that State." *Brillhart* at 497.

16  Here, there is no issue of state law.

17      Second, there is a concern that parties could attempt to avoid state court proceedings by filing

18  declaratory relief actions in federal court.  This kind of forum shopping could be avoided by

19  requiring district courts to inquire into the availability of state court proceedings to resolve all issues

20  without federal intervention. *Brillhart* at 495.  Here, there is no state court proceeding.

21      Third, the Court no doubt wanted to avoid duplicate litigation.  As the Court noted,

22  "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation

23  should be avoided." *Brillhart* at 495.  Here, resolving the issue with one case is far more sensible

24  than what BOFA is recommending: that each taxpayer file individual actions each year against the

25  IRS.

26      When other claims are joined with an action for declaratory relief (e.g., bad faith, breach of

27  contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court

28  should not, as a general rule, remand or decline to entertain the claim for declaratory relief.

1   *Chamberlain,* 931 F.2d at 1367.  Because claims of bad faith, breach of contract, breach of fiduciary

2   duty and rescission provide an independent basis for federal diversity jurisdiction, the district court

3   is without discretion to remand or decline to entertain these causes of action.  Indeed, the district

4   court has a "virtually unflagging" obligation to exercise jurisdiction over these claims.  *First State*

5   *Ins. Co. v. Callan Assoc.,* 113 F.3d 161, 163 (9th Cir.1997).

6          With regard to the declaratory relief claim, this opposition incorporates the arguments set for

7   in Plaintiffs' Motion for a Speedy Hearing for Declaratory Relief set for the same date as this

8   motion.

9   **IX     BOFA'S ORIGINAL ISSUE DISCOUNT ("OID") ARGUMENT IS WRONG**

10         BOFA throws in a red herring attempting to have this Court believe that OID somehow

11  applies to Option ARM loans.  Debt instruments that increase in value at time of maturity are subject

12  to OID.  However, OID is inapplicable to Option ARM loans as there is no "redemption value" at

13  loan maturity.  Option ARMs are specifically designed to be adjusted periodically over the course of

14  the loan so that, at maturity, the amount of the debt instrument is zero.  There is no redemption

15  value.

16         Further, BOFA ignores plaintiff Gurevich and asserts (only as to plaintiff Horn) that he has

17  no standing because he has not suffered any injury as a result of BOFA's wrongful reporting

18  practices.

19         Despite what BOFA claims, there is no authority concerning OID that is cited by BOFA that

20  OID applies to Option ARMs.  Under Section 1273(a)(1), OID is the excess of the stated redemption

21  price at maturity (as defined in section 1273(a)(2)) of the indebtedness over its issue price.  In short,

22  OID is a type of interest that is paid at the commencement of the loan.  Points are the most common

23  form of OID.  In such cases, the stated redemption price of the loan is equal to the points plus

24  interest, where the issue price is simply the amount of the loan.  Deferred interest is not OID because

25  it is contingent and has nothing to do with the stated redemption price, or the issue price.  Payments

26  of OID thus must be reported by the lender, whether it is on student loans under Section 6050S or

27  mortgage loans under 6050H.  This is also consistent with the payment ordering rule found at 26

28  CFR § 1.1275-2 -- "except as provided in paragraph (a)(2) of this section [which is not applicable

here]. Each payment under a debt instrument is treated first as a payment of OID to the extent of the OID that has accrued as of the date the payment is due and has not been allocated to prior payments, and second as a payment of principal." Indeed, it is almost comical that BOFA is arguing that an alleged uncertainty existing in *2004* – when the student loan regulations were published – somehow justified its actions in 2009 in determining to *discontinue* reporting receipt of deferred mortgage interest payments. After all, the 2004 regulations held that deferred interest amounts *should be* reported on Form 1098-E. BOFA never provides any rationale to distinguish why in 2009 it suddenly violated the rule even it admits is analogous. Finally, even if BOFA is right that Horn can only deduct OID as it accrues because his is a rental property, this is no reason to dismiss him from this case. It is possible that at any time he could move into the property which would convert the property to "personal use property." The fact that plaintiff Gurevich and the tens of thousands, if not more, taxpayers similarly situated, that have been harmed by BOFS's deliberate violations of the law, is what is at issue. Whether or not "deferred interest" is OID, and whether Horn (a cash basis taxpayer) could properly deduct the amounts of deferred interest he paid, is not at issue. BOFA was under an obligation to *correctly* report the amount of mortgage interest (including any OID, if applicable) that he paid to BOFA in a given year. Because those amounts were under-reported, Horn and Gurevich must now incur accountancy fees to right BOFA's wrong.

Upon BOFA's issuing corrected 1098s, plaintiffs can then determine what portion of the correctly reported amounts represent payment of regular interest, what portion, if any, might be OID, and how to appropriately handle the deductions. But, without a corrected Form 1098, Horn and others similarly situated will not be able to do this.

## X.   CONCLUSION

The motion to dismiss or stay should be denied. Plaintiffs further request leave to amend to address any flaws in the First Amended Complaint.

Date: March 12, 2013                     MORRIS POLICH & PURDY LLP

                              By:   */s/ David J. Vendler*
                                    David J. Vendler

MICHAEL R. BROWN, APC
Michael R. Brown, Esq. (SBN 65324)
18101 Von Karman Avenue, Suite 1940
Irvine, California 92612
Tel.:    (949) 435-3888
Fax:    (949) 435 3801

LAW OFFICE OF JEFFREY D. POINDEXTER
Jeffrey D. Poindexter, Esq. (SBN 167854)
2580 Catamaran Way
Chula Vista, CA 91914
Tel.:    (619) 271-2382
Fax:    (619) 568-3801

Attorneys for Plaintiffs RICHARD M. HORN and
MARIA GUREVICH and all others similarly situated