1    MORRIS POLICH & PURDY LLP
     David J. Vendler, Esq. (SBN 146528)
2    dvendler@mpplaw.com
     1055 West Seventh Street, Suite 2400
3    Los Angeles, CA 90017
     Tel.:  (213) 417-5100 / Fax:     (213) 488-1178
4
     MICHAEL R. BROWN, APC
5    Michael R. Brown, Esq. (SBN 65324)
     mbrown@mrbapclaw.com
6    18101 Von Karman Avenue, Suite 1940
     Irvine, California 92612
7    Tel.:  (949) 435-3888 / Fax:     (949) 435 3801

8    LAW OFFICE OF JEFFREY D. POINDEXTER
     Jeffrey D. Poindexter, Esq. (SBN 167854)
9    Jeffrey@jdpoindexterlaw.com
     2534 State Street, Suite 306
10   San Diego, CA 92101
     Tel.:  (619) 271-2382 / Fax:     (619) 568-3801
11
     Attorneys for Plaintiffs RICHARD M. HORN,
12   and MARIA GUREVICH,
     and all others similarly situated
13

14              UNITED STATES DISTRICT COURT

15            SOUTHERN DISTRICT OF CALIFORNIA

16   RICHARD M. HORN, an individual       CASE NO.: 12 CV1718 CAB BLM
     and as Trustee of the Richard M.
17   Horn Trust Dated June 16, 2003,      **PLAINTIFFS' MEMORANDUM
              and Maria Gurevich, an      OF POINTS AND
18   individual, on behalf of themselves  AUTHORITIES IN SUPPORT
     and all others similarly situated,   OF MOTION FOR
19                                         PRELIMINARY APPROVAL
                   Plaintiff,              OF CLASS ACTION
20                                         SETTLEMENT;
     vs.                                   DECLARATIONS OF DAVID J.
21                                         VENDLER; MICHAEL
     BANK OF AMERICA, N.A., a             BROWN, JEFFREY
22   National Banking Association,         POINDEXTER; MARIA
                                           GUREVICH; RICHARD HORN
23                Defendant.               AND JOHN J. D'ANDREA,
                                           Ph.D.**

24                                         The Hon. Gonzalo P. Curiel
25
                                           Date:   January 10, 2014
26                                         Time:   1:30 p.m.
                                           Ctrm.:  "2D"
27

28                          1                          12cv-1718

1   MORRIS POLICH & PURDY LLP
    David J. Vendler, Esq. (SBN 146528)
2   dvendler@mpplaw.com
    1055 West Seventh Street, Suite 2400
3   Los Angeles, CA 90017
    Tel.:  (213) 417-5100 / Fax:    (213) 488-1178
4
    MICHAEL R. BROWN, APC
5   Michael R. Brown, Esq. (SBN 65324)
    mbrown@mrbapclaw.com
6   18101 Von Karman Avenue, Suite 1940
    Irvine, California 92612
7   Tel.:  (949) 435-3888 / Fax:    (949) 435 3801

8   LAW OFFICE OF JEFFREY D. POINDEXTER
    Jeffrey D. Poindexter, Esq. (SBN 167854)
9   Jeffrey@jdpoindexterlaw.com
    2534 State Street, Suite 306
10  San Diego, CA 92101
    Tel.:  (619) 271-2382 / Fax:    (619) 568-3801
11
    Attorneys for Plaintiffs RICHARD M. HORN,
12  and MARIA GUREVICH,
    and all others similarly situated
13

14              UNITED STATES DISTRICT COURT

15            SOUTHERN DISTRICT OF CALIFORNIA

16  RICHARD M. HORN, an individual        CASE NO.: 12 CV1718 CAB BLM
    and as Trustee of the Richard M.
17  Horn Trust Dated June 16, 2003,       PLAINTIFFS' MEMORANDUM
               and Maria Gurevich, an     OF POINTS AND
18  individual, on behalf of themselves   AUTHORITIES IN SUPPORT
    and all others similarly situated,    OF MOTION FOR
19                                         PRELIMINARY APPROVAL
                Plaintiff,                 OF CLASS ACTION
20                                         SETTLEMENT;
                                           DECLARATIONS OF DAVID J.
21  vs.                                    VENDLER; MICHAEL
                                           BROWN, JEFFREY
22  BANK OF AMERICA, N.A., a               POINDEXTER; MARIA
    National Banking Association,          GUREVICH; RICHARD HORN
23                                         AND JOHN J. D'ANDREA,
                Defendant.                 Ph.D.
24
                                           The Hon. Gonzalo P. Curiel
25
                                           Date:    January 10, 2014
26                                         Time:    1:30 p.m.
                                           Ctrm.:  "2D"
27

28                                    1                        12cv-1718

1  MORRIS POLICH & PURDY LLP
   David J. Vendler, Esq. (SBN 146528)
2  dvendler@mpplaw.com
   1055 West Seventh Street, Suite 2400
3  Los Angeles, CA 90017
   Tel.:  (213) 417-5100 / Fax:     (213) 488-1178
4
   MICHAEL R. BROWN, APC
5  Michael R. Brown, Esq. (SBN 65324)
   mbrown@mrbapclaw.com
6  18101 Von Karman Avenue, Suite 1940
   Irvine, California 92612
7  Tel.:  (949) 435-3888 / Fax:     (949) 435 3801

8  LAW OFFICE OF JEFFREY D. POINDEXTER
   Jeffrey D. Poindexter, Esq. (SBN 167854)
9  Jeffrey@jdpoindexterlaw.com
   2534 State Street, Suite 306
10 San Diego, CA 92101
   Tel.:  (619) 271-2382 / Fax:     (619) 568-3801
11
   Attorneys for Plaintiffs RICHARD M. HORN,
12 and MARIA GUREVICH,
   and all others similarly situated
13

14              **UNITED STATES DISTRICT COURT**

15             **SOUTHERN DISTRICT OF CALIFORNIA**

16 | RICHARD M. HORN, an individual | CASE NO.: 12 CV1718 CAB BLM |
   and as Trustee of the Richard M.
17 Horn Trust Dated June 16, 2003,      **PLAINTIFFS' MEMORANDUM**
            and Maria Gurevich, an       **OF POINTS AND**
18 individual, on behalf of themselves   **AUTHORITIES IN SUPPORT**
   and all others similarly situated,    **OF MOTION FOR**
19                                        **PRELIMINARY APPROVAL**
                Plaintiff,                **OF CLASS ACTION**
20                                        **SETTLEMENT;**
   vs.                                    **DECLARATIONS OF DAVID J.**
21                                        **VENDLER; MICHAEL**
   BANK OF AMERICA, N.A., a               **BROWN, JEFFREY**
22 National Banking Association,          **POINDEXTER; MARIA**
                                          **GUREVICH; RICHARD HORN**
23              Defendant.                **AND JOHN J. D'ANDREA,**
                                          **Ph.D.**
24
                                          The Hon. Gonzalo P. Curiel
25
                                          Date:    January 10, 2014
26                                        Time:    1:30 p.m.
                                          Ctrm.:   "2D"
27

28                                1                            12cv-1718

---

1  MORRIS POLICH & PURDY LLP
   David J. Vendler, Esq. (SBN 146528)
2  dvendler@mpplaw.com
   1055 West Seventh Street, Suite 2400
3  Los Angeles, CA 90017
   Tel.: (213) 417-5100 / Fax: (213) 488-1178
4
   MICHAEL R. BROWN, APC
5  Michael R. Brown, Esq. (SBN 65324)
   mbrown@mrbapclaw.com
6  18101 Von Karman Avenue, Suite 1940
   Irvine, California 92612
7  Tel.: (949) 435-3888 / Fax: (949) 435 3801
8  LAW OFFICE OF JEFFREY D. POINDEXTER
   Jeffrey D. Poindexter, Esq. (SBN 167854)
9  Jeffrey@jdpoindexterlaw.com
   2534 State Street, Suite 306
10 San Diego, CA 92101
   Tel.: (619) 271-2382 / Fax: (619) 568-3801
11
   Attorneys for Plaintiffs RICHARD M. HORN,
12 and MARIA GUREVICH,
   and all others similarly situated
13

