MORRIS POLICH & PURDY LLP
David J. Vendler, Esq. (SBN 146528)
1055 West Seventh Street, Suite 2400
Los Angeles, CA 90017
Tel.: (213) 417-5100
Fax: (213) 488-1178

MICHAEL R. BROWN, APC
Michael R. Brown, Esq. (SBN 65324)
18101 Von Karman Avenue, Suite 1900
Irvine, California 92612
Tel.: (949) 435-3888
Fax: (949) 435 3801

LAW OFFICE OF JEFFREY D. POINDEXTER
Jeffrey D. Poindexter, Esq. (SBN 167854)
2534 State Street, Suite 306
San Diego, CA 92101
Tel.: (619) 271-2382
Fax: (619) 568-3801

Attorneys for Plaintiff RICHARD M. HORN
and all others similarly situated

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD M. HORN, an individual and as Trustee of the Richard M. Horn Trust Dated June 16, 2003 on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A., a National Banking Association,<br><br>Defendant. | [NO.: 12-cv-1718-GPC- BLM]<br><br>PLAINTIFFS' RESPONSE TO OBJECTION OF SUSAN HOUSE TO PROPOSED SETTLEMENT; DECLARATION OF MICHAEL R. BROWN (filed as a separate document)<br><br>Date: April 11, 2014<br>Time: 1:30 p.m.<br>Place: Courtroom 2D<br>Judge: Hon. Gonzalo P. Curiel<br><br>Assigned to Magistrate Judge Barbara Lynn Major |

**Table of Contents**

I. INTRODUCTION ....................................................................................................1

II. HOUSE HAS FAILED TO DEMONSTRATE SHE IS A MEMBER OF THE MONETARY OR INJUNCTIVE CLASSES ....................................................................................................4

III. HOUSE'S OBJECTION BRINGS NO VALUE TO THE PROCESS AND SHOULD BE OVERRULED ....................................................................................................8

A. This is not House's first collaboration with Palmer ....................................................................................................9

B. Darrell Palmer has been harshly criticized by courts across the country. ....................................................................................................10

C. At least two courts denied Mr. Palmer's pro hac vice applications because he made false statements to the court. ....................................................................................................12

D. Palmer's State Bar record. ....................................................................................................14

IV. THE SETTLEMENT IS NOT ONLY ADEQUATE TO MEET APPROVAL STANDARDS BUT HIGHLY BENEFICIAL TO A CLASS OF MORE THAN 300,000 MEMBERS ................14

V. THE SETTLEMENT CONSIDERATION IS NOT ILLUSORY ....................................................................................................15

A. Compensation for tax year 2009 ....................................................................................................15

B. Compensation for tax years 2010-2013 ....................................................................................................17

C. The Injunctive Relief Is Sufficient ....................................................................................................18

VI. THE REQUESTED ATTORNEY'S FEES ARE FAIR AND REASONABLE, *IN RE MERCURY* IS NOT APPLICABLE TO THESE SEPARATELY NEGOTIATED FEES THAT ARE NOT COMING OUT OF THE CLASS SETTLEMENT ....................................................................................................19

CONCLUSION ....................................................................................................23

## Table of Authorities

### Cases

*Barnes v. FleetBoston Fin. Corp.*, No. 01-10395, 2006 U.S. Dist. LEXIS 71072 .......... 9

*Calloway v. Cash Am. Net of California LLC*, No. 09–CV–04858, 2011 WL 1467356, at *2 (N.D.Cal. 2011) .......... 21

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) .......... 7

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir.2004) .......... 23

*Devlin v. Scardelletti*, 536 U.S. 1, 23 n.5 (2001) .......... 9

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1 .......... 9

*Eisen v. Porsche Cars North America, Inc.* 2014 WL 439006 (C.D. Cal. 2014) .......... 21, 23

*Gitten v. KCI USA, Inc.*, 2011 WL 1467360 (N.D.Cal. 2011) .......... 22

*Hanlon v. Chrysler Corporation* 150 F. 3d at 1026 (9th Circuit 1996) .......... 15, 20, 21

*Heekin v. Anthem*, 2013 WL 752637 (S.D. Ind. 2013) .......... 11

*Herfert v. Crayola, LLC*, Case No. C11-1301-JCC, W.D. Wash. .......... 12

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. 2011) .......... 8

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Me. 2003) .......... 8

*In re Hydroxicut Marketing and Sales Practices Litigation*, 2013 WL 5275618 *2 (C.D. Cal. 2013) .......... 4, 6, 10, 12

*In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) .......... 8

*In re Law Office of Jonathan E. Fortman, LLC*, No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903 .......... 9

*In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, MDL 08-1977-MHM, 2010 WL 3715138, at *9 (D. Ariz. Aug. 31, 2010) .......... 21

*In re Mego Fin. Corp.*, 213 F.3d at 459 .......... 23

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) .......... 20, 22, 23

*In Re Netflix Privacy Litigation* Case No. 5:11-cv-00379 EJD .......... 10

*In re Oil Spill, MDL 2179*, 2013 WL 144042, at *48 n.40 (E.D.La. 2013) .......... 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 34845 (N.D.Cal. 2013) .......... 11

*In re UnitedHealth Group PSLRA Litig.*, 643 F. Supp. 2d 1107, 1108 (D. Minn. 2009) .......... 9

*In re Uponor, Inc., Fl 807 Plumbing Fittings Prods. Liab. Litig.*, 2012 WL 3984542, at *3 (D.Minn. 2012) ....................11

*Johansson-Dohrmann v. Cbr Systems, Inc*., 2013 WL 3864341 *8 (S.D.Cal. 2013)....................21

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Circuit 1998) ....................14

*Mark A. Arthur v. Sallie Mae*, Case No. C10-198JLR, WD of Wash....................11, 12

*Mazzeo v. Gibbons*, 2010 WL 3910072 *2 (D.Nev. 2010)....................7

*Metzger v. Hussman*, 682 F.Supp. 1109, 1110 (D.Nev.1988) ....................7

*Moore & Jones v. Verizon*, 2013 WL 4610764 *13-14(N.D. Cal. 2013) ....................7

