# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### SAN DIEGO DIVISION

| | |
|---|---|
| RICHARD M. HORN, an individual and as Trustee of the Richard M. Horn Trust dated June 16, 2003, and MARIA GUREVICH, fka Mary Bordetsky, an individual, on behalf of themselves, and on behalf of the class of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>BANK OF AMERICA, N.A., a national banking association,<br><br>        Defendant. | CASE NO. 3:12 cv-1718-GPC-BLM<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**<br><br>**(2) GRANTING CLASS COUNSEL'S REQUEST FOR ATTORNEY FEES;**<br><br>**(3) DENYING CLASS COUNSEL'S REQUEST FOR COSTS; AND**<br><br>**(3) GRANTING NAMED PLAINTIFFS' REQUEST FOR INCENTIVE PAYMENTS**<br><br>**(ECF NO. 72)** |

/ / /

/ / /

/ / /

## I. FINAL APPROVAL

In this case, Plaintiffs had option adjustable rate mortgages ("option ARMs") with Defendant Bank of America, N.A. ("BANA") that permitted them to defer payment on accrued interest until months or years after that interest accrued. When Plaintiffs paid that deferred interest in tax years 2009, 2010, 2011, or 2012, Plaintiffs allege that BANA should have reported those payments on Form 1098 for those tax years. Because BANA did not, Plaintiffs brought this lawsuit and asserted claims for (1) breach of contract, (2) negligence per se, (3) negligent misrepresentation, (4) intentional misrepresentation, (5) unfair business practices under California's Business and Professions Code § 17200-17210, and (6) declaratory judgment. BANA has opposed these claims, arguing that the Internal Revenue Code of 1986, as amended, along with Treasury Regulations thereunder, do not require the reporting of deferred-interest payments on Form 1098.

On December 13, 2013, the parties entered into a "Settlement Agreement and Release" and a confidential Supplemental Agreement (collectively, the "Settlement Agreement") settling this case.

This Court entered an order, dated January 7, 2014, preliminarily certifying two classes for settlement purposes only: the Monetary Settlement Class and the Injunctive Settlement Class. (ECF No. 53.) In addition, the Court preliminarily approved the Settlement and authorized Class Counsel to provide the Class Notice and Claim Forms to Class Members and to publish the Summary Notice, in accordance with the terms of the Settlement.

On April 11, 2014, the Court held a Final Approval Hearing to determine whether the Monetary Settlement Class and the Injunctive Settlement Class should be finally certified, whether to finally approve the Settlement, whether to grant Class Counsel's request for attorney fees and costs, and whether to award Plaintiffs incentive payments.

///

Having considered the record in this matter, the Parties' filings and oral arguments, the applicable law, and for the reasons that follow, this Court **HEREBY ORDERS** that:

1. This Final Approval Order and Judgment incorporates by reference the definitions in the Settlement Agreement. All capitalized terms used herein shall have the same meanings as set forth in the Settlement Agreement, unless otherwise set forth herein.

2. The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332, and the Court's personal jurisdiction over the Parties is uncontested.

3. For purposes of the settlement only, the Parties have stipulated to the certification of two classes. Specifically, the Parties seek certification under Federal Rule of Civil Procedure 23(b)(3) of the Monetary Settlement Class, which is defined as follows:

> All persons who made Payments of Deferred Interest on their option adjustable rate mortgages in Tax Year 2009 and for whom BANA was or would have been required by 26 U.S.C. § 6050H and 26 C.F.R. § 1.6050H-1 to file a 2009 Form 1098.

The Parties also seek certification under Federal Rule of Civil Procedure 23(b)(2) of the Injunctive Settlement Class, which is defined as follows:

> All persons who made Payments of Deferred Interest on their Option ARMs in Tax Years 2010, 2011, 2012, or 2013 and for whom BANA was or would have been required by 26 U.S.C. § 6050H and 26 C.F.R. § 1.6050H-1 to file a Form 1098 for the same Tax Year in which the Payments of Deferred Interest were made.