14                    UNITED STATES DISTRICT COURT

15                  SOUTHERN DISTRICT OF CALIFORNIA

16 | RICHARD M. HORN, an individual        | CASE NO.: 12 CV1718 CAB BLM
   | and as Trustee of the Richard M.      |
17 | Horn Trust Dated June 16, 2003,       | **PLAINTIFFS' MEMORANDUM**
   |            and Maria Gurevich, an     | **OF POINTS AND**
18 | individual, on behalf of themselves   | **AUTHORITIES IN SUPPORT**
   | and all others similarly situated,    | **OF MOTION FOR**
19 |                                       | **PRELIMINARY APPROVAL**
   |            Plaintiff,                  | **OF CLASS ACTION**
20 |                                       | **SETTLEMENT;**
   | vs.                                   | **DECLARATIONS OF DAVID J.**
21 |                                       | **VENDLER; MICHAEL**
   | BANK OF AMERICA, N.A., a              | **BROWN, JEFFREY**
22 | National Banking Association,          | **POINDEXTER; MARIA**
   |                                       | **GUREVICH; RICHARD HORN**
23 |            Defendant.                  | **AND JOHN J. D'ANDREA,**
   |                                       | **Ph.D.**
24
                                            The Hon. Gonzalo P. Curiel
25
                                            Date:  January 10, 2014
26                                          Time:  1:30 p.m.
                                            Ctrm.: "2D"
27

28                                        1                            12cv-1718

---

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; DECLARATIONS OF DAVID J.
VENDLER; MICHAEL BROWN, JEFFREY POINDEXTER; MARIA GUREVICH; RICHARD HORN AND
JOHN J. D'ANDREA, Ph.D.

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................. 1

II.  PROCEDURAL HISTORY OF THE CASE ............................... 3

III. SUMMARY OF THE SETTLEMENT ...................................... 4

    A.  BANA Will Change Its Practices Henceforth ........................ 5

    B.  BANA Will Pay Qualifying Borrowers Damages for
       Tax-year 2009 ................................................................. 5

        i.   The Requirements To Qualify for the 2009 Prong
           of the Settlement Are Reasonable and Simple To
           Establish ............................................................ 5

        ii.  The Claim Form Is "User Friendly" To Enhance
           Response Rates. ................................................... 7

        iii. Plaintiffs Estimate That The Number Of Persons
           Excluded Will Be Small ....................................... 7

    C.  BANA Will Issue Amended Forms 1098 For Tax-Years
       2010-2012 and Provide $40 Per Amended Form 1098
       Issued ............................................................................ 9

    D.  Provisions For Payment And Administration ......................... 9

    E.  The Settlement Is Substantial And Highly Favorable To
       The Class ...................................................................... 10

    F.  BANA Will Pay Plaintiffs' Attorneys' Fees ....................... 11

G.   BANA Will Pay Class Representative Enhancements ................. 13

IV.  THE PROPOSED SETTLEMENT CLASSES SHOULD BE
    CERTIFIED .................................................................... 13

    A.  The Numerosity Requirement is Satisfied ......................... 14

    B.  The Commonality Requirement is Satisfied ....................... 14

    C.  The Typicality Requirement is Satisfied ........................... 15

    D.  The Adequacy Requirement is Satisfied ............................ 16

    E.  The Proposed Settlement Class for Tax-Year 2009 Meets
       the Requirements of Rule 23(b)(3) ................................... 16

        i.   Common Questions of Law and Fact Predominate ......... 17

ii.     Class Treatment is Superior.............................................18

F.   The Proposed Settlement Class for Tax-Year 2010, 2011,
     and 2012 Meets the Requirements of Rule 23(b)(2)...........................20

V.   THE COURT SHOULD PRELIMINARILY APPROVE THE
     PROPOSED SETTLEMENT..................................................................20

A.   The Circumstances Surrounding Negotiations and the
     Experience of Counsel ...................................................................22

B.   The Settlement Provides a Significant Benefit to the
     Class in Light of the Risks and Costs of Continued
     Litigation .......................................................................................23

VI.  THE PROPOSED FORM AND MANNER OF PROVIDING
     NOTICE TO THE CLASS COMPORT WITH RULE 23 AND
     DUE PROCESS ................................................................................24

VIII. CONCLUSION ..................................................................................26

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; DECLARATIONS OF DAVID J.
VENDLER; MICHAEL BROWN, JEFFREY POINDEXTER; MARIA GUREVICH; RICHARD HORN AND
JOHN J. D'ANDREA, Ph.D.

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Acosta v. Trans Union, LLC,*
  243 F.R.D. 383-84 (C.D. Cal. 2007) ................................................................ 15

*Alberto v. GMRI, Inc.,*
  252 F.R.D. 652, 658 (E.D. Cal. 2008) .............................................................. 22

*Amchem Products, Inc. v.Windsor,*
  521 U.S. 591 ............................................................................... 18, 19, 20

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975) ........................................................................... 19

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992) ......................................................................... 22

*Dukes v. Wal-Mart, Inc.,*
  509 F.3d 1168 (9th Cir. 2007) ......................................................................... 16

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) .............................................................................. 15, 25

*Fischer v. Kletz,*
  41 F.R.D. 377 (9th Cir. 1966) .......................................................................... 20

*Gunnells v. Healthplan Servs.,*
  348 F.3d 417 (4th Cir. 2003) ........................................................................... 19

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ....................................................... 15, 16, 17, 23

*In re Aremis Soft Corp. Sec. Litig.,*
  210 F.R.D. 109 (D.N.J. 2002) .......................................................................... 25

*In re Inter-Op Hip Prosthesis Liab. Litig.,*
  204 F.R.D. 359, 380 (N.D. Ohio 2001) ........................................................... 23

*In re Pac. Enters. Secs. Litig.,*
  47 F.3d 373 (9th Cir.1995) .............................................................................. 12

*In re Paxil Litigation,*
  212 F.R.D. 539 (C.D. Cal. 2003) ..................................................................... 17

*In re Tableware Antitrust Litig.,*
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................... 22, 23

*In re United Energy Corp. Solar Power Modules Tax Shelter Investors Securities
  Litig.,* 122 F.R.D. 251, 257 (C.D. Cal. 1988) ................................................. 17

3

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; DECLARATIONS OF DAVID J.
VENDLER; MICHAEL BROWN, JEFFREY POINDEXTER; MARIA GUREVICH; RICHARD HORN AND
JOHN J. D'ANDREA, Ph.D.

*Kristianson v. John Mullins & Sons, Inc.,*
  59 F.R.D. 99 (E.D.N.Y. 1973) ................................................................. 19

*Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
  244 F.3d 1152 (9th Cir. 2001) ................................................................ 20

*Mace v. Van Ru Credit Corp.,*
  109 F.3d 338 (7th Cir. 1997) ................................................................. 21

*Murillo v. Pac. Gas & Elec. Co.,*
  266 F.R.D. 468 (E.D. Cal. 2010) ............................................................ 23

*Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.),*
  516 F.3d 1095 (9th Cir. 2008) ............................................................... 23

*Polar Int'l Brokerage Corp. v. Reeve,*
  187 F.R.D. 108 (S.D.N.Y. 1999) ............................................................ 24

*S.C. Nat'l Bank v. Stone,*
  139 F.R.D. 335 (D.S.C. 1991) ................................................................ 23

*Van Bronkhorst v. Safeco Corp.,*
  529 F.2d 943 (9th Cir. 1976) ........................................................... 22, 23

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir.2002) ........................................................... 12, 13

*Wang v. Chinese Daily News,*
  231 F.R.D. 602 (C.D. Cal. 2005) ............................................................ 19