*North American Specialty Ins. Co. v. National Fire & Marine Ins. Co.* 2013 WL 1332205 at * 5 (D.Nev. 2013) ....................8

*Ralston v Mortgage Investors Group, Inc*., United States District Court, Northern District of California, Case No. 08-cv-00536-JF (PSG), Dkt #410 ....................9, 10

*Redman v. RadioShack*, 2014 WL 497438 (N.D. Ill. Feb. 7, 2014)....................22

*Spurlock v. F.B.I.*, 69 F.3d 1010, 1016 (9th Cir.1995) ....................8

**Statutes**

Rule 12(f) of the Federal Rules of Civil Procedure ....................7

Rule 23(b) (3)....................4

**Other Authorities**

*Managing Class Action Litigation: A Pocket Guide for Judges*, at 17 (3d ed. 2010)....................13

**Treatises**

*Manual for Complex Litigation, Fourth*, §21.643, p. 326 ....................9

Now come plaintiffs Richard M. Horn and Maria Gurevich and respond to the Objection of Susan House to the Proposed Settlement as follows:

**I.**

**INTRODUCTION**

Plaintiffs Richard M. Horn and Maria Gurevich ("Plaintiffs") sued the Bank of America (the "Bank") on behalf of themselves and over 300,000 class members because the Bank had been intentionally incorrectly reporting paid deferred mortgage interest on 1098 Forms. This practice started in 2009, and over the past four years, has cost class members hundreds of millions of dollars in lost tax deductions. Plaintiffs sought the following relief for the benefit of class members:

1. A complete change in the Bank's method of reporting paid deferred mortgage interest on an ongoing basis to allow class members to obtain the full benefit of their mortgage interest tax deduction.
2. Issuance of corrected 1098 Forms for tax years 2010, 2011, 2012 and 2013 to allow class members to file amended tax returns and obtain tax refunds/credits.
3. Damages for the lost value of tax deductions that were not taken for tax year 2009 and could not be remedied by the filing of amended tax returns for 2009.
4. Some form of payment to defray the cost of filing amended tax returns.
5. Payment of reasonable attorney's fees and litigation costs so as not to burden the class members with this expense.
6. Payment of all administrative costs in implementing any settlement.
7. Compensation to the Class Representatives.

*ALL OF THIS HAS BEEN ACHIEVED IN THE SETTLEMENT PRELIMINARILY APPROVED BY THIS COURT AND NOW BEFORE THIS COURT FOR FINAL APPROVAL.*

Before the court is a settlement in which one of the largest financial institutions in the country, Bank of America, has agreed to amend its under reporting of deferred home loan mortgage interest, despite its protestations that its reporting practice was legal and proper.

Before the court is a settlement in which the Bank has agreed to correct hundreds of thousands of previously filed 1098 Forms for tax years 2010-2013, affording class members the opportunity to file amended tax returns and recover in excess of $150 million in tax refunds from the IRS.

Before the court is a settlement in which the Bank has agreed to compensate qualifying class members for the value of lost deductions in tax year 2009, according to a negotiated, fair and reasonable formula that will give 75% of this potentially lost benefit to class members, with a value in excess of $50 million. Only this portion of the settlement requires a simple, straightforward claim form filing, whereas the rest "just happens" for the class members.

Before the court is a settlement in which the Bank has agreed to pay $40.00 to each recipient of a corrected Form 1098. This payment is made for each Form 1098 sent without any request by class members or completion of any claim form regardless of whether an amended tax return is filed and has a value in excess of $8 million.

Before the court is a settlement in which the Bank has agreed to pay all the Attorney's fees and costs in the amount of $10.5 million (subject to Court approval) outside of the settlement money for class members, unencumbering the class from any diminution in settlement funds. The Bank has separately negotiated the payment of attorney's fees and costs with class counsel and the settlment is not dependant on the court approving the attorneys' fee.

Before the court is a settlement in which the Bank has agreed to pay an incentive award to the class representatives outside of the settlement money for class members in the combined amount of $50,000 (subject to Court approval). The Bank

has separately negotiated the payment of an incentive award and court approval of these awards is not a condition of the settlement.

Before the court are the numbers evidencing notice of this settlement was sent to 309,000 class members, and in less than 60 days, approximately 50,000 class members read and returned claim forms.

And, finally, before this Court is one (1), yes one single objection filed by an individual represented by counsel known to be a professional and serial objector. Objector's counsel is serial objector attorney, Darrell Palmer ("Palmer"), a felon, who has been sharply criticized for his perjurious and extortionate tactics by many federal courts and who is currently facing new charges by the California State Bar. See, *infra*, Sec. III (2).

Without meeting the objection filing requirements or meeting her burden to establish her standing to object, Susan House ("House") complains in vague and ambiguous ways about the settlement in a "canned" boiler-plate objection designed to frustrate the Final Approval of an overwhelmingly fair and reasonable settlement.

This Court should cast a cold eye on Palmer and his client's motivations for filing her objection. This Court should rigorously examine House's technical failures in establishing her standing and in failing to comply with the requirements to object as set forth in the Notice of Settlement, especially given her attorney's past record. Indeed, this Court should do everything within its power not to allow these professionals, a single individual and her counsel, who offer nothing to benefit the class, to tie up or derail what is clearly an overwhelmingly favorable settlement benefitting hundreds of thousands class members while they try and extort money for their personal benefit.

Because House has not met the strict requirements set forth in the Notice for filing an objection and has failed to meet her burden to establish her standing, her objections should be stricken That way, any appeal filed by the Objector will be from that order and will not interfere with the class receiving the benefits of the settlement.

Class members are standing ready to receive significant cash benefits from this settlement.

However, even if the Court determines to ignore Palmer's odious record, and House's filing defalcations, and takes House's objections at face value, they all should clearly be overruled. As set forth in the Application for Final Approval, including the many declarations filed in support thereof, particularly the Declaration of Justice John K. Trotter (Ret.), the settlement is fair, reasonable and affords significant benefits to the class. Additionally, the feigned, "canned" (see *infra)* boiler-plate objection to the negotiated Attorney's fees, costs and Class Representative Incentive does not produce any benefit to the class if sustained, since it is the Bank that is paying all of the attorney's fees and these costs. Indeed, in that circumstance, the only beneficiary of House's objection will be the wrongdoer, i.e. the Bank.