4. The Court incorporates herein by reference the class-certification analysis set forth in the Order Granting Preliminary Approval to Settlement, Preliminarily Certifying Settlement Classes, Appointing Class Counsel and Representatives, and Directing Dissemination of Class Notice. (See ECF No. 63 at 3-5.) As to both the Monetary Settlement Class and the Injunctive Settlement Class,

the Court continues to find that the class action prerequisites of Federal Rule of Civil Procedure 23(a) are satisfied. Specifically, the court continues to find that (i) the classes are so numerous that joinder would be impractical, (ii) that common questions of law and fact exist as to the class, (iii) that the claims or defenses of the representative parties, here Plaintiffs Horn and Gurevich, are typical of the claims or defenses of the class, and (iv) that the representative parties will fairly and adequately protect the interests of the class.

5. As to the Monetary Settlement Class, the Court continues to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." See Fed. R. Civ. P. 23(b)(3).

6. As to the Injunctive Settlement Class, the Court continues to find that defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." See Fed. R. Civ. P. 23(b)(2).

7. Because all the class certification requirements of Federal Rule of Civil Procedure 23 have been met as to the Monetary Settlement Class and the Injunctive Settlement Class, the Court finally certifies those classes solely for purposes of this Settlement. In connection therewith, the Court appoints Michael R. Brown, Esq., David J. Vendler, Esq. of Morris Polich & Purdy LLP, and Jeffrey D. Poindexter, Esq. as Class Counsel for the Settlement Classes, and Plaintiffs Richard M. Horn and Maria Gurevich as Class Representatives.

8. The Class Notice and Summary Notice met the statutory requirements of notice under the circumstances and fully satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2) and the requirement of due process. Specifically, on January 14, 2014, and as set forth in the declaration received by this Court from the Claims Administrator, (ECF No. 72-8), the Class Notice and Claim Form were

mailed to each Monetary Settlement Class Member and the Class Notice was mailed to each Injunctive Settlement Class Member pursuant to the procedures outlined in Section 4.02 of the Settlement Agreement. In addition, the Class Notice and Claim Form were posted on www.Hornsettlement.com. As for the Summary Notice, it was published in *Accounting Today* magazine pursuant to Section 4.03 of the Settlement Agreement.

9. The Class Notice fully informed Class Members of their rights with respect to the Settlement, including the right of Monetary Settlement Class Members to opt out of that class and the right of all Class Members to object to the Settlement, the requested attorney's fee award, or the requested Named Plaintiff Case Contribution Awards.

10. Pursuant to Federal Rule of Civil Procedure 23(e), the Court finds the Settlement to be fair, just, reasonable, and adequate as to each Class Member, and that the Settlement Agreement is hereby finally approved in all respects. Class Counsel is well experienced in class-action litigation. BANA provided a significant amount of information regarding its reporting of deferred-interest payments to in connection with settlement efforts between the Parties and two mediation sessions before California Court of Appeals Justice John K. Trotter (Ret.). Attorney fees were not discussed until settlement was reached as to all relief afforded to Class Members. In short, the Court finds no evidence of collusion; rather, the Court finds the Parties' negotiations were conducted at arm's-length. The Court thus finds the Settlement is presumptively fair. See Linney v. Cellular Alaska P'ship, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."). Moreover, as follows, the Court has considered the following factors in finding the Settlement to be fair, just, reasonable, and adequate:

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement;

5

> [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement.

Torrisi v. Tuscon Elec. Power Co., 8 F.3d 1370, 1375-76 (9th Cir. 1993).