**Statutes**

26 U.S.C. § 163(h)(3)(B)(ii) ..................................................................... 7

26 U.S.C. § 163(h)(4)(A) ......................................................................... 6

26 U.S.C. § 1275(b)(2)(A)(i) .................................................................... 7

26 U.S.C. § 6050H ................................................................................. 1

26 U.S.C. § 6511 ........................................................................ 2, 4, 5, 11

**Other Authorities**

5 Moore's Federal Practice § 23.46[2][a] (1997) ....................................... 19

Newberg on Class Actions, §11:53, at 167 (4th Ed. 2002) ......................... 26

**Rules**

Fed. R. Civ. P. 23(a) ....................................................................... passim

Fed. R. Civ. P. 23 (a)(1) ........................................................................ 15

4                                                    12cv-1718

Fed. R. Civ. P. 23(a)(2)..................................................................................16

Fed R. Civ. P. 23(a)(3)..................................................................................16

Fed. R. Civ. P. 23 (a)(4)................................................................................17

Fed. R. Civ. P. 23(b).................................................................................passim

Fed. R. Civ. P. Rule 23(b)(2)..............................................................15, 21, 22

Fed. R. Civ. P. Rule 23(b)(3)........................................................................15

Fed. R. Civ. P. 23 (c)(2)(B).......................................................................5, 26

Fed. R. Civ. P. Rule 23(e)(1)......................................................................5, 26

**Regulations**

Treas. Reg. § 1.1273-1(b)...............................................................................7

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; DECLARATIONS OF DAVID J.
VENDLER; MICHAEL BROWN, JEFFREY POINDEXTER; MARIA GUREVICH; RICHARD HORN AND
JOHN J. D'ANDREA, Ph.D.**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

For almost all owners of real property, the mortgage interest deduction is their largest single tax deduction and amounts to thousands of dollars per year in tax savings.  One tool consumers (and the Internal Revenue Service ("IRS")) use to help determine the amount of mortgage interest borrowers have paid a lender during a given year (so as to calculate the amount they can deduct) is the "Form 1098" borrowers receive from their lender pursuant to 26 U.S.C. § 6050H, which generally requires lenders to report to the IRS (and to their borrowers) the amount of mortgage interest the lender has received.

Richard Horn and Maria Gurevich ("Plaintiffs"), two Bank of America, N.A. ("BANA") borrowers who had option adjustable rate mortgages ("Option ARMs"), brought this lawsuit, claiming that BANA improperly reported to them (and to the IRS) on Forms 1098 the amount of mortgage interest they paid BANA between 2009-2012.  Plaintiffs sought the following relief from BANA:

1. Beginning with tax-year 2013, plaintiffs sought to have the Bank change its corporate policy so as to include payments of previously deferred interest in its Form 1098 calculations.

2. For tax-years 2010-2012, plaintiffs sought to have the Bank issue corrected Forms 1098 to all affected Class Members including the amounts of previously deferred interest they paid during those years so Class Members could amend their tax returns, if appropriate, and receive the full tax benefit of the interest they paid during each of these years.

3. For tax-year 2009, plaintiffs sought to have BANA compensate Class Members for the value of lost interest deductions (since the statute of limitations expired for filing amended tax returns under 26 U.S.C. § 6511).

As will be shown, this settlement accomplishes all of these objectives and brings to the Class a settlement worth in excess of $150 million dollars in cash and tax benefits.

BANA is a leading national bank in the United States.   While BANA originated a small number of Option ARM loans on its own, the vast majority of its Option ARM portfolio was acquired when BANA purchased Countrywide Financial in 2008.   Option ARMs allow borrowers to pay less than they actually owe in interest during a given month, which amount is then added to the loan balance to be paid later.[1]  At various times, both plaintiffs took advantage of this minimum payment option and both plaintiffs, at other times, repaid some or all of the interest they had previously deferred.

Countrywide had reported payments of previously deferred interest on the Forms 1098 it issued.   In 2009, after BANA acquired Countrywide, BANA stopped doing so.   BANA did not provide notice of this change to any of its borrowers.   Plaintiff Richard Horn, a lawyer and resident of San Diego, filed this class action lawsuit in July 2012 because he noticed that the Forms 1098 he received from BANA from 2009 forward did not reflect the full amount of mortgage interest he paid during those years.   Plaintiff Maria Gurevich, a tax lawyer and Massachusetts resident, joined the lawsuit later for the same reason.

An example best makes the point about what plaintiffs allege BANA did wrong.   Assume "Susie Smith" had a $100,000 Option ARM where interest accrued at a rate of $1,000 per month, but where the "Minimum Payment" allowed was $750 per month.   In the first month, Susie chooses to pay the Minimum

---

[1] Option ARMs provided four different payment "options" the consumer could elect in any given month.  These included: (1) the full principal and interest due; (2) "Interest Only"; (3) a "Minimum Payment," which was often less than the interest due for the month; or (4) an accelerated payment based on a 15-year amortization schedule. Borrowers overwhelmingly chose the "Minimum Payment" option since the loans were marketed to allow consumers to minimize their monthly payment so they could "afford" to purchase a home based upon their available cash flow.

1  Payment of $750, thus deferring payment of $250 of interest until a later period.  In

2  month 2, Susie pays not only the full $1,000 in interest for that month but also pays

3  back the $250 she deferred in the first month.  According to BANA, when Susie

4  elected to defer the $250 in month 1, that amount became part of the principal

5  balance of her loan so that when it was subsequently repaid in month 2, it was no

6  longer interest and not reportable on Form 1098.  Plaintiffs contend that since the

7  $250 was interest when it was deferred, it remained so when it was repaid.

8      After more than one year of litigation, much briefing, and 3 full-day

9  mediation sessions before the Hon. Justice John A. Trotter (Ret.), the parties have

10  agreed to a settlement which they now present for preliminary approval.  The

11  parties' Settlement Agreement and Release is attached to the Vendler Declaration

12  as Exhibit "1".  It contains the following exhibits: Preliminary Approval Order

13  (Exhibit A); Class Notice (Exhibit B); Claim Form (Exhibit C); Summary   Notice

14  (Exhibit D); Final Approval Order (Exhibit E).   Filed separately are the parties'

15  Supplemental Agreement, Motion to Seal, and Motion to Seal Order.

16  **II.**   **PROCEDURAL HISTORY OF THE CASE**

17      Plaintiff Horn filed his complaint on July 11, 2012.  BANA filed a motion to

18  dismiss on September 5, 2012.  On November 20, 2012, Horn filed a motion to

19  amend his complaint to add plaintiff Gurevich as an additional class representative.

20  Plaintiffs and BANA then stipulated to allow the motion to amend and that BANA

21  would withdraw its then pending motion to dismiss in favor of a new one.  On

22  February 19, 2013, BANA filed its second motion to dismiss and plaintiffs

23  concurrently filed a motion for declaratory judgment and/or injunctive relief.  On

24  February 27, 2013, plaintiffs filed an Ex Parte Application to Hear Plaintiff's

25  Motion for Declaratory and Injunctive Relief Prior to May 10, 2013. BOFA

26  opposed plaintiffs' ex parte application.  On March 4, 2013, the court granted the

27  ex parte application setting the new hearing date for April 12, 2013. The parties

28

1  filed opposition briefs and reply briefs.  Settlement discussions started after both

2  motions were fully briefed.[2]

3      The parties' negotiations have been lengthy, spanning over the course of

4  nearly 9 months.  They included the mediation sessions previously mentioned, as

5  well as many "lawyer-to-lawyer" meetings as part of the mediation process.  There

6  were also substantial information exchanges between the parties, analysis of the

7  strengths and weaknesses of the opposing side's arguments, and lengthy settlement

8  briefing.  Careful consideration was also given by all parties to the potential impact

9  of the passage of time in the case because of the unmovable three-year limitation

10 for amending tax returns imposed by 26 U.S.C. § 6511.  Each passing year would

11 preclude Class Members from amending their tax returns to recover their lost

12 deductions from the IRS, and would thus leave BANA as the sole source for

13 recovering those funds.