## II.
## HOUSE HAS FAILED TO DEMONSTRATE SHE IS A MEMBER OF THE MONETARY OR INJUNCTIVE CLASSES

Objectors to class action settlements bear the burden to establish that they have standing to object, i.e. that they are in fact members of the class. *In re Hydroxicut Marketing and Sales Practices Litigation*, 2013 WL 5275618 *2 (C.D. Cal. 2013). The House declaration fails to meet this burden.

The class certified under Rule 23(b) (2) consists of:

> "All persons who made Payments of Deferred Interest on their Option ARMs in Tax Years 2010, 2011, or 2012 and for whom BANA was or would have been required by 26 U.S.C. § 6050H and 26 C.F.R. § 1.6050H-1 to file a Form 1098 for the same Tax Year in which the Payments of Deferred Interest were made."

The class certified under Rule 23(b) (3) consists of:

> "all persons who made Payments of Deferred Interest on their option adjustable rate mortgages in Tax Year 2009 and for whom [the Bank] was or would have been required by 26 U.S.C. § 6050H and 26 C.F.R. § 1.6050H-1 to file a 2009 Form 1098."

To be a member of the monetary or injunctive classes, House must prove that she falls within either one or both of the two defined classes.

In fact, Paragraph 22 of the Class Notice (Brown Dec., Ex 1[1]) explained this fact to class members, including Ms. House, when it stated:

> ***Your objection must (a) attach documents establishing, or providing information sufficient to confirm that you are a class member***; (b) include a statement setting forth your specific objections and the grounds for such objections; (c) identify all documents you desire the Court to consider; (d) include an address where you may receive service of process; and (e) state whether you are represented by counsel, and if so, the name and mailing address of your counsel. ***Your objection will not be considered valid unless you comply with these requirements.*** (emphasis added)

While the House declaration (Document 65-1) purports to establish that House had a negative amortization loan with Bank of America, it utterly fails to state or establish that she is a borrower who "*made Payments of Deferred Interest on [her] their option adjustable rate mortgages in Tax Years 2009-2013.*" Counsel's "canned" statement in the introduction to the objection also fails to establish class membership. (Document 65). House has failed to meet requirement (a). It is her burden to establish standing to object by demonstrating she is a member of one of the classes. Inasmuch as House has failed to establish standing to object, her objection should be stricken.

Not only does House fail to unequivocally prove she is a member of any class, i.e. that she paid previously deferred interest, the documents submitted with her declaration lack sufficient foundation and therefore should be excluded.[2] First, she does not identify in her declaration what the documents are, how they relate to her objection and whether these are true and correct copies of original documents. Second, Exhibit B appears to be a loan statement from January 2013, but it is without any name on the statement. Exhibit B does not show any accumulated balance of unpaid interest nor does it show any payment of deferred interest. There is no statement as to what

---

[1] All references to Exhibits hereinafter shall be to the Exhibits attached to the Brown declaration.
[2] Plaintiffs thus hereby object to this evidence based on lack of foundation.

point these documents support. Because House has failed, in her declaration and attorney's filing, to demonstrate standing, her objection should be stricken. *In re Hydroxicut Marketing and Sales Practices Litigation*, 2013 WL 5275618 at *2 (proper course is to strike objections where burden to establish standing is not met by purported objector).

House's purported objection also fails to comply with the procedural requirements in the class notice (and in the Court's preliminary approval Order) for the filing of objections.

The class notice provides:

> "To object to the Settlement, you must file a written objection with the Clerk of Court and **mail** a copy of the objection to the Clerk of the Court, Class Counsel, and counsel for BANA at the following addresses: (addresses of counsel are then set forth) Ex 1, section IX, p. 22.

Attorney Palmer purportedly filed the Objection on behalf of House. However, the proof of service does not state that the objection **was** served by U.S. Mail on all the required parties. Rather, it states that the addressees required to receive notice by U. S. Mail **will** be served. (Document 65-17). As set forth in the Brown Dec., para. 4, he has never received a copy of the Objection by U.S. mail.

As to the declaration of Objector House (Document 65-1) there is no proof of service as required by the Notice. Again, no such document was received by U.S. mail by Mr. Brown. (Brown Dec. para. 4)

The Class Notice further provides:

> "Any Class Member who does not provide a timely written objection in the manner prescribed in the Preliminary Approval Order **shall be deemed to have waived any objection** and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy

of the proposed Settlement, the award of attorneys' fees, or the named plaintiffs' case contribution awards." (Ex. 1-para. 22)

The deficiencies in service, although technical, should not be overlooked by the Court in the face of Palmer's professional objector status and record. The notice is clear. There must be compliance by an objector to the approved method for objecting. Since counsel for House is a professional and serial objector, his failure to be sure the objection met the clear, unequivocal and strict notice requirements cannot be excused. Nor can after-the-fact corrections eliminate the original compliance requirement.

District courts have routinely rejected objections where there has not been strict compliance with the objection requirements set forth in the Notice. See *Moore & Jones v. Verizon,* 2013 WL 4610764 *13-14(N.D. Cal. 2013). A copy of this opinion is attached for the Court's convenience to the Brown Dec. as Ex. 2. In *Moore*, The Court overruled multiple objections for various technical failures including failure to: mail to class counsel, include case caption, include address, include telephone number, and file with the court.

Accordingly, the House Objection should be stricken for non-compliance with the Notice requirements. Although Rule 12(f) of the Federal Rules of Civil Procedure provide authority only to strike pleadings or content therein, a district court has the inherent power to strike a party's submissions other than pleadings. *See, e.g., Metzger v. Hussman,* 682 F.Supp. 1109, 1110 (D.Nev.1988) (striking plaintiff's opposition because it was filed after the date set for responding to motions); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (recognizing that federal courts have "certain implied powers" that are "governed not by rule or statute but by the control necessarily invested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). Indeed, in *Mazzeo v. Gibbons*, 2010 WL 3910072 *2 (D.Nev. 2010), the Court made it clear that striking of a motion because of improper conduct by the filing attorney is permitted.