11. Plaintiffs' assert claims for breach of contract, negligence, intentional misrepresentation, negligent misrepresentation, unfair/deceptive business practices, and declaratory relief. (ECF No. 18, FAC.) Plaintiffs' claims are derived from the novel legal position that Plaintiffs may sue BANA under state law theories for its alleged failure to comply with the Internal Revenue Code, to wit, 26 U.S.C. § 6050H. Indeed, Plaintiffs are the first to challenge BANA's deferred-interest-payment reporting practices. The Court likely would have addressed Plaintiffs' novel legal position or even referred the issue to the IRS under the doctrine of primary jurisdiction if the Parties had not settled before the Court ruled on BANA's Motion to Dismiss, (ECF No. 25), and Plaintiffs' Motion for Declaratory or, in the Alternative, Injunctive Relief, (ECF No. 26-5). The IRS has never taken a formal position in any published regulation (or even in a private letter ruling) that BANA's method of calculating mortgage interest was wrong. It is not, however, "appropriate for the Court to attempt to settle these question of law and fact" in determining whether the Settlement is fair, just, and adequate. See In re Immune Response Secs. Litig., 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (Jones, J.). "Rather, recognizing the apparent complexity of the case, the Court [concludes] that settlement is a prudent course." Id. Based on the foregoing, it is difficult to gauge the strength of Plaintiffs' claims. On the same token, given the uncertainty as to whether Plaintiffs' claims are cognizable, the risk, expense, complexity, and likely duration of further litigation are somewhat increased. Similarly, given that some option ARM holders would not benefit from their deferred-interest payments being reported to the IRS (e.g., those with option ARMs on rental properties and those with option ARMs in

excess of $1.1 million), Plaintiffs would have faced a challenge by BANA as to maintaining class-action status throughout the trial.

12. The Court finds the relief offered by the Settlement supports final approval of the Settlement. As set forth below in connection with Class Counsel's request for attorney fees, a conservative estimate of the value of the Settlement is just over $60 million. (See n.2, below.) BANA has agreed to provide monetary relief to individuals who would have deducted their deferred-interest mortgage payments on their returns for tax year 2009 if BANA had reported them on Form 1098, but who are no longer able to file an amended return. BANA has agreed to issue amended Forms 1098 to individuals for tax years 2010-2013, along with $40.00 per amended Form 1098 to offset the cost of filing an amended return. Further, BANA has agreed to report deferred-interest payments on Forms 1098 going forward. The Court finds that, despite the uncertainty surrounding the cognizability of Plaintiffs' claims, Class Counsel and Plaintiffs have negotiated a settlement that provides substantial relief to the Classes.

13. The Parties settled quite early in these proceedings. The pleadings were never settled, as the Parties settled before the Court ruled on BANA's Motion to Dismiss. As such, no formal discovery commenced. BANA, however, provided information to Class Counsel and the mediator in this case, Justice Trotter, as to: (1) when BANA started its policy of not reporting deferred-interest payments on Form 1098, (2) the year-by-year totals for how many mortgages were affected by the policy, (3) and the aggregate amounts of deferred interest per year that had not been properly reported. (ECF No. 72 at 32.) The Court therefore finds that BANA provided sufficient information to Class Counsel for Class Counsel to negotiate a fair settlement on behalf of the Classes.

14. Class Counsel are experienced in consumer class-action litigation and suits against banking institutions such as BANA, and, based on that experience,

believe the Settlement is fair. (See ECF No. 72-2, Brown Decl.; ECF No. 72-3, Poindexter Decl.; ECF No. 74, Vendler Decl.)

15. The Court has received a declaration from BANA indicating the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, was served on the appropriate Federal and State officials at least 90 days before entry of this Final Approval Order and Judgment. (ECF No. 72-11.) No government participant has intervened in this case or objected to the Settlement.