14 **III.   SUMMARY OF THE SETTLEMENT**

15     The proposed settlement is designed to benefit the following nationwide

16 class identified in plaintiffs' first amended complaint:

17         All mortgagors of BANA or its predecessors-in-interest who made

18         payments of "deferred interest" to BANA on "Option Arm" loans
           secured by real property in the United States (or in its

19         protectorates/territories) which BANA did not report on the
           mortgagors' IRS 1098 form.[3]

20

21     The following summarizes the Settlement Agreement's key terms[4] which

22 provides three different prongs of benefits to the members of the class by tax-year.

23

24 [2] Both motions were set for hearing on November 8, 2013, but were taken off calendar by
   stipulation of the parties when the final terms of the proposed settlement were reached.

25 [3] There is no need to define the class by a particular time period since BANA did not

26 implement its policy of not reporting payments of deferred interest until 2009 and BANA
   has agreed to change its practices prospectively.

27 [4] The full details of the Settlement are contained in the Settlement Agreement and
   Release attached to the Vendler Decl. as Exhibit A.

28                                                    4                          12cv-1718

**A.   BANA Will Change Its Practices Henceforth**

The first prong consists of the injunctive relief sought by plaintiffs.  As set forth in the terms of the Settlement Agreement, commencing with tax-year 2013 and for future tax-years, BANA will include payments of previously deferred interest on the Forms 1098 it issues unless otherwise required by law.  Based on BANA's current loan portfolio, it is estimated that this prong of the settlement is worth $18,000,000. See Declaration of John D'Andrea at para. 13.

**B.   BANA Will Pay Qualifying Borrowers Damages for Tax-year 2009**

For the 132,213 Class Members who paid deferred interest to BANA in 2009, it is too late under 26 U.S.C. § 6511 to file amended returns to recover the deductions they lost for that year.   To compensate Class Members for the deductions they lost in 2009, BANA has agreed to pay qualifying Class Members, 75% of the estimated value of those deductions (at an assumed 20% tax rate).[5]

By way of example, if BANA's records evidence that Susie Smith paid $2,500.00 in deferred interest to BANA during 2009, her assumed loss (at a 20% tax rate) would be $500.00.  If her Claim Form demonstrates she qualifies, she will receive a check from BANA for 75% percent of this amount, or $375.00.  (This example roughly approximates the average individual recovery under this part of the settlement since BANA estimates that $2,523.00 is the average annual amount of unreported deferred interest paid by its borrowers.)[6]

**i.   The Requirements To Qualify for the 2009 Prong of the Settlement Are Reasonable and Simple To Establish**

To qualify for the 2009 payment prong of the settlement, Class Members must affirm on a very simple claim form that they meet criteria demonstrating they

---

[5] The 20% assumption is extremely generous, as the average tax rate as a percentage of AGI is 12.8 percent for tax-year 2009.  D'Andrea Decl., para. 9.

[6] To encourage people to participate and file a Claim Form, the likely average recovery amount of $375 is conspicuously included in the language of the class notice and claim form.

1    in fact suffered damages as a result of BANA's underreporting. These "filters"

2    generally relate to provisions of the Internal Revenue Code that could have

3    precluded Class Members from deducting their deferred interest payments even if

4    BANA had reported those payments on their Form 1098.

5        The first filter is based on 26 U.S.C. § 163(h)(4)(A), which limits the

6    mortgage interest deduction to interest paid on mortgages secured by a principal

7    residence or second home. Interest paid on other residences is not deductible, and

8    therefore Class Members could not have been hurt by its omission from a BANA-

9    issued Form 1098.

10       The second filter excludes Class Members whose loans were used to finance

11   an investment property. A disputed issue in this lawsuit is BANA's claim that

12   interest paid on investment properties is covered under the Original Issue Discount

13   ("OID") rules and is thus deductible *as it accrues*, not when it is paid.[7] Assuming

14   that accrual is the proper method for investment property owners to calculate their

15   interest deduction, they could not have suffered damages from any underreporting

16   of interest by BANA on Form 1098 because Forms 1098 reflect only the amount of

17   interest that is *paid* – as opposed to *accrued* – during a given year.

18       The third filter excludes Class Members who did not itemize their

19   deductions for 2009, or who did not rely on Form 1098 in calculating their

20   deductions. This is because the amount reported on Form 1098 is irrelevant to the

21   calculation of tax if the standard deduction is taken.[8]

22

---

23   [7] *See* 26 U.S.C. § 1275(b)(2)(A)(i) and Treas. Reg. § 1.1273-1(b). Plaintiffs believe that
     the OID rules were never intended to cover this situation. However, as demonstrated in
24   BANA's two motions to dismiss, the issue is hardly crystal clear. As part of achieving a
     settlement, plaintiffs conceded to allowing this filter.
25
     [8] Plaintiffs recognize that it is possible that some persons who did not itemize in 2009
26   *might* have done so if the correct (higher) amount of mortgage interest had been reported
     on their Form 1098. Ultimately, plaintiffs conceded to this filter because it would be too
27   speculative to try to segregate out such persons for inclusion into this aspect of the class
     recovery.

28                                             6                              12cv-1718

The fourth filter excludes Class Members who already independently calculated (and successfully claimed) the correct mortgage interest amount *in spite of the different amount reflected on their Form 1098.* There are probably no such persons since the IRS rejected Ms. Gurevich's attempt to do this. However, if such persons exist, they did not suffer damages from BANA's conduct.

The fifth filter is based on 26 U.S.C. §§ 163(h)(3)(B)(ii) and 163(h)(3)(C)(ii), which collectively restrict mortgage interest deductions to interest paid on $1 million of "acquisition indebtedness," and $100,000 of "home equity indebtedness." Class Members already deducting interest on indebtedness at or above these levels would not have been damaged by any underreporting of mortgage interest by BANA.

### ii. The Claim Form Is "User Friendly" To Enhance Response Rates.

Attached to the Settlement Agreement and Release as Exhibit C is the proposed Claim Form. Class Members only need to check 5 "yes"/"no" boxes and the form can be filled out in less than a minute. To further encourage participation, the notice and claim form both conspicuously state that the likely recovery for each class member will likely be in the hundreds, and perhaps even in the thousands of dollars.

### iii. Plaintiffs Estimate That The Number Of Persons Excluded Will Be Small

Overall, plaintiffs believe the number of Class Members that will be excluded from the 2009 recovery will be low. Option ARMs were primarily marketed to persons of moderate means and it is unlikely that such persons had loan balances of over $1,000,000 (or additional home equity indebtedness of over $100,000). It is also unlikely that many such persons had loans securing third or fourth homes. Indeed, that the average yearly amount of unreported deferred

interest is only $2,573 also supports the conclusion that few, if any, Class Members will surpass the $1,100,000 threshold or had mortgages on third or fourth vacation homes.

There will also likely be relatively few investment property owners in the class because Option ARMs came with substantially higher interest rates than traditional mortgages; thus, they were generally not marketed to owners of investment properties, but to "end-users" who anticipated potential cash-flow difficulties.

The number of persons who (1) independently calculated the amount of deferred interest they paid and then (2) prevailed with the IRS in accepting that amount will likely be zero. Plaintiff Gurevich's attempt to do exactly this was rejected by the IRS. The IRS told her she would need a revised Form 1098 from BANA before her amended return could be accepted. Gurevich Decl., para. 3.

Finally, while there will be some borrowers who did not itemize, the vast majority will have done so. For 2009, the standard deduction for an individual was only $5,700 and for a married couple filing jointly was $11,400. Thus, even without regard to any payments of deferred interest, a modest monthly mortgage balance tips the scales to where itemization would be advantageous.

BANA estimates that the average amount of yearly deferred interest that it failed to report in 2009 was $2,523. Applying the 20% tax rate agreed upon for settlement purposes and the 25% settlement discount, the 2009 prong of the settlement is worth $50,036,009.85.   Assuming 10% of the 132,213 Class Members are excluded because of the filters, this prong of the settlement is still worth in excess of $45,000,000. See also D'Andrea Dec., para. 13.

It is of course impossible to determine in advance how many qualified Class Members will participate, but because there is good data available for contacting

1   the class, and a relatively large potential recovery, (with minimal effort), plaintiffs

2   are confident that participation will be robust.