This alternative basis for striking improper filings derives from the district court's "inherent power over the administration of its business. Specifically, the district court has inherent authority to regulate the conduct of attorneys who appear before it [and] *to promulgate and enforce rules for the management of litigation* ....“ *Spurlock v. F.B.I.*, 69 F.3d 1010, 1016 (9th Cir.1995)” (citations omitted) (emphasis added). *North American Specialty Ins. Co. v. National Fire & Marine Ins. Co.* 2013 WL 1332205 at * 5 (D.Nev. 2013). Here, the evidence brought forth by plaintiffs demonstrates incontrovertibly that Palmer and his client’s motives are impure.

**III.**
**HOUSE’S OBJECTION BRINGS NO VALUE TO THE PROCESS AND SHOULD BE OVERRULED**

While good faith objectors may add value to the final approval process, "numerous courts have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients." *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010). "What is less frequently observed is that the [class action settlement] process provokes into action an interesting group of professional objectors, who seem to have a variety of agendas, some not always apparent." *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Me. 2003).

"[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. 2011) (quotations omitted, alteration in original). 6-7 (1st Cir. 1999) (“[W]e recognize that a class member and his or her attorney conceivably could object to a proposed settlement solely to set up an appeal designed to obtain a nuisance value recovery

and/or advantageous fee arrangement.") . *See also In re UnitedHealth Group PSLRA Litig.*, 643 F. Supp. 2d 1107, 1108 (D. Minn. 2009) (referring to a group of serial objectors as "remoras" who were "loose again"); *Devlin v. Scardelletti*, 536 U.S. 1, 23 n.5 (2001) (Scalia, J., dissenting) (observing that serial objectors' penchant for filing "canned" briefs and baseless objections often leads to baseless appeals in the quest for a fee); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, c *Barnes v. FleetBoston Fin. Corp.*, No. 01-10395, 2006 U.S. Dist. LEXIS 71072, at *3 (D. Mass. Aug. 22, 2006) ("[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors.").

For this reason, the Manual for Complex Litigation advises courts to distinguish between objections that "are made for improper purposes, and benefit only the objectors and their attorneys (*e.g.*, by seeking additional compensation to withdraw even ill-founded objections)" and those with "a desire to win significant improvements in the class settlement." *Manual for Complex Litigation, Fourth*, §21.643, p. 326.

Objections, like House's, that are made for improper purposes, should be overruled. *See In re Law Office of Jonathan E. Fortman, LLC*, No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903, at *3 (E.D. Mo. Feb. 1, 2013) ("courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first.").

### A. This is not House's first collaboration with Palmer

While Palmer is clearly a "professional" objector, House is no neophyte.[3] She has been represented by Palmer as a class action objector on at least two other occasions. Palmer filed an objection on behalf of House, (and then, tellingly, withdrew it) in *Ralston v Mortgage Investors Group, Inc.*, United States District Court, Northern District of California, Case No. 08-cv-00536-JF (PSG), Dkt #410. Also, in paragraph 1

[3] House is currently employed as a Legal Assistant at Tropio & Morian and Wasserman, Comden, Casselman & Esensten. (Ex. 3) As stated in her declaration, she is very familiar with class action cases. (Document 65-1, p.2)

of the House declaration she declares "I am a member of the Subscriber Class." (Document 65-1, p.1). There is obviously no "subscriber class" in this case, nor in the *Ralston* case. Thus, this "canned "declaration must have come from another case that Class Counsel is not presently aware of, perhaps because it was filed in a state court. [4]

Plaintiffs' also question whether House is even a knowing or consenting objector. Just 6 days ago, on March 7, 2014, in the case captioned *In Re Netflix Privacy Litigation* Case No. 5:11-cv-00379 EJD, Katherine Strohlen, the purported objector represented by Palmer, filed a declaration in which she stated that her name had been used by Palmer, without her knowledge or consent, to lodge an objection to the class action settlement reached in that case. Ms. Strohlen details how she knew nothing of the use of her name as an objector. Ms. Stroheim's declaration is attached to the Brown declaration as Exhibit 4.

One wonders if House even knows this objection has been filed. Even if this Court strikes the objection, which it should, or alternatively if this Court rules on the objection and denies it, as part of the continuing investigation into the unethical and improper conduct of Palmer (and possibly House) which several courts and the State Bar have conducted, this Court should order Palmer to produce his client, House, to personally appear at the hearing on this matter and be subjected to cross-examination to confirm her legitimate status as an objector.

### B. Darrell Palmer has been harshly criticized by courts across the country.

Courts have repeatedly found that Palmer is a vexatious objector whose motives are not in the best interest of the classes he purports to be acting on behalf of. In another Department of this very Courthouse, the Hon. Barry Ted Moskowitz, presiding over the class action captioned *In Re Hydroxycut Marketing and Sales Practices Litigation* (Case No. 3:09-cu-01088-BTM (KSC)) was presented with a detailed

[4] There may be other instances of House objecting to class action settlements that Class Counsel is unaware but which discovery, which would be requested, might reveal.

analysis of Palmer's vexatious, serial and unethical objection filings. This analysis was exhaustively documented in a declaration filed by class counsel Thomas J. O'Reardon of the San Diego firm Blood, Hurst & O'Reardon. This declaration details 79 recent cases where Palmer has filed objections, along with numerous Court responses to the objections. A true and correct copy of the O'Reardon declaration is attached as Exhibit 5 to the Brown declaration. Some of the findings contained in court orders and hearing transcripts are summarized here.