16. The reaction of the class members to the Settlement has been largely positive. After disseminating Class Notice based on 289,595 unique loan number/mailing address combinations, the Claims Administrator received 28 timely requests for exclusion from the Monetary Settlement Class. (ECF No. 72-8, A. Horn Decl. ¶ 16.) These individuals are listed on Exhibit A, attached hereto. The Claims Administrator received 2 untimely requests for exclusion from the Monetary Settlement Class. (Id. ¶ 17.) These individuals are listed on Exhibit B, attached hereto. The Claims Administrator received 54,121 timely and unique claim forms from Monetary Settlement Class Members wanting to participate in the Monetary Settlement Class. (Id. ¶ 19.) This represents approximately 17.2% of the individuals to whom Class Notice was mailed. (Id.) The Claims Administrator will continue receiving claims until the claim deadline of July 13, 2014. (Id.)

17. One objection to the Settlement was timely filed by Susan House. (ECF No. 65.) House asserts, through counsel, that the Settlement consideration is illusory, Class Counsel's fee request is unreasonable, Plaintiffs' requests for incentive payments are excessive, and the objection requirements are onerous. Class Counsel has responded to the Objection. (ECF Nos. 71, 76, 77.) Class Counsel asserts House's Objection should be stricken because she has not demonstrated she is a member of either of the Classes.[1] The Court agrees that House's Objection should

---

[1] Class Counsel further explains that House's counsel, Darrell Palmer, has been deemed "vexatious" and a "serial objector" by other district courts. (ECF No. 72 at 35 (citing Dennis v. Kellogg Co., 2013 WL 6055326, at *4 n.2 (S.D. Cal. 2013) (Lorenz, J.) ("Mr. Palmer has been

8

1. be stricken. The Class Notice approved by the Court plainly requires objectors to "attach documents establishing, or providing information sufficient to confirm that you are a class member." (See ECF No. 58-2 at 45; ECF No. 72-8 at 18.) Both Classes are defined to include all persons who paid deferred interest on an option ARM. The declaration and exhibits attached to House's Objection fail to demonstrate that she paid deferred interest on an option ARM. Accordingly, House's Objection is stricken. See In re Hydroxycut Mktg. & Sales Practices Litig., 2013 WL 5275618, at *2 (S.D. Cal. Sept. 17, 2013) (Moskowitz, C.J.) (striking objection because objector had not "carried his burden of proving standing as a class member"). Even if the Court were to consider the merits of House's Objection, the Court has found—as set forth herein—that the Settlement provides substantial relief to Class Members, Class Counsel's request for attorney fees is reasonable, and Plaintiffs' request for incentive payments is justified.[2] In summary, the Court finds the factors enumerated in Torrisi, 8 F.3d at 1375-76, support final approval of the Settlement.

18. By operation of this Final Approval Order and the Judgment rendered therefrom, the Releasing Parties shall have absolutely and unconditionally released and forever discharged the Released Parties from the Released Claims. In addition, the Releasing Parties are hereby forever barred and enjoined from prosecuting the Released Claims against the Released Parties.

_____

*(cont'd from previous page)*
widely and repeatedly criticized as a serial, professional, or otherwise vexatious objector [citations].").)

[2] The only point by House that causes the Court to take pause is her contention that the Court erred in setting an objection deadline that preceded the deadline for Class Counsel to file its motion for attorney fees and costs. The requirement that an objection deadline precede a fee-motion deadline, see In re Mercury Interactive Corp. Secs. Litig., 618 F.3d 988, 994-95 (9th Cir. 2010), however, is obviated where attorney fees will not be paid from the same fund available to class members as is the case here. See In re Lifelock, Inc. Mktg. & Sales Practices Litig., 2010 WL 3715138, at *9 (D. Ariz. Aug. 31, 2010); Calloway v. Cash Am. Net of Cal. LLC, 2011 WL 1467356, at *2 (N.D. Cal. Apr. 12, 2011).

9

19. The Action, all the claims asserted herein, and all the Released Claims are dismissed with prejudice as to the Releasing Parties and as against the Released Parties. The Parties are to bear their own costs.

20. Neither the Settlement Agreement nor its terms shall be offered or received into any action or proceeding for any purpose, except (i) in an action or proceeding arising under the Settlement Agreement or arising out of or relating to this Final Approval Order and the Judgment rendered therefrom, or (ii) in any action or proceeding where the releases provided pursuant to this Settlement Agreement may serve as a bar to recovery.