3   **C.    BANA Will Issue Amended Forms 1098 For Tax-Years 2010-**

4   **2012 and Provide $40 Per Amended Form 1098 Issued**

5   There is still time for Class Members to file amended returns for tax-years

6   2010-2012 and thus recover the deductions they lost from the IRS.  Accordingly,

7   BANA will file amended Forms 1098 for tax-years 2010-2012 reporting class

8   members' payments of deferred interest in those years.  It is expected that BANA

9   will file approximately 203,825 separate and individual amended Forms 1098.  To

10  help defray the cost of tax preparation fees, BANA will also provide Class

11  Members with a check for $40 per amended Form 1098 that they receive.

12  Using the agreed-upon tax rate of 20%, and accepting that the average

13  amount of interest BANA did not report per borrower per year between 2010 and

14  2012 is $2,573, the value of this prong of the settlement is $105,000,000 in tax

15  savings to class members. (This does not include the value of the $40 payments per

16  amended Form 1098, which alone is in excess of $8,000,000.)  See also D'Andrea

17  Dec., para. 13.

18  **D.    Provisions For Payment And Administration**

19  The Garden City Group ("GCG"), acting as settlement administrator, will

20  work in cooperation with BANA to notify the class and assure BANA's

21  performance.  GCG will also "qualify" Class Members who submit Claim Forms

22  for the 2009 part of the settlement and will coordinate with BANA to assure

23  payment to all qualifying Class Members.  BANA will be responsible for GCG's

24  costs, as well as costs for class notice.

25

26

27

28

9                                    12cv-1718

**E.     The Settlement Is Substantial And Highly Favorable To The Class**

When plaintiff Horn initiated this case, BANA denied all liability and filed a motion to dismiss claiming the case had no merit.  When Ms. Gurevich entered the case, BANA filed a new motion to dismiss, again claiming that plaintiffs' case lacked merit.  When plaintiffs later asked BANA in the fall of 2012 to change its practice for the Forms 1098 it was going to issue in January 2013 for tax-year 2012, BANA refused and repeated its same reporting practice.  Plaintiffs then filed their motion for declaratory judgment and/or injunctive relief, which resulted in the parties entering serious settlement negotiations and, ultimately, a settlement that is highly favorable to Class Members.

For future tax-years, and as set forth in the terms of the Settlement Agreement and Release, plaintiffs achieved everything they sought to achieve in their complaint, as BANA will now report payments of deferred interest on Form 1098 consistent with the terms of the Settlement Agreement.

For tax-year 2009, anyone who actually suffered damages resulting from BANA not reporting deferred interest can recover, *at minimum*, 75% of their losses.  (Because the assumed 20% tax rate is much higher than is in fact the national average, many Class Members will likely receive more under the settlement than they would have received if BANA had reported the deferred interest on their Form 1098 in the first place).[9]

For tax-years 2010-2012, plaintiffs' efforts resulted in the class being able to now claim *100 percent* of their losses from the IRS by having BANA issue amended Forms 1098 for those years. The (relative) speed with which the settlement was achieved was also highly beneficial to the Class Members.  Because

---

[9] This generous 20% assumption accounts for plaintiffs' willingness in negotiations to give up pre-judgment interest and the potential value of any state tax savings.

of the three-year statute of limitations for filing amended tax returns – 26 U.S.C. § 6511 – delays in concluding this case would have resulted in losing the potential to recover any lost deductions from the IRS.  This would have made resolution of the case substantially more difficult since funds to recompense Class Members for such years would have had to come from BANA.  Very likely, the result would have then included a "settlement discount" as opposed to the 100% recovery the class can now obtain.

## F.   BANA Will Pay Plaintiffs' Attorneys' Fees

Subject to the approval of the Court, Plaintiffs have agreed to accept, and BANA has agreed to pay, attorneys' fees in the amount of $10,500,000.  This fee was only negotiated (with the assistance of Justice Trotter) after the settlement terms were negotiated.  See Vendler, Gurevich & Horn Decls.  The Ninth Circuit has stated that a "reasonable" attorney fee in a common fund class action is dependent upon "all the circumstances of the case," with the benchmark being 25%, and 33% being the (apparent) maximum.  See *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir.2002) and *In re Pac. Enters. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir.1995).

As part of the final approval process, plaintiffs' counsel will file their motion for legal fees.  That motion will more fully explain their position on why the requested fee is reasonable.  But for purposes of preliminary approval, there are several circumstances that make the proposed fee fit within range of reasonableness.

Foremost among these is that plaintiffs' counsel achieved a truly extraordinary result.  Prior to this case being filed, *and even after*, there were no others willing to take the risk plaintiffs' counsel took in taking on a major bank like BANA in a class action based on a legal issue where case-authority is sparse.  As noted, BANA initially claimed plaintiffs' case had no merit and then, even as

11

12cv-1718

late as December 2012 rebuffed plaintiffs' counsels' entreaties to change its reporting practices.

Through the motion to dismiss and settlement briefing, and with the aid of Justice Trotter, plaintiffs' counsel convinced BANA to change its reporting practices prospectively, and also to pay 75% of the approximate damages incurred by more than 132,000 Class Members in 2009. Plaintiff also convinced BANA to issue more than 203,000 revised Forms 1098 for tax-years 2010-2012 with an additional cash payment of $40 per each return to help defray the borrowers' costs of amending their returns.

The relative speed with which plaintiffs were able to achieve this settlement also supports the fee award. The 3-year statute of limitations was looming and the class likely would have gotten much less if the case had been litigated much more.

The amount of the fee is also going to be much less than the benchmark 25% of the value of the settlement. Although BANA has agreed to pay millions of dollars directly to the Class Members, the largest component of the settlement is the value to the class of the revised tax deduction Class Members will receive by virtue of the amended Forms 1098. With the amended Forms 1098, the class will be able recover *all* of their lost tax deductions.

*Vizcaino* makes clear that where counsel's performance generates benefits beyond a purely cash settlement, those are entitled to be valued for purposes of establishing the legal fee. *Id.* at 1049 (As a result of settlement, Microsoft hired roughly 3000 Class Members as regular employees and changed its personnel classification practices resulting in a benefit of $101.48 million). Although it will never be possible to know exactly how much Class Members will receive from the IRS in allowable deductions, it is estimated to be $104,888,345 (based on 203,825 affected Forms 1098, an average underreporting of [$2,573], and a 20% tax-rate).

There is also the additional value to the Class Members who still have their BANA loans from the prospective injunctive relief.  As of the end of 2012, there were over 123,000 such loans still in existence.  Based on the Bank's historical deferred interest payment data, it is estimated that the value to the class arising from BANA's now changed policy will be an additional $18,000,000.  See D'Andrea Dec., para. 13.

In addition to the tax benefits to the class from the amended Forms 1098 and injunctive relief, the settlement also provides for millions of dollars in cash payments from BANA directly to the class.  For tax-year 2009, BANA has agreed to pay a maximum of over $50 million dollars in damages.  While clearly not all Class Members will elect to participate in this prong of the settlement, and while a small percentage of the class may not qualify, enthusiastic participation is expected since the claim form is extremely simple and prominently announces that the average class member recovery will be almost $375.00.  Given all of these "considerations," the $10.5 million dollar fee agreed to be paid by BANA is well within the bounds of being "reasonable."[10]

### G.   BANA Will Pay Class Representative Enhancements

The settlement provides that BANA will pay $25,000 to each of the two lawyer class representatives for their extensive contributions to the case.

### IV.   THE PROPOSED SETTLEMENT CLASSES SHOULD BE CERTIFIED

It has long been recognized that class actions may be certified for the purpose of settlement. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-

---

[10] The negotiations regarding the settlement for Class Members were entirely concluded before there was any discussion about the amount of the plaintiffs' attorneys' fees. Further, the amount of the fee will have no bearing whatsoever on the class's ultimate recovery.  See Vendler, Horn and Gurevich Decls.  The Settlement Agreement and Release is also not conditioned on the award of attorneys' fees or plaintiff enhancement payments.