In *In re Oil Spill, MDL 2179*, 2013 WL 144042, at *48 n.40 (E.D.La. 2013) (noting "Mr. Palmer has been deemed a 'serial objector' by several courts" and citing "Mr. Palmer admitting it was 'regrettable' that he had been found to have engaged in 'bad faith and vexatious conduct'"); *In re Uponor, Inc., Fl 807 Plumbing Fittings Prods. Liab. Litig.*, 2012 WL 3984542, at *3 (D.Minn. 2012) ("the Palmer Objectors appear to be represented by an attorney who has not entered an appearance in this case and who is believed to be a serial objector to other class-action settlements… This attorney, Darrell Palmer, paid the appellate filing fee on behalf of the Palmer Objectors, and the documents filed on their behalf bear his California mailing address rather than the Texas addresses of the Palmer Objectors.").[5] Ultimately, the Court imposed a $170,000 appeal bond upon finding "that the Palmer Objectors have evidenced bad faith and vexatious conduct." *Id.* at *6. In *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 34845 (N.D.Cal. 2013), the Court found Mr. Palmer and his objector clients (his wife and aunt) in civil contempt and awarded monetary sanctions for violating court order that the objectors appear for deposition). In *Heekin v. Anthem,* 2013 WL 752637 (S.D. Ind. 2013), the Court imposed a $250,000 appeal bond after finding convincing evidence of bad faith or vexatious conduct by Mr. Palmer and his client). *Id.* at *4. See also *Mark A. Arthur v. Sallie Mae,* Case No. C10-198JLR, WD

[5] The reason Mr. Palmer hid his involvement and ghost wrote the objections in this case are clearly because he could not meet the eligibility requirements to be admitted pro hac vice. Indeed, lying on other pro hac vice applications is the reason he is currently under charges by the California State Bar.

of Wash., hearing transcript (Brown Dec., Ex. 5 at pages 40-43 detailing Palmer's several "misrepresentations" to the court).

Finally, in *In re Hydroxycut Marketing and Sales Practices Litigation, supra*, a case in this very district, the court found Palmer was engaging in the worst possible conduct – trying to extract a $400,000.00 payment by threatening to hold up a settlement. In his slip opinion, Judge Moskowitz found:

> According to Mr. Reid's testimony, which the Court finds credible, Mr. Bandas was attempting to pressure the parties to give him $400,000 as payment to withdraw the objections and go away. Mr. Bandas was using the threat of questionable litigation to tie up the settlement unless the payment was made. *Even though Ms. McBean was Mr. Palmer's client, it is clear that Mr. Bandas was authorized to speak for Mr. Palmer on Ms. McBean's behalf.*

(Brown Dec. Ex. 5.)

### C. At least two courts denied Mr. Palmer's pro hac vice applications because he made false statements to the court.

In *Herfert v. Crayola, LLC*, Case No. C11-1301-JCC, W.D. Wash.. the court denied Palmer's application, noting:

> "Mr. Palmer is denied for failure to appear at a prior hearing and for material nondisclosures in his application. Mr. Palmer falsely declared under penalty of perjury that he had not been disbarred or formally censured by a court of record or by a state bar association. (Dkt. No. 59). In fact, Mr. Palmer was temporarily suspended from the Colorado Bar Association, the State Bar of Arizona, and the State Bar of California as a result of a Colorado felony conviction."

See Order Denying Application of Claimant's Counsel Darrell Palmer to Appear Pro Hac Vice (W.D. Wash. Aug. 17, 2012) (Brown Dec., Ex. 5, p. 52-54).

In *Arthur v. Sallie Mae*, the court revoked Palmer's pro hac vice admission, describing Mr. Palmer's conduct as "unacceptable." Hearing Tr. at 9 (Ex. 5, p. 042). The court explained:

> "Mr. Palmer did not file an amended pro hac vice application until August 27, 2012, a full 17 days after being notified of the problem. This does not demonstrate candor with the court or that he took seriously the fact that he made a false statement under oath. Additionally, Mr. Palmer has apparently submitted false pro hac vice applications in at least three other cases. As a final note, the false statement in the pro hac vice application is not the only misrepresentation Mr. Palmer has made to this court. It is impossible to reconcile a declaration submitted to this court under penalty of perjury, dated May 17, 2012, with the court record. And Mr. Palmer has now acknowledged that it is incorrect. That serves as the basis for his fee application in this matter. As will be further discussed today, Mr. Palmer made several other misrepresentations in his motions for attorneys' fees. These misrepresentations confirm my conclusion that the court sanction Mr. Palmer by revoking his admission in this case. Therefore, Docket 251 is granted, and Mr. Palmer's pro hac vice is revoked".

The Federal Judicial Center and countless state and federal courts have written about serial objectors, such as Palmer, and warned courts to "[w]atch out … for canned objections from professional objectors who seek out class actions to extract a fee by lodging generic, unhelpful protests." Barbara J. Rothstein, *et al.*, Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 17 (3d ed. 2010).

With regard to the notion of "canned objections" this court is directed again to paragraph 1 of the House declaration where she declares "I am a member of the **Subscriber Class**."(Document 65-1, p.1) There is obviously no "subscriber class" in this case. But it matters not to serial and professional objectors what the actual facts are. Rather, the use of "canned" statements achieves their purpose.

House states the purpose of her objection is to improve recovery by class members. House Dec., Document 65-1at para.6. Yet this highly experienced legal assistant / paralegal cannot articulate how her objection improves any recovery to the class. As set forth in the opening paragraphs of this response, the true objectives sought to be obtained for the class members by the class representatives were obtained.

### D. Palmer's State Bar record

This Court should not only consider actions taken by other Federal and State judges in dealing with Palmer but may, and should, also consider his State Bar record.

Attached to the Brown declaration as Exhibit 6 is a printout from the California State Bar website. The information reveals Palmer was convicted of a felony in Colorado. Presently, there are State Bar charges pending arising out of his role as an objector or counsel for objectors in class actions pending in other jurisdictions where he is accused of filing perjurious pro hac vice applications.

## IV.
## <u>THE SETTLEMENT IS NOT ONLY ADEQUATE TO MEET APPROVAL STANDARDS BUT HIGHLY BENEFICIAL TO A CLASS OF MORE THAN 300,000 MEMBERS</u>

House's objections to the merits of the settlement to the class are entirely frivolous. Her objections offer nothing substantive to benefit the class.