21. Without affecting the finality of this Final Approval Order and the Judgment rendered therefrom in any way, this Court hereby retains exclusive jurisdiction over the Settlement and all Parties thereto for the purpose of construing, enforcing, or administering the settlement. To that end, the Court incorporates herein by reference the terms of the Settlement Agreement.

22. This Final Approval Order shall not be considered or used as an admission, concession, or declaration by or against BANA of any fault, wrongdoing, breach, or liability.

23. If this Settlement does not become effective pursuant to the terms of the Settlement Agreement, then the Judgment rendered from this Final Approval Order shall be deemed null and void, as provided in the Settlement Agreement and shall be vacated. In addition, all orders entered and releases delivered in connection herewith shall be null and void as provided in the Settlement Agreement.

## II. ATTORNEY FEES & COSTS

24. As a preliminary matter, the Court notes that, pursuant to the Order Granting Preliminary Approval to Settlement, (ECF No. 63), and Section 5.04 of the Settlement Agreement, the "Final Approval of the Settlement is not contingent on the Court's approval of the attorney's fees award and the Named Plaintiffs Case Contribution Award."

10

12cv1718

25. The Court finds Class Counsel is entitled to an award of reasonable attorney fees and costs incurred in connection with the action and in reaching this Settlement, to be paid at the time and in the manner provided in the Settlement Agreement. The fee award sought in the present case, $10.5 million, is reasonable when judged by the standards of this circuit.

26. "In 'common-fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method" when evaluating class counsel's request for attorney fees. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). "The percentage method means that the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." Id. "This circuit has established 25% of the common fund as a benchmark award for attorney fees." Id. The lodestar method is typically used where "there is no way to gauge the net value of the settlement or any percentage thereof." Id.

27. The value of this Settlement is comprised of five prongs. First, with regard to the Monetary Settlement Class, BANA has agreed to pay an estimated $51,703,508.00 to option ARM holders, based on $344,690,053.00 in unreported interest payments for tax year 2009. Second, with regard to the Injunctive Settlement Class, BANA has agreed to pay $40.00 for each amended Form 1098 that BANA will issue for tax years 2010-2013. BANA has issued 209,473 amended Forms 1098; multiplied by $40.00, the value of this benefit may be gauged at $8,378,920.00. Third, with regard to the Injunctive Settlement Class, BANA has acknowledged that $1,204,100,328.00 in deferred-interest payments went unreported in tax years 2010-2013. The Parties have agreed "the average marginal tax rate during the years in question is 20%." "Thus, the aggregate value of the deductions lost is $240,820,066." Plaintiffs' statistical expert acknowledges, however, that "[s]ince only 63% of American taxpayers itemize deductions . . . , a reasonable estimate of the actual value of the tax refunds available to class members is

$151,716,642 . . . ." (ECF No. 72-7.) Fourth, BANA has agreed to pay the costs of class notice and administration in the amount of $813,491.53. The fifth and final prong relates to the value of the prospective injunctive relief provided for in the Settlement Agreement, requiring BANA to include payments of deferred interest in its Form 1098 calculus to the extent permitted by law. Plaintiffs' statistical expert estimates the value of the prospective injunctive relief to be $11,419,942. (ECF NO. 72-7.) Plaintiffs, however, concede that this estimate is not sufficiently certain to be included in determining the value of the Settlement. Excluding the estimated value of the prospective injunctive relief, the Court arrives at a total estimated value of $212,612,561.53. Class Counsel's request of $10,500,000.00 thus represents 4.9% of this total. The Court finds this amount to be reasonable.[3]

28. The Court has considered Class Counsel's claimed costs of $36,380.00. (See ECF Nos. 72 at 49.) The Court finds the declarations Class Counsel offered in support of claimed costs are insufficient evidence for purposes of determining whether the claimed costs were reasonably and necessarily incurred for the benefit of the Classes, see Odrick v. UnionBancal Corp., 2012 WL 6019495, at *6 (N.D. Cal. Dec. 3, 2012), as neither declaration describes the costs incurred or how the costs benefitted the Classes. (See ECF No. 74, Vendler Decl. ¶ 89; ECF No. 72-2, Brown Decl. ¶ 81.) In any event, even assuming Class Counsel were entitled to $36,380.00 in costs, the Court finds the attorney-fee award adequately compensates Class Counsel for this amount.