1020 (9th Cir. 1998); *Acosta v. Trans Union, LLC*, 243 F.R.D. 383-84 (C.D. Cal. 2007) (discussing requirements of conditional class certification for settlement purposes).  At this stage, a court does not delve into the merits of the plaintiff's claim:  "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  A court may certify a class when the plaintiff demonstrates that the proposed class and class representatives meet Rule 23(a)'s prerequisites: (1) numerosity; (2) common questions of fact or law; (3) the claims or defense of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).  After meeting these requirements, the class must satisfy one of the three subsections of Rule 23(b).  *See* Fed. R. Civ. P. 23(b).  Plaintiffs and their counsel respectfully submit that the BANA Settlement Class satisfies each of the requirements of Rule 23(a), and that the Settlement Class for tax-year 2009 shares common questions of law and fact in accordance with Rule 23(b)(3), and that the Settlement Class for tax-years 2010, 2011, and 2012 meet the requirements of Rule 23(b)(2).

### A.   The Numerosity Requirement is Satisfied

Rule 23(a)(1) requires that the class be "so numerous that joinder of all Class Members is impracticable." *See* Fed. R. Civ. P. 23 (a)(1).  In this case, each of the Settlement Classes is estimated to be well over a hundred thousand geographically dispersed persons making joinder impracticable by any standard.

### B.   The Commonality Requirement is Satisfied

Rule 23(a)(2) is satisfied where the proposed class representatives share at least one question of fact or law with the claims of the prospective class.  *See* Fed. R. Civ. P. 23(a)(2).  "Rule 23(a)(2) has been construed permissively. All questions

1    of fact and law need not be common to satisfy the rule.   The existence of shared
2    legal issues with divergent factual predicates is sufficient, as is a common core of
3    salient facts coupled with disparate legal remedies within the class." *Dukes v. Wal-*
4    *Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007) (quoting *Hanlon v. Chrysler*
5    *Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

6         The claims against BANA all derive from BANA's not including payments
7    of previously deferred interest on borrower Forms 1098.   The legal questions
8    affecting the class are also identical, the principal ones being: (1) whether
9    repayments of previously deferred interest is "mortgage interest" that should have
10   been included on the Forms 1098 BANA sent to Class Members under 26 U.S.C.
11   § 6050H and (2) whether BANA had any legal obligations to provide notice to
12   borrowers when BANA in 2009 no longer reported payments of deferred interest
13   on Forms 1098.   Accordingly, the commonality requirement of Rule 23(a)(2) is
14   satisfied.

15        **C.    The Typicality Requirement is Satisfied**

16        Rule 23(a)(3)'s typicality requirement demands that "the claims or defenses
17   of the representative parties are typical of the claims or defenses of the class."   Fed
18   R. Civ. P. 23(a)(3).   "'[R]epresentative claims are 'typical' if they are reasonably
19   co-extensive with those of absent Class Members; they need not be substantially
20   identical.'"   *In re Paxil Litigation*, 212 F.R.D 539, 549 (C.D. Cal. 2003) (quoting
21   *Hanlon*, 150 F.3d at 1020).   "The class representative must be able to pursue his or
22   her claims under the same legal or remedial theories as the represented Class
23   Members."

24        Here, Named Representatives and each proposed class member were all
25   subjected to the same wrongful conduct by BANA and the theory for imposing
26   liability on BANA is identical across the class.   The same evidence that would be

27

28
                                             15                          12cv-1718

1  used to prove the Named Representatives' claims would be the same for the entire

2  class.  As such, the Named Representatives' claims are "typical."

3      **D.**    **The Adequacy Requirement is Satisfied**

4      The Class Representatives must satisfy Rule 23(a)(4)'s adequacy

5  requirement by showing that they will fairly and adequately protect the interests of

6  the Settlement Class.  *See* Fed R. Civ. P. 23 (a)(4).  The adequacy requirement has

7  two prongs:  "(1) That the representative parties' attorneys be experienced and

8  generally able to conduct the litigation; and (2) that the suit not be collusive and

9  plaintiff's interests not be antagonistic to the class."  *In re United Energy Corp.*

10  *Solar Power Modules Tax Shelter Investors Securities Litig.*, 122 F.R.D. 251, 257

11  (C.D. Cal. 1988).  The Named Representatives have the same interests as the

12  proposed class; they all have been harmed by the same business practice.  The

13  Named Representatives have no conflict with the class and have actively

14  monitored the progress of this litigation to see that their injuries, as shared with the

15  proposed Settlement Classes, are remedied.

16      Plaintiffs have retained experienced counsel.  The multi-million dollar

17  settlement obtained for the class is concrete evidence that they, and their counsel,

18  have been acting vigorously to fairly and adequately represent the settlement

19  classes interests as a whole.  Further, class counsel has significant combined class

20  action experience.  *See* Vendler, Brown and Poindexter Decls.  The Named

21  Representatives, and their counsel, thus clearly meet the adequacy requirement.

22      **E.**    **The Proposed Settlement Class for Tax-Year 2009 Meets the**

23             **Requirements of Rule 23(b)(3)**

24      "To qualify for certification under Rule 23(b)(3), a class must meet two

25  requirements beyond the Rule 23(a) prerequisites:  "Common questions must

26  'predominate over any questions affecting only individual members'; and class

27  resolution must be 'superior to other available methods for the fair and efficient

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; DECLARATIONS OF DAVID J.
VENDLER; MICHAEL BROWN, JEFFREY POINDEXTER; MARIA GUREVICH; RICHARD HORN AND
JOHN J. D'ANDREA, Ph.D.

1  adjudication of the controversy.'"  *Amchem Products, Inc. v. Windsor*, 521 U.S.

2  591.

3  > In adding 'predominance' and 'superiority' to the qualification-for-
certification list, the Advisory Committee sought to cover cases 'in
4  > which a class action would achieve economies of time, effort, and
expense, and promote . . . uniformity of decision as to persons
5  > similarly situated, without sacrificing procedural fairness or bringing
about other undesirable results.'

6

7  *Amchem*, at 615 (quoting Advisory Committee's Notes on Fed. Rules Civ. Proc. 23,

8  28 U.S.C. App., pp. 696-697). While this test has been held to be more demanding

9  than 23(a)'s simple commonality requirement, its thrust is equally pragmatic:

10  "[T]he Advisory Committee had dominantly in mind vindication of 'the rights of

11  groups of people who individually would be without effective strength to bring

12  their opponents into court at all.'"  *Amchem*, 521 U.S. at 617.  Here, the individual

13  claims are relatively small.  Further, although BANA began its practice of not

14  including deferred interest in the Forms 1098 it issued in 2009, no other case has

15  been filed challenging the practice.  There is thus no question that but for this

16  action, no relief would have been obtained for any of the Class Members.

17  ### i.  Common Questions of Law and Fact Predominate

18  "Rule 23 (b)(3) does not require that all members of the class be identically

19  situated[.]"  *Kristianson v. John Mullins & Sons, Inc.*, 59 F.R.D. 99, 106 (E.D.N.Y.

20  1973).  The predominance prong calls for class "'cohesion [such that] prosecution

21  of the action through representatives would be quite unobjectionable[.]'"  *Amchem*,

22  521 U.S. at 616.  Here, as already discussed, the proposed settlement class is

23  defined by common factual predicates.  Members of the proposed class: (1) paid

24  interest they had previously deferred between 2009 and 2012 and (2) BANA did

25  not include those amounts on the Forms 1098 it issued for those years.  As to each

26  member of the class the central legal issues are also the same – (1) whether their

27  payments constituted payments of "mortgage interest" under 26 U.S.C. § 6050H

28

that should have been reported by BANA and (2) whether BANA had any legal obligation to provide notice to borrowers when BANA in 2009 no longer reported payments of deferred interest on Forms 1098. *Wang v. Chinese Daily News*, 231 F.R.D. 602, 613 (C.D. Cal. 2005) (finding class certification appropriate where questions of law and fact revolved around defendant's conduct); *see also Gunnells v. Healthplan Servs.*, 348 F.3d 417, 428 (4th Cir. 2003) ("[I]f 'common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23 (b)(3) to be satisfied'" (quoting 5 Moore's Federal Practice § 23.46[2][a] (1997)).