Far from being inadequate, this settlement is a home run for the class. The qualifying class members will not only recover at least 75% of their damages for tax year 2009,[6] but 100% of the value of their lost deductions for 2010-2013 along with $ 40 checks for each amended Form 1098 received. However, to avoid burdening the Court with repetition, plaintiffs incorporate here the arguments made in their motion for final approval of the settlement as to why the settlement that was reached is in fact more than reasonable and adequate.

Settlements are not to be judged against what might have been recovered had the plaintiff prevailed at trial; nor does the settlement need to provide anywhere near 100% of the damages sought to be fair and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Circuit 1998). The fairness of a settlement must be

[6] Since a 20% marginal tax rate was assumed, which is much higher than the national average (See DeAndrea Dec. filed with plaintiffs' preliminary approval motion), most class members will actually recover more than 75% of the true value of their deduction from this prong of the settlement.

evaluated as a whole, rather than by assessing its individual components. *Hanlon v. Chrysler Corporation* 150 F. 3d at 1026 (9th Circuit 1996).

## V.
## THE SETTLEMENT CONSIDERATION IS NOT ILLUSORY

In most instances, professional objectors make the same objections in case after case. Normally, professional objectors do not even have a full understanding of the terms of the settlement to which they object.[7]

Notwithstanding the fact that Notice was mailed on or about January 14, 2014, and class members were invited to contact class counsel if they had any questions (Brown Dec., Ex. 1, Section IX, p. 12), at no time did House contact class counsel to ask for any information, clarification or explanation of any of the settlement terms. Palmer never contacted class counsel to inquire about any of the matters to which House objects, discuss the settlement terms or ask for any clarifications. Brown Dec., para 14. Rather, canned objections have been filed reflecting a complete misunderstanding of the settlement, as well as the nature of the settlement process.

### A. Compensation for tax year 2009

The Bank disputed any liability contending that its reporting was proper under existing guidelines. However, because the statute of limitations had passed for the amending of 2009 tax returns, Plaintiffs contended that the Bank should be responsible for the lost value of any tax deductions that were not received by class member borrowers. As set forth in the Motion for Final Approval, the Bank had numerous legal and factual arguments that could have blunted Plaintiffs' case, including lack of jurisdiction arguing the IRS had exclusive jurisdiction. (See: Bank's Motion to Dismiss Document 25). Class counsel recognized that the Bank's offer to

[7] This is evidenced by House's declaration she is a member of the "subscriber class". Unfortunately, there is no subscriber class and this language was most certainly lifted from a form objection Palmer uses in other cases.

correct 1098 Forms for 2010 forward, when any tax benefit would come from the IRS to class members, did not resolve the losses sustained by class members for tax year 2009, the first year the Bank implemented its policy.

This was the single largest component that required a "litigation reduction" because it was vigorously resisted, the money would come directly from the Bank, and it could keep the case in the court system for years. With the assistance of expert consultants, and the assistance of Justice Trotter, through vigorous negotiations, Class Counsel obtained an agreement whereby the Bank would pay eligible class members 75% of the value of their lost deduction. To further benefit the class members, the settlement provided that each qualifying class member would be presumed to be in the 20% marginal tax rate, a rate much higher than the national average. D'Andrea Dec., para.9 attached as Ex. 7 To Brown Dec.

Rather than create a common fund pool from which qualifying claims would be paid (and possibly subject to pro rata reductions), the Settlement requires the Bank to apply the settlement formula above to 100% of all qualifying claims. Accordingly, there is an unlimited pool of money available to pay 100% of all qualifying claims at 100% of the negotiated settlement amount.

To facilitate this, with the assistance of Justice Trotter, a streamlined claim form was developed. This claim form asks 5 simple qualifying questions. It does not require class members to search through old records and detail any payments of deferred interest. For the convenience of the Court, a copy is attached to the Brown Dec. as Exhibit 8.

So, this part of the settlement works like this. Ms. Jones receives the Notice and Claim form. She completes the claim form and timely returns it to the claim administrator. (The time period for filing claim forms is six months until July 13, 2014). The claim administrator reviews it for completeness. If there are any errors, it is returned to Ms. Jones with a statement of any deficiency. Once the claim filing

period closes, all the claim forms are reviewed to see whether the form demonstrates the member qualifies for payment. Assuming Ms. Jones qualifies for payment, the Bank will determine the amount of interest that was not reported. Assume the Bank determines for 2009 it underreported Ms. Jones' paid deferred interest by $5,000. It applies the negotiated marginal tax rate of 20% to the $5,000 and assumes the tax refund to Ms. Jones would have been $1,000. The claims administrator is instructed to pay Ms. Jones 75% of that amount, or $750.

The Bank has stated it underreported deferred interest that was paid by class members in tax year 2009 by $344,690,053. McCall Dec. para. 12. Approximately 50,000 claim forms have been submitted within 60 days after initial notice and mailing. By July 13, 2014, it is expected in excess of 75,000 claim forms will have been filed. Lorden Dec. para 8, submitted with Motion. After review of each of the claim forms, the Bank will undertake the exact same process described for Ms. Jones for each qualifying class member and every qualifying class member will be paid the negotiated settlement amount. This is hardly an illusory result.

### B. Compensation for tax years 2010-2013

Each and every class member has the opportunity to file amended tax returns upon receipt of corrected 1098 Forms from the Bank. As explained in the Motion for Approval of Settlement it would make no sense to litigate this issue further or negotiate a payment from the Bank, which would require a litigation discount as reflected for year 2009, when the filing of an amended tax return will give each class member the *full value* of the tax deduction that was not available when the original return was filed.

The Bank has already issued the majority of the corrected 1098 Forms for years 2010-2013. (McCall Dec. para. 18 filed with the Motion). The amount of interest **this settlement has returned to borrowers,** to be potentially included in their tax returns,

is over $1.2 *billion.* (McCall Dec. para. 12 filed with Motion). In other words, without this lawsuit and without the settlement class counsel negotiated, the value of $1.2 billion worth of mortgage interest tax deductions would have been lost to class members forever.