### III. NAMED-PLAINTIFF INCENTIVE PAYMENTS

29. Plaintiffs request incentive payments of $25,000.00 each. BANA has agreed to pay these incentive payments separate and apart from the class recovery.

---

[3] Even if the Court were to exclude the estimated value of potential IRS refunds based on amended returns, Class Counsel's fee request still falls well below the 25% benchmark. The total value of the Settlement without the estimated value of potential IRS refunds would be $60,895,919.53. Class Counsel's request for $10,500,000.00 would thus represent a reasonable 17.2% of the total value.

"Generally, when a person joins in bringing an action as a class action . . . he has disclaimed any right to a preferred position in the settlement." Staton v. Boeing Co., 327 F.3d 938, 976 (9th Cir. 2003) (quotation marks, brackets, citation omitted). Incentive payments are meant "to compensate named plaintiffs for the risks they take and their vanguard role in the class action." Id. (explaining In re Cont'l Ill. Secs. Litig., 962 F.2d 566, 571 (7th Cir. 1992)). Factors to consider when determining an appropriate incentive payment for each named plaintiff may include: (1) the number of named plaintiffs receiving incentive payments, (2) the proportion of the payments relative to the settlement amount, (3) the size of each payment, (4) the actions taken by the named plaintiffs to protect the interests of the class, (5) the degree to which the class benefitted from those actions, and (6) the amount of time and effort the named plaintiff expended in pursuing litigation. Staton, 327 F.3d at 977.

30. Plaintiff Horn declares that he has "devoted hundreds of hours to this case in seeing it through very quickly and enormously beneficial settlement to the class members." (ECF No. 72-5.) Horn "discovered the wrongful reporting practices of [BANA] in February 2012," then "began an investigation, first seeking to resolve [his] own tax issues, then realizing this was a corporate-wide practice harming thousands of bank customers." As an attorney himself, the hours Horn spent included work on: researching legal and factual issues, researching and retaining Class Counsel, reviewing and editing filings, advising Class Counsel and suggesting strategies, reviewing all communications, reviewing documents, and actively participating in the settlement and mediation process.

31. Plaintiff Gurevich, also an attorney, declares she has "spent many, many hours toward assisting and directing [her] attorneys." (ECF No. 72-4.) She declares that, as an international tax attorney that works within the financial industry, she faced some risk of reprisal for joining a lawsuit against BANA based on its IRS reporting practices. The activities Gurevich undertook included: reviewing and editing filings, conducting legal and factual research, and communicating with Class

Counsel. Gurevich states she spent at least 75 hours total over this dispute before and after agreeing to become a named plaintiff.

32. Turning to the factors described in Staton, the Court notes that only two named plaintiffs will receive incentive payments. Assuming $25,000.00 were an appropriate incentive payment for each of Plaintiffs, $50,000.00 would represent a mere fraction of one percent of the most conservative estimated value of the Settlement. The actions undertaken by both Plaintiffs after this action was filed provided a substantial benefit to the Classes. The Court finds the hours spent by Horn on this matter justify an incentive payment of $25,000.00. The Court finds the hours Gurevich spent on this matter, along with the risk of reprisal she faced from the industry in which she works, justify an incentive payment of $25,000.00.