Indeed, the only real distinction between the claims of the various Class Members is the amount of deferred interest they paid; but such differences do not defeat class action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) (conditional certification was appropriate where damage amounts varied amongst proposed Class Members). It is BANA's conduct in changing its policy without notice to its borrowers in 2009 that remains the focal point. Thus, common questions of law and fact necessarily predominate and warrant class treatment. *See, e.g., Fischer v. Kletz*, 41 F.R.D. 377, 381-82 (9th Cir. 1966) (common reliance on Defendant's misrepresentations warranted class action suit).

### ii.   Class Treatment is Superior

There can be no question that class resolution is "superior" in this case. *See Amchem*, 521 U.S. at 615 ("Rule 23 (b)(3) permits certification where class suit 'may . . . be convenient and desirable.'" (internal citations omitted)). Rule 23(b)(3) incorporates a non-exhaustive list of factors to consider when determining a class action's "superiority":

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D)

the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).   The Supreme Court has emphasized individual accessibility to the judiciary when evaluating Rule 23(b)(3)'s superiority requirement: "'The interest [in individual control] can be high where the stake of each member bulks large and his will and ability to take care of himself are strong; the interest may be no more than theoretic where the individual stake is so small as to make a separate action impracticable.'" *Amchem*, 521 U.S. at 616; *see also Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("When common issues present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than an individual basis." "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.   A class action solves this problem[.]" *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Here, most Class Members do not even know they have been wronged. This is both because BANA implemented its 2009 policy change without  notice to its borrowers, and because members of the public generally trust the accuracy of the Forms 1098 they receive from their lenders and do not go back to try to independently verify the amounts of interest (as opposed to principal) they paid during a given year.   But even if Class Members did know of their claims, the individual claims are relatively small.   Even assuming a generous 20% tax rate, the average lost deduction is just over $500.00 based on the $2,573 average annual deferred interest payment – not enough to warrant individual litigation.   Nor, given the amounts at issue, would any of the Class Members have a substantial interest in

1  controlling this litigation.  The alternative to a class action would be no recovery at

2  all.  Class treatment is thus "superior" because it expedites resolution of Class

3  Members's claims.

F.  **The Proposed Settlement Class for Tax-Year 2010, 2011, and 2012**

**Meets the Requirements of Rule 23(b)(2)**

6  The analysis of Rule 23(b)(2) substantially overlaps with the factors in Rule

7  23(a).  Rule 23(b)(2) requires that "the party opposing the class has acted or

8  refused to act on grounds that apply generally to the class, so that final injunctive

9  relief or corresponding declaratory relief is appropriate respecting the class as a

10  whole." Fed.R.Civ.P. 23(b)(2).  Here, plaintiff alleges an overarching policy that

11  was implemented by BANA that applies to all class members.  Specifically, its

12  decision in 2009 to cease reporting payments of deferred interest on Form 1098s it

13  was issuing to borrowers. The injunctive relief accomplished by this settlement

14  applies to the class as a whole and does not entitle either any named or unnamed

15  class members to any form of individualized injunctive relief.  Thus, all of the

16  requirements for certification of an injunctive class under Fed.R.Civ.P. 23(b)(2)

17  are met.

V.  **THE COURT SHOULD PRELIMINARILY APPROVE THE**

**PROPOSED SETTLEMENT**

20  After certifying the settlement classes, the Court should preliminarily

21  approve the settlement.  Review of a proposed class action settlement requires a

22  well-established two-step process.  The first step, the preliminary, pre-notification

23  hearing determines whether the settlement is "within the range of possible

24  approval." *See, e.g., In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079

25  (N.D. Cal. 2007).  This inquiry takes place with a presumption favoring settlement.

26  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class*

27  *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)); *see also Van*

28

1   *Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("overriding public

2   interest in settling and quieting litigation," especially in class actions).

> This policy is also evident in the Federal Rules of Civil Procedure and the Local Rules of the United States District Court, Central District of California, which encourage the settlement of cases. See Fed. R. Civ. P. 16(a)(5) (one of the five purposes of a pretrial conference is to facilitate settlement); L.R. 16-2.9 (requiring parties to exhaust all possibilities of settlement); L.R. 16-15 to 15.9 (setting forth policies and procedures for settlement including encouraging disposition of civil litigation by settlement by any reasonable means) [sic].

8   *Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.)*, 516 F.3d 1095,

9   1101 (9th Cir. 2008). The issue of whether a proposed settlement should be granted

10  approval is a matter within the sound discretion of the district court, and should be

11  exercised with reference to overriding policy considerations. *See, e.g., Murillo v.*

12  *Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010); *Van Bronkhorst v.*

13  *Safeco Corp.*, 529 F.2d 943, 951 (9th Cir. 1976).

> [The] preliminary determination establishes an initial presumption of fairness[;]' . . . '[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the Class Members of a formal fairness hearing[.]'

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (internal citations

omitted); *see also Hanlon*, 150 F.3d at 1027 (The court should give "proper

deference to the private consensual decision of the parties."); *In re Inter-Op Hip*

*Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) (presumption of

fairness when a settlement is negotiated at arms' length by experienced counsel).

There is no question that the proposed settlement is at least "within the range

of possible approval." Only after extended briefing, three formal mediation

sessions spread over the better part of a year before the Honorable Justice John

Trotter (ret.), and information sharing between the parties in connection with the

mediation, were the parties able to reach an agreement. *See S.C. Nat'l Bank v.*

21                                                                    12cv-1718

1  *Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) ("giv[ing] significant weight to the

2  judgment of class counsel" where settlement negotiations were found to be "hard

3  fought and always adversarial" and there was "no indication of any collusion.")

4      The settlement offers very real and substantial benefits for the class and

5  eliminates the risk of losing the case at trial.  Because of this settlement, Class

6  Members can recover or deduct – the former from BANA or the latter with the IRS

7  – virtually the entire amount of any deductions they did not take in all of the four

8  (4) years BANA did not report payments of deferred interest.  The settlement also

9  precludes the possibility of any future losses for those still with BANA loans.

10  Finally, the settlement eliminates the additional risk that Class Members would

11  lose the opportunity to claim interest deductions for 2010 - 2012 because of the

12  three year limitation for filing amended returns.

13  **A.    The Circumstances Surrounding Negotiations and the Experience**

14  **of Counsel**

15      Prior to entering the proposed settlement, the parties engaged "in sufficient

16  investigation of the facts to enable the court to 'intelligently make … an appraisal'

17  of the settlement." *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 114

18  (S.D.N.Y. 1999) (internal quotations omitted).  As detailed above, prior to reaching

19  an agreement, the parties exchanged significant information in connection with

20  mediation.  The settlement negotiations were hard fought, and involved many

21  contested issues, including liability and damages.   At all times, the parties

22  zealously advocated their positions and were clearly informed of the strengths and

23  weaknesses of the claims, both factually and legally.  The parties then used this

24  knowledge to engage in a complex negotiation process.  The parties retained one of

25  the most respected mediators in the United States, the Hon. John A. Trotter.  Given

26  the uncertainties, risks and significant expense of continued litigation, both parties

27  decided that settling the litigation based on the terms of the proposed settlement

28

1   was in their best interests.  Therefore, all of the circumstances surrounding the

2   negotiations strongly support preliminary approval.

3   **B.      The Settlement Provides a Significant Benefit to the Class in Light**

4   **of the Risks and Costs of Continued Litigation**

5   The preliminary approval inquiry can be summarized as raising the question

6   of whether the class's interests are better served by settlement than further

7   litigation. *See Eisen*, 417 U.S. at 178.  This is not a close call.  The consideration

8   here being proposed is very real and will definitely provide millions and possibly

9   more than a hundred million dollars directly into class member pockets.  While the

10  parties each believe that their respective positions would be vindicated if the matter

11  went to verdict, litigation is never free from risk and uncertainty and success

12  cannot be assured. *See In re Aremis Soft Corp. Sec. Litig.*, 210 F.R.D. 109, 125

13  (D.N.J. 2002) ("Regardless of the strength of case counsel might present at trial,

14  victory in litigation is never guaranteed.").  The theory against BANA advanced by

15  plaintiffs was novel.  Indeed, it has never even been attempted before in any case

16  nation-wide.  Thus, while plaintiffs believe in the legal correctness of their cause,

17  they also owe Class Members the duty to properly weigh the risks, especially when

18  presented with a settlement that offers as much as this one does.