It is worth repeating. Class members will now receive corrected 1098 Forms that will put more than $1.2 billion into play for securing tax refunds for those years! Dr. Lorden has indicated that this settlement provision will benefit the class by returning as much as $151,000,000 to class members. There is no limit to what the class members can receive. Each class member can use the amended 1098 Form as he/she sees fit without restriction from the Bank, or by having to participate in a pro rata sharing of a common fund.

Objector House does not suggest any alternative resolution to correcting incorrect 1098 Forms. There is no alternative and this was a hard fought and well achieved result.

### C. The Injunctive Relief Is Sufficient

Objector's argument on this point is nothing more than canned language and a misrepresentation to the Court. House and Palmer have no concern about making arguments that are not supported by the facts.

The Settlement Agreement provides:

> " Section 3.03 Future Tax Years. BANA will report on Forms 1098 for Tax Year 2013 and for future Tax Years an Option ARM borrower's Payments of Deferred Interest. BANA, however, may alter how it reports an Option ARM borrower's Payments of Deferred Interest on Form 1098 so long as the amount of a borrower's Payments of Deferred Interest is reported. Notwithstanding any of the above, any applicable law or directive from the Department of Treasury or the Internal Revenue Service concerning Form 1098 reporting will be controlling."

The Bank has agreed to report deferred interest paid in any future taxable years.

This is yet another example of an objection made without ever reading the Settlement Agreement, or understanding its terms, and making misrepresentations to the Court to support frivolous and canned objections.

## VI.
## THE REQUESTED ATTORNEY'S FEES ARE FAIR AND REASONABLE. *IN RE MERCURY* IS NOT APPLICABLE TO THESE SEPARATELY NEGOTIATED FEES THAT ARE NOT COMING OUT OF THE CLASS SETTLEMENT

House, a paralegal in a law firm where she works on class action cases, along with her professional, serial and felonious attorney Palmer, comes to this Court paradoxically objecting to the requested attorney fee award "because" House supposedly was not given the opportunity to object to the requested attorney fee award. Clearly, like all class members, House read the Notice regarding the legal fee sought to be approved. However, it appears that for purposes of filing an objection along with her professional objecting attorney, she ignored reading the portion of the Class Notice that stated the Bank was paying these fees outside of the Class Settlement in a fee shifting context such that payment of these fees would not affect the class settlement.

It is interesting that since 2009, House has been receiving incorrect 1098 Forms from the Bank potentially depriving her of thousands of dollars of tax deductions (assuming she is a class member which she has not substantiated in her objection filing). Versed in legal skills and a qualified paralegal for more than 20 years, she says nothing, does nothing and probably never even recognized the problem. Yet, when 309,000 notices are sent to class members regarding settlement of this class action, when more than 50,000 individuals read the notice and returned claim forms without objection and seek the benefit of the settlement, where class counsel have shouldered the litigation and all risks associated with it, when House personally benefits significantly (if she is a class member), it is House who rushes to the forefront to claim the attorney fees that are being separately paid by the Bank are excessive and somehow

harm the class. She is the sole objector. The class is unaffected by this separate agreement.

House's argument is frivolous. She relies exclusively on *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), in which the Ninth Circuit explained that in *common fund* cases, Rule 23(h) requires that class members be allowed an opportunity to object to a fee motion prior to the expiration of the class members' opt-out deadline. The rationale underlying the *Mercury* decision is that the amount distributed to the attorneys in common fund cases directly diminishes the amount received by the class, Thus, the Ninth Circuit held that the class should be given an opportunity to examine the attorneys' actual fee motion prior to the expiration of the objection period. *Id*. at 990-91.

This case, however, is readily distinguishable from *Mercury* because the amount of attorneys' fees and costs being requested here does not diminish or in any way affect the relief that will be provided to individual Class Members. Not only does this take the case out of the *Mercury* argument, it takes it out of the balance of any "canned" and template" arguments of House. (A review of documents in Ex. 5, the Blood declaration, shows Palmer makes this canned argument regularly).

As established by the declarations of the Hon. John K. Trotter, (Ret.); David Vendler; Jeffrey Poindexter; Michael R. Brown; Maria Gurevich; and Richard Horn, filed with the plaintiffs' Motion for Final Approval, and which are incorporated herein, the substantive terms of the present settlement were negotiated under the careful guidance of Justice Trotter before there was any discussion of attorney's fees or class representative enhancements. As stated in plaintiffs' final approval motion this process for setting legal fees – with the aid of a well-respected mediator and only after the class relief has been fully agreed to – has been specifically approved by the Ninth Circuit in *Hanlon* (district court properly "relied on the mediator as independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class.") *Hanlon*, 150 F.3d 1015 at 1029. This protective process eliminates the "adversarial

relationship" described in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988(9th Cir.2010) in which the attorneys' fee is to come directly out of a "common fund," i.e. where every dollar the attorneys get is one less that is gotten by the class.

*Hanlon* also makes clear that where this protective process is utilized, i.e. involving a well-respected mediator and determining the class relief separately from the attorney fee, the district court can properly award fees using either lodestar or percentage of the recovery principles, even if the settlement is not strictly a "common fund" settlement, but is one where the fee is negotiated separately. *Hanlon,* 150 F.3d at 1029 (percentage of the benefit method for analysis of legal fees can be appropriate where fees are negotiated with mediator only after concluding negotiations regarding class relief). See also *Johansson-Dohrmann v. Cbr Systems, Inc.*, 2013 WL 3864341 *8 (S.D.Cal. 2013) (using percentage of the benefit method for calculating fees in case where class relief and attorney's fees were separately negotiated with assistance of a well-respected mediator).

Because attorneys' fees were negotiated separately in this case, each qualifying Class Member who submits a valid claim will receive the full value of the relief provided for in the Settlement Agreement with no reduction for attorney's fees or costs.