### IV. CONCLUSION & ORDER

33. The Clerk of Court is directed to **STRIKE** House's Objection, (ECF No. 65).

34. Plaintiffs' Motion for Final Approval, (ECF No. 72), is **GRANTED** as to final approval, Class Counsel's Request for attorney fees, and Plaintiffs' request for incentive payments. Plaintiffs' Motion is **DENIED** as to costs.

35. The Clerk of Court is directed to enter **FINAL JUDGMENT** as follows: The Parties' Settlement having been finally approved, all claims and parties to this action are **DISMISSED WITH PREJUDICE**, with each Party to bear its own attorney fees and costs except as provided herein. Class Counsel is awarded $10,500,000.00 in attorney fees and nothing further. Plaintiffs are each awarded $25,000.00 in incentive payments and nothing further. The Parties are directed to implement the Settlement Agreement in accordance with its terms. The Court retains

///

///

///

1 | jurisdiction to enforce the terms of the Settlement Agreement, which is incorporated
2 | herein by reference.
3 |     **IT IS SO ORDERED**.
4 | DATED: April 14, 2014

                                             HON. GONZALO P. CURIEL
                                             United States District Judge

Horn v. Bank of America, 3:12-cv-1718-GPC-BLM
Final Approval Order
Exhibit A

## List of Timely Requests for Exclusion

| GCG Ref # | Name | City | State |
|---|---|---|---|
| 1295881 | AURELIO ALVAREZ | MIAMI BEACH | FL |
| 1208971 | MARIA MARTINEZ AMAYA | SAN JUAN CAPO | CA |
| 1285853 | DAWN H BARRELL | TYRONE | GA |
| 1323100 | MANUELITA BUENAFLOR | PHILADELPHIA | PA |
| 1015973 | ALEJANDRO CALDERA | FILLMORE | CA |
| 1151858 | PAUL COLBERG | HINDSVILLE | AR |
| 1043420 | BERENICE DE LA SALLE | MAMMOTH LAKES | CA |
| 1126494 | NADER EGHTESAD | PLEASANTON | CA |
| 1322236 | RUDESINDO FERNANDEZ | BAKERSFIELD | CA |
| 1160637 | JULIE ELICE FONTAINE | MAMMOTH LAKES | CA |
| 1118822 | ANGELA D GILMETTE | SACRAMENTO | CA |
| 1124008 | MICHAEL J GONZALES | CARSON CITY | NV |
| 1074094 | JOHN B HALLAWELL | WAUNA | WA |
| 1341308 | BOBBI A LEE | HONOLULU | HI |
| 1056178 | SHIRLEY D LETT | MARIETTA | GA |
| 1058920 | PATRICIA U MCFAUL | WATSONVILLE | CA |
| 1097496 | KATHLEEN MCHENRY | SANTA ROSA | CA |
| 1173844 | TATYANA A MIRONOVA | MILL VALLEY | CA |
| 1030733 | ABELARDO D PAYLAGO | DALY CITY | CA |
| 1258105 | EDITH RENFROE | JACKSONVILLE | FL |
| 1323766 | STEVE E RENNIGER | BOWMANSVILLE | PA |
| 1051012 | WANDA T SILVEIRA | HILMAR | CA |
| 1216401 | PAMELA SNYDER | SAN FRANCISCO | CA |
| 1067354 | SCOTT E STAFNE | ARLINGTON | WA |
| 1184368 | DEBORAH THEODULE | SAN JOSE | CA |
| 1273724 | TINA M VASQUEZ | HAYWARD | CA |
| 1369724 | BETH ANN VOIGT | LAFAYETTE | CO |
| 1063375 | JOHN GREG WEHR | GYPSUM | CO |

Horn v. Bank of America, 3:12-cv-1718-GPC-BLM
Final Approval Order
Exhibit B

### List of Late Requests for Exclusion

| GCG Ref # | Name | City | State |
|---|---|---|---|
| 1270723 | DONNA MARIE ALLEN | TUCSON | AZ |
| 1166656 | KARMEL FRANCES ROE | SAN BERNARDINO | CA |