19  Continued litigation would only delay recovery.  And, because of the statute

20  of limitations for filing amended returns, delay is not good for the class.  Also, as

21  time passes, the number of Class Members that would actually be able to

22  participate decreases both because of death and the loss of valid addresses as

23  people move.  Finally, because of the nature of the loans involved, it can be

24  presumed the settlement class is composed primarily of financially strapped

25  borrowers to whom a settlement now will be a real boon.

26  In consideration of all the facts, the relative strengths and weaknesses of the

27  legal claims and defenses asserted, the serious issues and disputes remaining

28

23                                                    12cv-1718

1    among the parties, and the time and expense necessary to prosecute this case, the

2    settling parties and their counsel believe that the proposed settlement is fair,

3    adequate and reasonable and warrants preliminary approval.

4    **VI.    THE PROPOSED FORM AND MANNER OF PROVIDING NOTICE**

5    **TO THE CLASS COMPORT WITH RULE 23 AND DUE PROCESS**

6    Rule 23 (c)(2)(B) provides that "for any class certified under Rule 23(b)(3),

7    the court must direct to Class Members the best notice practicable under the

8    circumstances, including individual notice to all members who can be identified

9    through reasonable effort." Fed. R. Civ. P. 23 (c)(2)(B). Rule 23(e)(1) similarly

10   states, "The court must direct notice in a reasonable manner to all Class Members

11   who would be bound by a proposed settlement, voluntary dismissal, or

12   compromise." Fed. R. Civ. P. 23(e)(1). Notice is "adequate if it may be

13   understood by the average class member." Newberg on Class Actions, §11:53, at

14   167 (4th Ed. 2002).

15   The proposed settlement provides for a notice campaign reasonably tailored

16   to the unique and particular circumstances of this case. Because of the nature of

17   this case -- dealing with home mortgages -- notice by way of first class mail is the

18   primary form of notice. GCG's address will be listed as the return addressee on

19   the envelope of the notice packages to allow it to conduct skip traces on returned

20   mail.

21   The class notice package to the settlement class for tax-year 2009 will

22   consist of a Class Notice and a Claim Form. The class notice package to the

23   settlement class for tax-years 2010 to 2012 will receive the Class Notice, as the

24   Claim Form is not relevant to these class members who can still seek to amend

25   their tax returns. The Class Notice will contain the information required by Rule

26   23 in plain language and in an easy-to-follow format, as well as directions to both a

27

28
                                          24                        12cv-1718

website address (where claimants can obtain additional information about the case,) and a toll-free telephone number where Class Members can direct questions.

The settling parties propose to provide notice to the Settlement Class Members as soon as practicable, but in no event later than one week after the Class Notice List is provided to the claims administrator. The Class Notice List will be provided within two business days following receipt of notice of the entry of the Preliminary Approval Order.

Before mailing the Class Notice, the Claims Administrator shall check the addresses in the Class Notice List by using the most recent version of USPS software, National Change of Address ("NCOA") searches, or both. If the address in the USPS or NCOA records for a Class Member differs from either the last known address or the address of the mortgaged property in the Class Notice List, the Claims Administrator shall mail the Class Notice to the last known address in the Class Notice List, the address of the mortgage property, and the address in the USPS or NCOA records.

If a Class Notice Mailing is returned to the Claims Administrator because the Class Member's address is no longer valid and the envelope contains a forwarding address, the Claims Administrator shall send the Class Notice Mailing to the forwarding address within 7 calendar days of receiving the undeliverable mail. If a Class Notice Mailing is returned to the Claims Administrator at least 14 calendar days prior to the Opt-Out Deadline because the Class Member's address is no longer valid and the envelope does not contain a forwarding address, the Claims Administrator shall perform a standard skip trace within 3 calendar days to ascertain the Class Member's new mailing address. If a new mailing address is obtained, the Claims Administrator shall send the Class Notice Mailing to the Class Member at the new address within 3 calendar days of learning of the new mailing address.

The parties have also agreed as part of the settlement that a quarter page summary notice will be published in Accounting Today on two occasions.

## VIII. CONCLUSION

For the foregoing reasons, plaintiffs and BANA respectfully request that the Court: (1) grant preliminary approval of the settlement on the terms outlined above and in the Settlement Agreement and Release, (2) order certification of the settlement classes for settlement purposes pursuant to Fed. R. Civ. P. 23 (b)(2), (3), (3) approve the  Named Representatives as class representatives and their attorneys as class counsel, (4) approve the form and content of the Class Notice and Claim Form , (5) establish a deadline for Class Members to opt out or object, and (6) set a date for a hearing on final approval of the settlement as reflected in the Settlement Agreement and Release.

For the convenience of the Court, Plaintiffs summarize the proposed schedule leading up to the Final Approval Order and Judgment.

| Event | Governing Section | Date |
|---|---|---|
| Plaintiffs file motion seeking Preliminary Approval Hearing and entry of Preliminary Approval Order. | Section 4.01 | December 13, 2013 |
| Preliminary Approval Hearing. | Section 4.01 | Subject to Court availability, no later than January 10, 2014. (Parties may seek a hearing on shortened time for December 20, 2013, as necessary.) |

| Event | Governing Section | Date |
|---|---|---|
| BANA Provides Class Notice List to Claims Administrator. | Section 4.02(a) | No later than 2 business days after entry of the Preliminary Approval Order |
| Claims Administrator Mails the Class Notice Mailing. | Section 4.02 | No later than 1 week after receiving the Class Notice List |
| Objection Deadline and Opt-out Deadline. | Section 1.26 | 45 calendar after Notice Mailing Date |
| Claim Form Deadline | Section 1.04 | 180 calendar days after the Notice Mailing Date |
| Deadline for Monetary Settlement Class Members to cure defects in Claim Forms that were submitted by the Claim Form Deadline | Section 4.06 | 10 business days after the Claim Form Deadline |
| Claims Administrator provides out-out notices and Claim Forms to Class Counsel and counsel for BANA. | Section 4.03<br><br>Section 4.07 | No later than 1 week after the deadline for Monetary Settlement Class Members to cure defects in Claim Forms that were submitted by the Claim Form Deadline |
| Plaintiffs file motion seeking Final Approval Hearing and entry of Final Approval Order and | Section 4.09 | 28 days before the Final Approval Hearing |

27

12cv-1718

| Event | Governing Section | Date |
|-------|-------------------|------|
| Judgment. | | |
| Final approval hearing | Section 4.09 | Subject to Court availability, March 28, 2014, but in all events, not later than April 11, 2014. |

Dated:  December 13, 2013          Respectfully submitted,

By: _____ /s/ David J. Vendler _____

DAVID J. VENDLER, ESQ.
dvendler@mpplaw.com
**MORRIS POLICH & PURDY LLP**
1055 West Seventh Street, 24th Floor
Los Angeles, CA 90017
Telephone:  (213) 891-9100
Facsimile:  (213) 488-1178

MICHAEL R. BROWN, APC
Michael R. Brown, Esq. (SBN 65324)
mbrown@mrbapclaw.com
18101 Von Karman Avenue, Suite 1940
Irvine, California 92612
Tel.:  (949) 435-3888
Fax:  (949) 435 3801

LAW OFFICE OF JEFFREY D. POINDEXTER
Jeffrey D. Poindexter, Esq. (SBN 167854)
Jeffrey@jdpoindexterlaw.com
2534 State Street, Suite 306
San Diego, CA 92101
Tel.:  (619) 271-2382
Fax:  (619) 568-3801

Attorneys for Plaintiffs RICHARD M. HORN, and MARIA GUREVICH, and all others similarly situated