Following *Mercury*, several courts have noted the importance of the distinction between payment of attorney's fees and costs from the common fund and the situation were the attorneys' fees are separate from the class recovery, such as fee-shifting cases. In *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, MDL 08-1977-MHM, 2010 WL 3715138, at *9 (D. Ariz. Aug. 31, 2010) the Court distinguished *Mercury* on the basis that the fees in *Lifelock* were to be paid separate from the class relief; thus, "there is no 'adversarial' relationship at the fee setting stage requiring the Court to assume the 'role of fiduciary for the class plaintiffs' because the fee award is not coming from a common fund and will not affect class members' rights.'"

Similarly, in *Calloway v. Cash Am. Net of California LLC,* No. 09–CV–04858, 2011 WL 1467356, at *2 (N.D.Cal. 2011) the Court stated: "This lack of a common

fund obviates the due process concerns highlighted by the *Mercury* court.") In *Eisen v. Porsche Cars North America, Inc.* 2014 WL 439006 (C.D. Cal. 2014), the Court found the same: "Mercury Interactive is thus distinguishable from the settlement here, which does not involve a common fund apportioned between relief and fees." In *Gitten v. KCI USA, Inc.*, 2011 WL 1467360 (N.D.Cal. 2011) the ruling was the same: "This lack of a common fund obviates the due process concerns highlighted by the *Mercury* court."

Courts in other jurisdictions have also distinguished the *Mercury* decision on similar grounds. The court in *Redman v. RadioShack,* 2014 WL 497438 (N.D. Ill. Feb. 7, 2014), reasoned "This settlement does not involve a common fund, so class members will not benefit or suffer based on changes to the fee award. District courts in the Ninth Circuit have declined to follow *In re Mercury* where the benefits of class members are not directly tied to attorneys' fees awards." The *Redman* court further noted:

> Moreover, the Notice of Class Action Settlement in this case gave objectors a clear understanding of the amount that class counsel would receive under the settlement terms. Ultimately, several objectors were able to challenge the proposed attorneys' fees because the class notice included the amount of the fee award. *The facts that objectors in this case identified and protested the requested fees belies any alleged prejudicial impact as a result of the objection deadline falling before the fee application was received.* The Court finds that class counsel's failure to file an application for attorneys' fees prior to the objection deadline does not warrant rejection of the settlement. (Emphasis added).

Just as in *Redmon*, House was able to file her objection, and protest the award of fees. The motion for preliminary approval, which was on file by the time of her objection, gave notice of the requested approval for $10.5 million in attorney's fees, that the fee was negotiated with the assistance of Justice Trotter, and contained declarations from counsel attesting to the work that had been done and the results

obtained (Document 56).

Objector's *In Re Mercury* objection should be overruled. Since the fee does not affect the class recovery and since the class was made fully aware of the amount of the fee requested and the date by which any objection to that requested fee needed to be made, the fact that no one else objected is strong evidence that they support all aspects of the settlement, including the fee. "The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the settlement are favorable to the class members." *Eisen v. Porsche Cars North America, Inc.*, 2014 WL 439006 *5 (C.D.Cal. 2014), (quoting *Nat'l Rural Telecomms.*, 221 F.R.D.523, 529 (C.D.Cal. 2004). See also *In re Mego Fin. Corp.*, 213 F.3d at 459 (single objection out of a potential class of 5400) and even *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir.2004) (500 opt-outs and *45 objections* out of approximately 90,000 notified class members still deemed a positive reaction). Here, with notice going to over 300,000 class members, and to date 50,000 claim form filings, there has been just one objection – filed by a vexatious professional objector. Indeed, if any of these hundreds of thousands of persons wanted to object, but felt that they could not because of the lack of any fee motion on file, they, too, could have objected citing *Mercury*. But none have.

## **CONCLUSION**

The objection of House should be stricken for failure to comply with the procedure for filing an objection as set forth in the class notice.

Alternatively, the objections of House should be overruled for the reason stated herein and an order approving the final settlement of the case, an award of attorney's fees and class representative award be entered.

Finally, to the extent that the objection is not stricken or overruled, plaintiffs request the opportunity to conduct discovery against House and her counsel, including their depositions to expose the true motivations behind the objection.

DATED: March 13, 2014

**MICHAEL R. BROWN, APC**

By: _/s/ Michael R. Brown__________________
Michael R. Brown, Esq. (SBN 65324)
Email: mbrown@mrbapclaw.com
18101 Von Karman Avenue, Suite 1940
Irvine, California 92612
Tel.: (949) 435-3888
Fax: (949) 435 3801

Additional counsel:

**MORRIS POLICH & PURDY LLP**

David J. Vendler, Esq. (SBN 146528)
1055 West Seventh Street, Suite 2400
Los Angeles, CA 90017
Tel.: (213) 417-5100
Fax: (213) 488-1178
Email: dvendler@mpplaw.com

**LAW OFFICE OF JEFFREY D. POINDEXTER**

Jeffrey D. Poindexter, Esq. (SBN 167854)
Email: jeffrey@jdpoindexterlaw.com
2580 Catamaran Way
Chula Vista, CA 91914
Tel.: (619) 271-2382
Fax: (619) 568-3801
Email: jeffrey@poindexterlaw.com

Attorneys for Plaintiffs RICHARD M. HORN and MARIA GUREVICH and all others similarly situated

CERTIFICATE OF SERVICE

I hereby certify that the following counsel of record who are deemed to have consented to electronic service are being served this 14th day of March 1014, with a copy of the PLAINTIFFS' RESPONSE TO OBJECTION OF SUSAN HOUSE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT FAIRNESS HEARING AND DECLARATION OF MICHAEL R. BROWN via the Court's CM/ECF system per Civil Local Rule 5.4(d).

Peter B Morrison
Skadden Arps Slate Meagher & Flom
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Scott D. Musoff
Skadden Arps Slate Meagher & Flom
Four Time Square
New York, NY 10036-6522

Darrell Palmer (SBN 125147)
Law Offices of Darrell Palmer
2244 Faraday Avenue, Suite 121
Carlsbad, CA 92008

DATED: March 14, 2014

**MICHAEL R. BROWN, APC**

By: _____/s/ *Michael R. Brown*______
Michael R. Brown, Esq. (SBN 65324)